## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-24238 HRT |
| SVS HOLDINGS, INC., ) | |
| ) | Chapter 11 |
| Debtor. ) | |

### ORDER GRANTING *EX PARTE* MOTION FOR AUTHORIZATION TO CONDUCT RULE 2004 EXAMINATION OF SVS HOLDINGS, INC. AND SEQUOIA VOTING SYSTEMS, INC.

The Court has considered the *Ex Parte* Motion for Authorization to Conduct Rule 2004 Examination of SVS Holdings, Inc. and Sequoia Voting Systems, Inc. (the "Motion") filed by Smartmatic Corporation ("Smartmatic"). The Court finds that it has jurisdiction over the matters raised in the Motion, and that good and sufficient cause exists for the granting of the relief requested in the Motion.

NOW THEREFORE, IT IS HEREBY ORDERED that the Motion shall be, and hereby, is GRANTED.

IT IS FURTHER ORDERED that the Debtor is directed to comply with the document request attached as **Exhibit A** to the Motion and this Order within fourteen (14) days of the entry of this Order;

IT IS FURTHER ORDERED that Smartmatic is authorized to serve a subpoena on Sequoia Voting Systems, Inc. directing the production of documents specified on the Document Request;

IT IS FURTHER ORDERED that the Debtor, through Jack Blaine, , Peter McManemy and Kevin Hurst, is directed to appear for a deposition by Smartmatic, occurring at a time and place mutually agreed upon by the parties, but no later than fourteen (14) days after the Debtor's production of documents in compliance with this Order.

Dated: June _____, 2010.

                                                      Howard R. Tallman,
                                                      U.S. Bankruptcy Court, Chief Judge

{00813602 / 1}

# EXHIBIT A
# DOCUMENT REQUEST

## DEFINITIONS

1. "Smartmatic" refers to Smartmatic Corporation and/or any of its employees, officers, agents, affiliates, representatives (including advisors), attorneys and all persons acting or purporting to act on its behalf.

2. "SVS Holdings" refers to SVS Holdings, Inc. and/or any of its directors, officers, managers, employees, agents, members, affiliates, representatives (including advisors), consultants, attorneys and all persons acting or purporting to act on its behalf.

3. "Sequoia" refers to Sequoia Voting Systems, Inc. as an entity separate from SVS Holdings.

4. "Anton Collins" refers to SVS Holdings, Inc.'s outside auditor, Anton Collins Mitchell LLP, and/or any of its directors, officers, managers, employees, agents, members, affiliates, representatives (including advisors), consultants, attorneys and all persons acting or purporting to act on its behalf.

5. "Dominion Voting" refers to Dominion Voting Systems Corporation, and/or its subsidiaries, affiliates, directors, officers, managers, employees, agents, representatives (including advisors), consultants, attorneys, and all persons acting or purporting to act on its behalf.

6. "Sequoia Asset Sale" refers to the transaction announced by Dominion in a press release dated June 4, 2010 (**copy attached**), under which certain assets of Sequoia were sold or otherwise transferred to Dominion.

7. "Note Purchase Agreement" refers to the agreement dated May 28, 2008, entered into between Smartmatic, SVS Holdings, and certain U.S. stockholders of SVS Holdings.

8. "Person" means, without limitation, natural persons and individuals; sole proprietorships; limited liability companies; general and limited partnerships; profit and non-profit corporations; unincorporated associations; or any other legal or governmental entity, organization or body of any type whatsoever; as well as agents, employees, or instrumentalities of such entities.

9. "Agreement" means all oral or written understandings between more than one party, including written contracts, letter agreements, side agreements, addenda to agreements and any other such understandings.

10. "Document" and/or "documents" means any writing or other form of record (including any writing or data stored on electronic storage devices) within the scope of the word "document" as that term is used in Rule 26 of the Federal Rules of Civil Procedure (as incorporated by FED. R. BANKR. P. 7026) and includes (without limitation) all types of written,

typed, printed, recorded or graphic material, however produced or reproduced, of any kind and description, and whether an original, master, duplicate or copy, including (but not limited to) papers, notes of conversations, contracts, electronic mail, computer files, agreements, drawings, telegrams, tape recordings, communications, letters, memoranda, handwritten notes, reports, studies, working papers, corporate records, minutes of meetings (including board or committee meetings), notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, calendars, photographs, transcriptions or sound recordings of any type of personal or telephone conversations or negotiations, notes or records of meetings or conferences, or things similar to any of the foregoing, including any data, information or statistics contained within any data storage modules, tapes, discs, or other memory device, or other information retrievable from storage systems, including (but not limited) to computer generated reports and print-outs or data compilations from which information can be obtained and translated, if necessary. Any copy containing (or having attached) any alterations, notes, comments, or other materials not included in the originals or copies referred to in the preceding sentence shall be deemed a separate document within the foregoing definition.

11.  "Relating to" means discussing, describing, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, reporting on, commenting on, reviewed in conjunction with, evidencing, setting forth, considering, recommending, or constituting, in whole or in part.

12.  The term "communication" means, without limitation, any correspondence, memoranda, voice mail, e-mail, contact, discussion, or other kind of written, oral, or electronic exchange between two or more persons, including, but not limited to, all telephone conversations, face-to-face conversations, meetings, visits, and conferences.

13.  The term "SVS Parties" shall mean Sequoia and/or SVS Holdings.

14.  The term "Petition Date" shall mean June 8, 2010.

## INSTRUCTIONS

A.  Each request shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. Any request propounded in the singular shall also be read as if propounded in the plural and vice versa. Any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa.

B.  The documents responsive to these requests shall be produced as they have been kept in the usual course of business or shall be organized and labeled to correspond with the enumerated categories in this request. If produced as kept in the usual course of business, all documents (other than electronically stored information) shall be produced with a copy of the file folder (if any) in which the documents are kept or maintained.

C.  If SVS Holdings objects to the production of any document sought by these document requests, whether in whole or in part, on the grounds of the attorney-client privilege, work product immunity, or other privilege or immunity, as much of the document concerned as to which no claim of privilege or immunity is made shall be produced. With respect to

documents or portions of documents for which a claim of privilege or immunity is made, state the following for each document:

    (i)    a description of the type of document withheld from production (*e.g.*, memorandum, letter, e-mail);

    (ii)    the date shown on the document;

    (iii)    the author of the document and, if applicable, the name of the person(s) to whom it was addressed and/or to whom it was copied;

    (iv)    a general description of the subject matter of the document that is sufficiently specific to permit a fair evaluation of the merits of SVS Holdings's reasons for not producing the document; and

    (v)    the reason the document was withheld from production.

D.    If any document responsive to these requests has been lost, destroyed, or otherwise disposed of, such document is to be identified as completely as possible, including the following information: contents; author(s); recipient(s); sender(s); copied recipient(s) (indicated or blind); date prepared and received; date of disposal; manner of disposition; person(s) last in possession of the document; and person(s) disposing of the document.

E.    Unless otherwise specified in an individual Document Request, the scope of the documents requested herein shall be limited to the three years preceding the Petition Date.

## DOCUMENT REQUESTS

**Request No. 1:**    All agreements reflecting, relating to, referring to or ancillary to the Sequoia Asset Sale between any parties, including (without limitation) Dominion, Sequoia, SVS Holdings, one or more shareholders of SVS Holdings, Jack Blaine, Kevin Hurst, Peter McManemy, Waldeep Singh, or other officers, directors, employees of the SVS Parties, or any other persons, including (but not limited to) transactional agreements, employment agreements, intellectual property related agreements, distribution agreements, loan agreements, security agreements, and any other types of agreements.

**Request No. 2:**    All documents relating to the agreements referred to in request for production numbers 1 above or the negotiation of such agreements.

**Request No. 3:**    All agreements in force and effect at any time since May 28, 2009 between either of the SVS Parties and Jack Blaine, Peter McManemy, Waldeep Singh, or any other shareholders, officers, directors or employees of the SVS Parties with respect to employee compensation, bonuses, severance payments, fringe benefits or any other payment of monies or other things of value of any kind for any purpose.

**Request No. 4:**    Documents reflecting payments of monies or promise to pay monies in the future for any purpose to any director, officer or shareholder of the SVS Parties made since January 1, 2009.

**Request No. 5:** All general ledgers, accounts payable ledgers, check registers, purchase orders and invoices reflecting payments by Sequoia or SVS Holdings to any party since January 1, 2010.

**Request No. 6:** All documents produced by SVS Holdings pursuant to the first request for the production of documents made by Smartmatic during proceedings before the Delaware Chancery Court in the action styled as *Smartmatic Corporation v. SVS Holdings, Inc.*, C.A. No. 5400-VCL.

**Request No. 7:** All documents, including all agreements, relating to the payment of monies or promises to pay monies to Phoenix Graphics, Inc., Harvard Custom Manufacturing, or Jaco (collectively, the "Creditors") or the assignment of any debt or agreement by or to any of the Creditors, between January 1, 2010 and present.

**Request No. 8:** All documents relating to amounts of fees and expenses that the SVS Parties have paid and the amounts that they owe to Anton Collins in connection with the audit of financial statements for fiscal year 2008.

**Request No. 9:** All documents reflecting or relating to amounts owing to Smartmatic under the Note Purchase Agreement, including internal communications at the SVS Parties regarding any obligations to Smartmatic under the Note Purchase Agreement.

**Request No. 10:** All documents relating to the valuation of either of the SVS Parties, including any reports prepared by Quist Valuation or other persons that analyze the valuation of Sequoia and/or SVS Holdings.

**Request No. 11:** The Confidential Settlement and License Agreement entered into among Sequoia, Dominion and Avante International Technology, Inc. ("Avante") in January, 2010, settling a patent infringement lawsuit previously filed by Avante, along with documents reflecting any payments made by Sequoia to Avante under such agreement, and any subsequent agreement relating to such matters entered into after January 27, 2010 between Avante, Sequoia and/or Dominion.

**Request No. 12:** Financial statements, including balance sheets, income statements and cash flow statements (whether audited or unaudited) of SVS Holdings and Sequoia generated in 2010.

**Request No. 13:** Anton Collins' audit reports for Sequoia for 2008 and 2007, audit "wrap up" reports prepared by Anton Collins for Sequoia, and all other documents provided by Anton Collins to support its 2008 audit of the financial statements of SVS Holdings and/or Sequoia.

**Request No. 14:** All documents relating to or reflecting the sale of any assets by the SVS Parties outside of the ordinary course of business from the period May 28, 2008 to the present.

**Request No. 15:** All documents related to intercompany transfers between the SVS Parties.

**Request No. 16:** Documents reflecting the identity of officers and directors of SVS Holdings and Sequoia.

**Request No. 17:** Copies of all corporate books and records of the SVS Parties, including but not limited to all board of director meeting minutes and resolutions.

**Request No. 18:** All Documents that reflect the ownership of shares in SVS Holdings and all of its affiliates.

**Request No. 19:** Any Documents that reflect any communications between SVS Holdings and any of its creditors concerning amounts owed that occurred within one year before the Petition Date.

**Request No. 20:** Copies of all state and federal tax returns filed by SVS Holdings and Sequoia, together with all schedules and attachments, for the tax years 2005 to present.

**Request No. 21:** Copies of the bylaws and articles of incorporation of SVS Holdings and Sequoia, and any amendments thereto.

**Request No. 22:** Any documents related to or reflecting the payment of money by the SVS Parties to any relative of or entity affiliated with Jack Blaine, Kevin Hurst, Peter McManemy, or Waldeep Singh.

**Request No. 23:** Copies of the document retention policies of SVS Holdings and Sequoia.