**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | |
| SVS HOLDINGS, INC., ) | Case No. 10-24238-HRT |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |

**OBJECTION OF DOMINION VOTING SYSTEMS, INC., AND DOMINION VOTING SYSTEMS CORPORATION TO SMARTMATIC USA CORPORATION AND SMARTMATIC CORPORATION'S MOTION FOR AUTHORITY AND STANDING TO PROSECUTE CAUSES OF ACTION ON BEHALF OF THE DEBTOR OR, IN THE ALTERNATIVE, FOR APPOINTMENT OF A TRUSTEE**

## INTRODUCTION

Dominion Voting Systems, Inc. ("Dominion US"), and Dominion Voting Systems Corporation ("Dominion Canada") (collectively "Dominion")[1] oppose the motion (filed September 21, 2012 at Docket No. 106 in this case, "the Motion") by Smartmatic USA Corporation and Smartmatic Corporation (collectively "Smartmatic") to authorize Smartmatic to pursue causes of action on behalf of SVS Holdings, Inc. (the "Debtor"), against Dominion.[2]

The prevailing law in the Tenth Circuit does not permit Smartmatic to bring claims against Dominion, because Smartmatic is neither the Debtor nor the Trustee in this case. Furthermore, even if the law permitted Smartmatic to pursue derivative actions generally, which it does not, the court should not permit Smartmatic to pursue the specific derivative claims it seeks to pursue here: fraudulent transfer claims based on an allegedly undervalued sale of assets to Dominion by a non-debtor subsidiary of the Debtor. First, no colorable basis exists for a fraudulent transfer claim by or on behalf of the Debtor or its estate against Dominion, because

---

[1] Dominion US and Dominion Canada refer to themselves collectively for convenience purposes only and without prejudice to their position that they are separate corporations with separate identities.
[2] Dominion has standing to submit this objection because Smartmatic's Motion seeks authority to sue Dominion.

HRODEN\1629609.1

Dominion bought no assets from the Debtor and otherwise received no transfer from the Debtor. Second, Smartmatic is not a creditor of, and has no claim against the non-debtor subsidiary of the Debtor from which Dominion did purchase assets, so even if that purchase could be challenged, the challenge would not be for the benefit of Smartmatic. Finally, Smartmatic is not an appropriate representative for the Debtor's estate because Smartmatic is seeking the Court's authority to sue Dominion as a tactic to gain leverage in other litigation that Smartmatic filed recently against Dominion in Delaware.

The derivative claims that Smartmatic seeks to pursue are baseless, and apart from the merits of the claims, Smartmatic has no legal basis for being granted standing to pursue them. While Dominion believes the derivative claims to be without any merit, Dominion takes no position on whether a trustee, as a proper representative of the Debtor's estate, should be appointed to investigate such claims. Dominion reserves all rights and defenses regarding any such claims.

## FACTUAL BACKGROUND

Smartmatic and Dominion are international competitors in the business of developing and marketing electronic voting systems to countries, states, and municipalities. Smartmatic is affiliated with a Venezuelan-held company with a similar name. Smartmatic began its involvement with the Debtor, and ultimately Dominion, in 2005 when it purchased Sequoia Voting Systems, Inc. ("Sequoia"), an American voting systems company, from De La Rue PLC ("De La Rue") for $16 million. Upon information and belief, Smartmatic paid significantly more than De La Rue was prepared to accept at a time when De La Rue was actively looking to get out of the voting system business.

In 2007, Sequoia entered into an agreement with Dominion to collaborate on the sale of voting systems to various jurisdictions in the state of New York.

Dominion understands that because Smartmatic is affiliated with a Venezuelan company, the United States Government ordered Smartmatic to divest its interest in Sequoia and cease its involvement in U.S. elections. To fulfill this obligation, Smartmatic arranged to sell its stock in Sequoia to a new holding company—the Debtor—formed by top Sequoia management. During the lead-up to the transaction, the Debtor's founders were under the ultimate direction of Smartmatic, which still owned Sequoia. On September 18, 2007, Smartmatic sold all of the issued and outstanding shares of stock of Sequoia to the newly-established Debtor in exchange for an Unsecured Promissory Note ("the Note") in the amount of $2 million dollars and future earn-out considerations. On information and belief, Smartmatic received no cash at the time of closing.

On November 5, 2007, a Smartmatic affiliate signed a Distribution Agreement with Sequoia, (*See* Exhibit 1 (November 5, 2007 Distribution Agreement)) while another Smartmatic affiliate signed a Transition Service Agreement with the Debtor (*See* Exhibit 2 (November 5, 2007 Transition Services Agreement)), acknowledging in the first agreement that the Debtor would be using Smartmatic's services to help operate Sequoia. These separate Smartmatic agreements demonstrate Smartmatic's understanding that the Debtor and Sequoia were two distinct entities.

In 2008, enforcing a right of first refusal clause, Smartmatic sued the Debtor in the Chancery Court of Delaware to require the Debtor to purchase the Note. (Dkt. 106 at ¶ 10.) On May 28, 2008 Smartmatic sold the Debtor the Note, in exchange for $7 million in cash, future payments of $9 million, and settlement of the Delaware litigation (the "Note Purchase

Agreement"). The Note Purchase Agreement left the Debtor, but not Sequoia, with a multimillion dollar obligation to Smartmatic. *Id.* Upon information and belief, at that time Sequoia was worth far less than the amount the Debtor paid to purchase the Note.

In 2009, Sequoia was losing money as a voting machine company and sought to sell certain of its contracts in New York state. As indicated above, at that point Sequoia and Dominion Canada already had an agreement, executed in 2007, to collaborate on the sale of voting systems in New York state. Dominion Canada was effectively the only bidder for the purchase of the New York contracts in 2009. On July 15, 2009, Sequoia and Dominion Canada entered into an Asset Purchase Agreement (the "2009 Asset Purchase Agreement") for the sale of Sequoia's rights and obligations under contracts in the State of New York in exchange for $2,366,000 in cash and contingent payments.

In October 2009, an affiliate of Smartmatic and an affiliate of Dominion entered into an international license agreement for the license of certain technology by the Dominion affiliate to the Smartmatic affiliate (the "License Agreement").

Following the 2009 Asset Purchase Agreement with Dominion Canada, on information and belief, Sequoia continued to lose money and began looking for someone to buy its business. In March 2010, Dominion US offered to purchase substantially all of Sequoia's remaining assets. On information and belief, the only other bidder for Sequoia's assets dropped out of the bidding. Negotiations continued between Dominion US and Sequoia until June 4, 2010 when they entered into an Asset Purchase Agreement whereby Dominion US purchased the remainder of Sequoia's assets for approximately $3 million plus an additional $4.5 million in contingent payments, thereby providing substantial value to Sequoia and its creditors. However, because of the poor

condition of Sequoia's business at the time, the value of the purchased assets apparently was not sufficient to provide any equity return to Sequoia's shareholder, the Debtor.

On June 8, 2010, after being sued by Smartmatic yet again in the Chancery Court of Delaware, this time to recover payment on the Note Purchase Agreement (*Smartmatic Corp. v. SVS Holdings, Inc.,* Del. Ch., C.A. No. 5400-VCL (2010)), the Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code in this Court. As Smartmatic acknowledges, the Debtor, but <u>not</u> Sequoia, owed money to Smartmatic as of the Petition date. (Dkt. 106 at ¶ 11.) The Debtor did not seek to include Sequoia as a debtor in this Chapter 11 proceeding, and at no time has Sequoia filed a Chapter 11 petition of its own. There has been no action in the case toward substantively consolidating Sequoia with the Debtor in this case. Although Smartmatic alleges that it is the Debtor's "largest unsecured creditor" – as a result of the Debtor's 2008 Note Purchase Agreement – Smartmatic has not moved to form a creditors' committee, and no such committee has been created. (*Id.* at ¶¶ 7, 25.)

On August 6, 2010 Smartmatic obtained court permission to subpoena documents from Dominion and conduct Rule 2004 examinations of two of its principals. Later in 2010 Dominion produced documents to Smartmatic. Smartmatic did not take its Rule 2004 examinations until January 2012. After the Rule 2004 examinations, in April 2012, Smartmatic entered into a tolling agreement with Dominion to toll the statutes of limitation on certain potential claims against Dominion Canada and Dominion US.

On September 6, 2012, three Smartmatic affiliates filed a 59-page complaint against three Dominion affiliates, including Dominion US and Dominion Canada, in the Delaware Court of Chancery for claims related to the License Agreement. (*See* Exhibit 3 (*Smartmatic Int'l Corp., et al. v. Dominion Voting Sys. Int'l Corp., et al.,* No. 7844-VCP, (Del. Ch. Sept. 6, 2012)). In that

lawsuit, Smartmatic seeks declaratory relief and tens of millions of dollars in damages from the Dominion defendants.[3] *Id.*

Two weeks after filing suit against Dominion in Delaware, Smartmatic asked this Court for authority on behalf of the Debtor to pursue various avoidance actions against Dominion Canada and Dominion US in this Court. (Dkt. No. 106 at ¶¶ 27-28, the "Avoidance Actions"). For the following reasons, Smartmatic's Motion should be denied.

## ARGUMENT

I.  **Smartmatic Should Not be Granted Authority to Prosecute the Avoidance Actions Because in this Circuit, Only the Debtor or Trustee is the Proper Party to Pursue an Avoidance Action.**

Smartmatic is not a proper party, even with court approval, to bring an avoidance action against Dominion.

Smartmatic correctly acknowledges that "[t]he Bankruptcy Code does not expressly authorize a creditor to prosecute claims on behalf of the estate." (*Id.* at ¶ 29.) Although Smartmatic goes on to cite instances where courts of appeal outside the Tenth Circuit have allowed a creditor or creditors' committee to file an avoidance claim, the Tenth Circuit Bankruptcy Appellate Panel has expressly rejected this practice.

The Tenth Circuit Bankruptcy Appellate Panel concluded that only debtors or trustees—not creditors—have standing to prosecute fraudulent transfer claims. *In re Fox*, 305 B.R. 912, 915-916 (B.A.P. 10th Cir. 2004). The Court in *In re Fox* reasoned that in the Bankruptcy Code, Congress explicitly provided numerous remedies for creditors to pursue fraudulent transfer

---

[3] The Dominion defendants in the Delaware lawsuit firmly oppose Smartmatic's lawsuit as frivolous and unfounded. The Dominion defendants expect to file an answer and substantial counterclaims on or before October 12, 2012, which will paint a vastly different picture than the allegations contained in Smartmatic's lengthy and groundless complaint.

claims in the event that a debtor unjustifiably refused to bring suit; however, bringing a claim as a creditor on behalf of the debtor is not a right that Congress contemplated.[4]  *Id.*

In support of its argument that a creditor may pursue an avoidance action, Smartmatic does not discuss *Fox*, but instead offers only one case decided subsequently by the Tenth Circuit. (Dkt. No. 106 at ¶ 31, citing *In re MS55, Inc.,* 477 F.3d 1131, 1139 n. 9 (10th Cir. 2007).) Smartmatic cites to a footnote in *MS55* for the point that the Tenth Circuit—prior to *Fox—*has allowed a creditor to initiate avoidance actions and that "other circuits have continued to allow committees to bring avoidance actions."[5]  *Id*.  The court in *MS55* did not decide the ultimate question of whether a creditor could bring an avoidance action.  It did note, however, that while the Tenth Circuit has allowed a committee to bring an avoidance action previously, the Supreme Court's ruling in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000), "may undermine this practice."  *MS55,* 477 F.3d at 1139 n. 9 (10th Cir. 2007).  The Supreme Court in *Hartford* held that statutory language granting certain powers on behalf of trustees did not grant the same powers to unnamed entities, such as a creditors' committee. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7-8 (2000).

While the Court in *MS55* did not discuss the implications of *Hartford* other than in passing, the *Fox* Court discussed the case at length.  There, the Tenth Circuit Bankruptcy Appellate Panel concluded that a creditor's right to bring an avoidance action is not a statutory right granted by Congress, and as such is not allowed.  *Fox*, 305 B.R. at 916. The Court

---

[4]  Specifically, the Court held that if a debtor were violating its fiduciary duty to enhance the estate, or had a conflict of interest that would prevent it from suing certain parties, the proper course of action would be to appoint a trustee under 11 U.S.C. § 1104.  *Id.*

[5]  *In re MS55* discusses the possibility of allowing a **creditors' committee** to bring an avoidance action under limited circumstances, but courts are even more reluctant to grant rights to prosecute avoidance actions to **individual** creditors, as is the case here.  *Surf n Sun Apts., Inc. v. Dempsey*, 253 B.R. 490, 494 (M.D. Fla. 1999) (holding the bankruptcy court may not grant standing to individual creditors to prosecute fraudulent transfer avoidance claims on behalf of the estate); *In re Harrold*, 296 B.R. 868, 873 (Bankr. M.D. Fla. 2003) (granting an individual creditor the right to prosecute avoidance actions raises obvious policy concerns); *In re Perkey*, 194 B.R. 846, 848 (Bankr. W.D. Mo. 1996) (finding a secured creditor lacked standing to pursue a fraudulent conveyance claim).

explained that "it is not up to [the Court] to create a remedy for creditors [Congress] has not granted to them, especially when that right is given exclusively to the trustee. Here the statute is absolute and allows us no discretion to vary from what it says." *Id*. As Congress did not provide this right to creditors, under existing Tenth Circuit law, Smartmatic should not be given authority to prosecute an avoidance action on behalf of the Debtor's estate against Dominion.

## II. Smartmatic Has Failed to Establish the Required Elements for Standing to Sue Dominion for Derivative Claims

In addition to the dispositive authority of *In re Fox*, Smartmatic does not have standing to pursue derivative claims against Dominion in this Court under the law in other Circuits. There, it is well established that a creditor seeking permission from a bankruptcy court to pursue derivative claims must demonstrate four elements, specifically, that (1) it petitioned the Debtor to bring the claims; (2) the Debtor refused to bring the claims; (3) its proposed claims are colorable and would benefit the estate if successful; and (4) the Debtor unjustifiably refused to pursue the claims. *See, e.g., In re Gibson Group, Inc.*, 66 F.3d 1436, 1439-40 (6th Cir. 1995); *In re Racing Servs., Inc.*, 540 F.3d 892, 899 (8th Cir. 2008); *Louisiana World Exposition v. Federal Insurance Co.*, 858 F.2d 233, 247 (5th Cir.1988). Smartmatic has not demonstrated any of these requirements and should therefore be denied standing to pursue derivative claims in this court.[6] Smartmatic itself seems to recognize the weaknesses of its position by offering this Court two alternatives to its Motion: appointment of a Chapter 11 trustee, or conversion to a Chapter 7 proceeding.

### A. Smartmatic did not petition the Debtor to bring the claims.

As an initial matter, Smartmatic must show that it petitioned the Debtor to pursue the claims contained in its proposed complaint. *Id*. By its own admission, Smartmatic has not

---

[6] Dominion notes that this denial of standing in no way restricts Smartmatic from pursuing whatever direct claims it may have against Dominion in any court of competent jurisdiction. See Section III, *infra.*

HRODEN\1629609.1                              8

fulfilled this requirement because it "has not formally made a demand on the Debtor to pursue the Avoidance Actions." (Dkt. No. 106 at ¶ 41.) While Smartmatic argues that any such demand would be "futile and unnecessary," a failure to petition the Debtor may be excused only under "appropriate circumstances." *In re Nat'l Forge Co.*, 326 B.R. 532, 544 (W.D. Pa. 2005). This is not such a circumstance.

Courts have held that the purpose of a formal petition is to ensure that the Debtor has notice of the intent to pursue the claim, and also that the Debtor has an opportunity to explain why it has declined to pursue the claims. *Id.* If the creditor can show that giving formal notice would be redundant and the Debtor has notice and has explained its denial, only then is formal notice considered to be futile. *Id.* Here, to Dominion's knowledge, the Debtor was given no notice of Smartmatic's definite intentions to sue Dominion until this Motion was filed. The Debtor was not properly put on notice, nor could it offer an explanation for a decision it did not have an opportunity to make.

**B.     The proposed claims are not colorable and would not benefit the estate.**

Smartmatic's gambit also fails because its proposed claims are not colorable and therefore would not benefit the estate. *Gibson Group,* 66 F.3d at 1439-40 (6th Cir. 1995). Contrary to Smartmatic's position that this element "is a low standard to satisfy" (Dkt. No 106 at ¶ 34), courts have found that a creditor's claims are colorable only if they would survive a motion to dismiss. *In re Copperfield Investments, LLC*, 421 B.R. 604, 609 (Bankr. E.D.N.Y. 2010). On their face, the proposed claims against Dominion would not survive a motion to dismiss for several reasons:

1. *Smartmatic's alleged complaint is based on transfers by the Debtor's subsidiary, not the Debtor.*

Smartmatic's proposed complaint against Dominion asserts claims based on transfers by the Debtor's non-consolidated subsidiary – Sequoia – and not by the Debtor. Each of the claims in Smartmatic's proposed complaint relies on the fact that the transfer at issue "was a transfer of property, or an interest in property, of the ***Debtor***." (Dkt. No. 106-1 at ¶¶ 34, 38, 43, 49, 53, 58, 62, 67, 73, 77 (emphasis added).) However, the transfers at issue in the Complaints are the 2009 and 2010 Asset Purchase Agreements between Dominion and the Debtor's subsidiary, Sequoia.

The proposed claims against Dominion essentially allege that Dominion Canada and Dominion US under-paid for Sequoia assets in the 2009 and 2010 Asset Purchase Agreements. No dispute exists that the Debtor is not a party to either the 2009 and 2010 Asset Purchase Agreements. Rather, the seller under the agreement was Sequoia. And no assets, property or rights belonging to the Debtor were transferred to Dominion. Because the basic predicate for a fraudulent transfer claim has not been alleged and cannot be satisfied, Smartmatic's proposed claims would be dismissed and are futile.

2. *The Debtor and Sequoia are not alter egos.*

Smartmatic attempts—briefly and broadly—to circumvent the fact that the Asset Purchase Agreements involve Sequoia rather than the Debtor by conflating Sequoia and the Debtor in a vague alter ego theory. Smartmatic does not claim anywhere in its Motion that the Debtor and its subsidiary Sequoia are alter egos. The only place where Smartmatic discusses its alter ego theory is in its Complaint against Dominion, where the discussion is extremely abbreviated. (Dkt. No. 106-1 at ¶¶ 14-16.) There, Smartmatic's cursory allegations—that the Debtor and Sequoia shared the same officers, board of directors, business location, and bank

accounts, and did not hold themselves out to the public as separate entities—are entirely unsupported, other than "on information and belief". *Id.*

Smartmatic's cursory allegations are insufficient to support an alter ego claim between the Debtor and Sequoia because they fail to even state the elements for veil-piercing under Colorado law, as applied by the Tenth Circuit. An alter ego relationship under Colorado law requires a finding that one entity was a "mere instrumentality" of the other. *Skidmore, Owings & Merrill v. Canada Life Ins. Co.*, 706 F.Supp. 758, 760 (D. Colo. 1989), *aff'd*, 907 F.2d 1026 (10th Cir. 1990) (applying Colorado law). The *Skidmore* court listed the following factors as governing the "mere instrumentality" determination:

1. whether a corporation is operated as a separate entity;
2. commingling of funds and other assets;
3. failure to maintain adequate corporate records or minutes;
4. the nature of the corporation's ownership and control;
5. absence of corporate assets and undercapitalization;
6. use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation;
7. disregard of legal formalities and the failure to maintain an arms-length relationship among related entities; and
8. diversion of the corporation's funds or assets to noncorporate use.[7]

Smartmatic has not even alleged, let alone substantiated, these factors in its proposed complaint against Dominion.[8]

---

[7] *Id*. *See also Fish v. East*, 114 F.2d 177, 191 (10th Cir. 1940) (setting forth similar list of factors for alter ego determination under Colorado law); *See also Matter of Typhoon Indus., Inc.*, 6 B.R. 886, 891 (Bankr. E.D.N.Y. 1980) (holding that to have a finding of alter ego theory, the following factors must be present: "the subsidiary does not trade under its own name; the subsidiary does not have separate assets, creditors or obligations; the subsidiary has not held itself out to the general public and trade creditors as a business separate and distinct from the parent; there has been a commingling of assets between subsidiary and parent; the subsidiary has grossly inadequate capital; the parent pays the debts of the subsidiary; the subsidiary's source of business is dependent in some way upon that of its parent; and, in the conduct of its affairs, the subsidiary disregarded its separate and independent corporate entity.")

Any suggestion of an alter ego relationship is further invalidated on equitable grounds because Sequoia held itself out to the public as a separate entity and entered into separate and distinct contracts from the Debtor, including contracts with Dominion.

Smartmatic is also estopped from asserting an alter ego claim because it orchestrated the formation of Sequoia and its relationship with the Debtor. Smartmatic caused the creation of the Debtor as a holding company to fulfill Smartmatic's obligation to divest itself of Sequoia. Smartmatic thus knew exactly why the Debtor was being established, who the directors and managers of both companies were, and the relationship between the companies as holding company and operating company, respectively. Smartmatic's affiliates signed separate agreements two months later with the Debtor and Sequoia, acknowledging in the first agreement that the Debtor would be using Smartmatic's services to help operate Sequoia. *See* Exhibits 1 and 2. Also, Smartmatic sued the Debtor in 2008 and purchased back a note from the Debtor in the resulting agreement to settle the litigation. Both the litigation and the settlement involved the Debtor but not Sequoia. That note is the basis for Smartmatic's claim in this case against the Debtor. Under these circumstances it would be wholly unjust and inequitable to allow Smartmatic to bring a claim against Dominion premised on the assertion that the Debtor and Sequoia are alter egos. Smartmatic formed the Debtor as a single purpose holding company, with Sequoia — which was, until that time, Smartmatic's wholly-owned subsidiary — as a separate operating company owned by the Debtor. It is nonsensical that Smartmatic could assert

---

[8] Additionally, because Smartmatic cannot sufficiently prove an alter ego theory, Smartmatic cannot reverse-pierce the corporate veil either. *See In re Phillips*, 139 P.3d 639 (Colo. 2006) (holding that a creditor may pierce through the debtor to its subsidiary only where three factors are present, one of which requires that the debtor and corporation are alter egos.)

that the Debtor operated Sequoia in a manner to mislead Smartmatic as a creditor of the Debtor. Therefore, Smartmatic should be barred from now pleading an alter ego theory.[9]

Finally, as a matter of process, in order for any alter ego theory to become the basis to sustain the fraudulent transfer claims proposed by Smartmatic, that theory would first have to prevail on the merits and cause Sequoia and its assets and liabilities to be subject to a bankruptcy case in this Court. Only then would it be appropriate even to entertain the possibility of a fraudulent transfer claim of the type that Smartmatic alleges. Even if bringing Sequoia into a bankruptcy case in this Court were appropriate here – and it is not – that would have to occur first and as a predicate to the Motion. Smartmatic cannot use the mere suggestion of such a rare event, with such a high legal hurdle, to bootstrap the otherwise inappropriate and groundless Motion.

### C.    The Debtor did not unjustifiably refuse to pursue the claims.

The final requirement Smartmatic must show to gain standing as a creditor is that the Debtor unjustifiably refused to pursue the Avoidance Actions. *In re Gibson Group, Inc*., 66 F.3d 1436, 1439-40 (6th Cir. 1995). Because, on information and belief, Smartmatic did not make a request to the Debtor to sue Dominion, Smartmatic cannot argue that the Debtor refused, unjustifiably or otherwise. In support of its argument, Smartmatic briefly argues that given the relationship between the Debtor, Jack Blaine, and Dominion, the Debtor would have "little

---

[9] Smartmatic conceivably may be pleading an argument of substantive consolidation; however, this strategy too would be improper because of the well-established case law providing that drawing a non-bankrupt entity into bankruptcy through substantive consolidation with an entity in bankruptcy is improper in any circumstance, as a circumvention of the involuntary bankruptcy statutes. *In re Owens Corning,* 419 F.3d 195, 211 (3d Cir. 2005) (calling substantive consolidation "extreme" and advising only to use this remedy as a last resort*).*

incentive" to bring these claims, and Smartmatic apparently hopes the Court will accept this as an unjustifiable refusal.[10] (Dkt. No 106 at ¶ 42-44.)

Smartmatic bears the burden of proving that the Debtor's denial is unjustifiable, and the conclusory statements offered by Smartmatic are insufficient to carry this burden. *In re Racing Services, Inc.*, 540 F.3d 892, 900 (8th Cir. 2008.) Courts have explicitly noted that "[t]o satisfy its burden, the creditor, at a minimum, must provide the bankruptcy court with *specific* reasons why it believes the Debtor's refusal is unjustified. A creditor thus does not meet its burden with a naked assertion that 'the trustee's refusal is unjustified.' If presented with nothing more than this, the bankruptcy court may properly deny a creditor's motion without explanation." *Id.* (emphasis in original). Smartmatic's brief, broad, and conclusory statements do not support this standard; therefore, Smartmatic cannot show that the Debtor's denial was unjustifiable. For this reason, and because Smartmatic cannot fulfill the other standing requirements, Smartmatic should be denied standing to pursue its proposed Avoidance Actions against Dominion.

### III. Smartmatic Would be an Inappropriate Representative of the Estate Because Smartmatic is Using its Motion as a Self-Serving Tactic in Its Existing Litigation Against Dominion

Finally, Smartmatic should be ineligible to represent the Debtor's estate in suing Dominion because Smartmatic already is engaged in a comprehensive lawsuit against Dominion in the Delaware Court of Chancery. Only two weeks before filing its Motion in this proceeding, Smartmatic sued Dominion in the Court of Chancery, a court with which Smartmatic is very familiar, having sued the Debtor there twice previously. (*See* Exhibit 3) Smartmatic's 59-page complaint against Dominion involves numerous disputes between the parties.

---

[10] Smartmatic is incorrect in its allegations that Kevin Hurst's role as the an officer or the Debtor and as a key negotiator of the 2010 Asset Purchase Agreement would prevent him from directing the Debtor to pursue claims challenging his prior actions. Mr. Hurst was not an officer of the Debtor, nor did he play a pivotal part in negotiations for the 2010 Asset Purchase Agreement.

If Smartmatic believes that it has a valid claim against Dominion for fraudulent transfers in connection with the purchase of assets from Sequoia, it should have attempted to bring the claim on its own behalf in the Delaware litigation, where Dominion would have been able to assert all of its defenses in a single proceeding. Given that the proposed Smartmatic fraudulent transfer claims involve Dominion's purchase of assets from Sequoia, rather from the Debtor, and given that this Chapter 11 proceeding is not a consolidated proceeding involving Sequoia, Smartmatic need not (and indeed should not) have sought to bring the claim in this Court. It seems evident from the circumstances that Smartmatic seeks authority from this Court to sue Dominion in an effort to gain unwarranted imprimatur and impose multiple expensive lawsuits in widely separated jurisdictions on the much smaller Dominion so as to force Dominion to settle them favorably to Smartmatic or to diminish Dominion's financial abilities to compete against Smartmatic in the international marketplace. This Court should not countenance such gamesmanship, particularly in light of the infirmities in Smartmatic's position, set out in Sections I-II above.

## CONCLUSION

For the above reasons Smartmatic's Motion for Authority and Standing to Prosecute Causes of Action on Behalf of the Debtor should be denied with respect to Dominion.

Dated this 5th day of October, 2012.

        BRYAN CAVE HRO

        */s/ Eric E. Johnson*
        Eric E. Johnson
        David B. Wilson
        1700 Lincoln Street, Suite 4100
        Denver, Colorado  80203-4541
        Telephone:     (303) 861-7000
        Facsimile:     (303) 866-0200
        Email: eric.johnson@bryancave.com
        Email: david.wilson@bryancave.com

        - and -

        WILMER, CUTLER, PICKERING, HALE AND DORR LLP
        Richard Johnston
        60 State Street
        Boston, MA 02109
        Tel:  617-526-6282
        Email: Richard.Johnston@wilmerhale.com

        Attorneys for DOMINION VOTING SYSTEMS INC. and DOMINION VOTING SYSTEMS CORPORATION

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 5th day of October, 2012, a true and correct copy of the foregoing document, OBJECTION OF DOMINION VOTING SYSTEMS, INC., AND DOMINION VOTING SYSTEM CORPORATION TO SMARTMATIC USA CORPORATION AND SMARTMATIC CORPORATION'S MOTION FOR AUTHORITY AND STANDING TO PROSECUTE CAUSES OF ACTION ON BEHALF OF THE DEBTOR OR, IN THE ALTERNATIVE, FOR APPOINTMENT OF A TRUSTEE, was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.  A true and correct copy was also deposited in the United States Mail, postage pre-paid, first class, addressed to the parties on the attached mailing matrix:

                                      */s/ Alicia Berry*
                                      Alicia Berry

```
Label Matrix for local noticing          SVS Holdings, Inc.                        US Bankruptcy Court
1082-1                                   PO Box 815                                US Custom House
Case 10-24238-HRT                        Broomfield, CO 80038-0815                 721 19th St.
District of Colorado                                                               Denver, CO 80202-2508
Denver
Fri Oct  5 11:02:22 MDT 2012

Avaya, Inc                               CIT Communications Finance Corporation    Colorado Department Of Revenue
c/o RMS Bankruptcy Recovery Services     aka Avaya Financial Services              1375 Sherman St.
P.O. Box 5126                            1162 E. Sonterra Blvd                     Room 504
Timonium, Maryland 21094-5126            San Antonio, TX 78258-4047                Attention Bankruptcy Unit
                                                                                   Denver CO 80261-0001


Internal Revenue Service                 Jack Blaine                               Jeffrey P. Bialos
P.O. Box 7346                            717 17th St, Suite 310                    Sutherland Asbill & Brennan LLP
Philadelphia, PA 19101-7346              Denver, CO 80202-3310                     1275 Pennsylvania Avenue, NW
                                                                                   Washington, DC 20004-2415


Lars Fuller                              Securities and Exchange Commission        Security & Exchange Commission
Baker & Hostetler LLP                    Midwest Regional Office                   Central Regional Office
303 East 17th Avenue                     175 W. Jackson Blvd.                      1801 California St.
Suite 1100                               Ste. 900                                  Ste. 1500
Denver, CO 80203-1264                    Chicago IL 60604-2815                     Denver CO 80202-2656


Sequoia Voting Systems, Inc.             Smartmatic Corporation                    US Trustee
717 17th St, Suite 310                   1001 Broken Sound Parkway, Suite D        999 18th St.
Denver, CO 80202-3310                    Boca Raton, FL 33487-3532                 Ste. 1551
                                                                                   Denver, CO 80202-2415



Kevin S. Neiman
1660 Lincoln St.
Ste. 1900
Denver, CO 80264-1901
```

                The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


```
(u)Rothgerber Johnson & Lyons LLP        (u)Smartmatic Corporation                 (u)Ira S. Greene




(u)Khang V. Tran                         End of Label Matrix
                                         Mailable recipients    15
                                         Bypassed recipients     4
                                         Total                  19
```