# Exhibit 3

EFile   Sep 11 2012 05:07PM EDT
Transaction ID 46378116
Case No. 7844-VCP

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

SMARTMATIC INTERNATIONAL    §
CORPORATION, SMARTMATIC USA    §
CORPORATION, SMARTMATIC    §
INTERNATIONAL HOLDING B.V.    §
   §
    *Plaintiffs*    §
   §
   §
**v.**    §    CIVIL ACTION NO.   7844-VCP
   §
DOMINION VOTING SYSTEMS    §    REDACTED VERSION --
INTERNATIONAL CORPORATION,    §    FILED SEPTEMBER 11, 2012
DOMINION VOTING SYSTEMS, INC.,    §
DOMINION VOTING SYSTEMS    §
CORPORATION and IRON MOUNTAIN    §
INTELLECTUAL PROPERTY    §
MANAGEMENT, INC.    §
   §
    *Defendants*    §

---

## VERIFIED COMPLAINT

---

Plaintiffs Smartmatic International Corporation, Smartmatic USA Corporation, and Smartmatic International Holding B.V. file this Complaint against Defendants Dominion Voting Systems International Corporation, Dominion Voting Systems, Inc., Dominion Voting Systems Corporation, and Iron Mountain Intellectual Property Management, Inc. and allege upon knowledge as to themselves, and upon information and belief as to all other matters, as follows:



## I.  PARTIES

1.      Plaintiff Smartmatic International Corporation ("Smartmatic International") is a corporation organized and existing under the laws of Barbados.

2.      Plaintiff Smartmatic USA Corporation ("Smartmatic USA") is a corporation organized and existing under the laws of Delaware.

3.      Plaintiff Smartmatic International Holding B.V. ("Smartmatic Holding") is a corporation organized and existing under the laws of the Netherlands.

4.      Plaintiffs Smartmatic International, Smartmatic USA and Smartmatic Holding will hereinafter collectively be referred to as "Smartmatic."

5.      Defendant Dominion Voting Systems International Corporation ("Dominion International") is a corporation organized and existing under the laws of Barbados.

6.      Defendant Dominion Voting Systems, Inc. ("Dominion Voting") is a corporation organized and existing under the laws of Delaware.

7.      Defendant Dominion Voting Systems Corporation is a corporation organized and existing under the laws of Canada.

8.      Defendants Dominion International, Dominion Voting, and Dominion Voting Systems Corporation will hereinafter be collectively referred to as "Dominion."

9.      Defendant Iron Mountain Intellectual Property Management, Inc. ("Iron Mountain") is a corporation organized and existing under the laws of Delaware.

2

## II.  BACKGROUND FACTS

### A.  Introduction

10.     This lawsuit arises out of Dominion's failure to honor its commitments to Smartmatic and its interference with Smartmatic's business relationships in the Philippines, Mongolia, and Puerto Rico.

11.     Smartmatic and Dominion are both engaged in the business of marketing and developing automated election technology, which is a highly competitive field characterized by several barriers that make successful entry challenging, time consuming, and costly.  In addition to developing and utilizing capable technology (i.e., the hardware, software, and firmware that comprise the voting system), successful market participants must also demonstrate financial stability, responsiveness to service requests, and a proven record of reliable performance. Because of the inherently public nature of the services provided, any performance mistakes may irreparably harm one's reputation and call into question the viability of automated elections.

12.     In 2009, Smartmatic International and Dominion International executed a License Agreement in which Dominion granted to Smartmatic a worldwide license to market, make, use, and sell precinct count optical scan ("PCOS") voting systems utilizing Dominion's optical scan voting system technology.   The License Agreement obligated Dominion International to provide Smartmatic International with, among other things, the hardware, software, firmware, and technical support needed to enable Smartmatic to exploit the broad

3

license granted by Dominion.  As set forth more fully below, Dominion International breached its obligations under the License Agreement by

(1) improperly purporting to terminate the License Agreement based upon an incorrect and pretextual interpretation of the geographic scope of the Agreement's non-compete clause;

(2) failing to deliver fully functional technology for use in the 2010 Philippines national election;

(3) failing to provide timely technical support during and after the Philippines election;

(4) failing to work collaboratively with Smartmatic to find alternative uses for the Licensed Products;

(5) failing to provide Smartmatic with  information relating to the Licensed Technology, including new developments to the Licensed Technology;

(6) intentionally frustrating Smartmatic's right to market, lease, and sell the Licensed Technology; and

(7) failing to place in escrow the required source code, hardware design, and manufacturing information.

13.     Dominion International further breached its obligations under Delaware law by acting in concert with Dominion Voting and Dominion Voting Systems Corporation to tortiously interfere with Smartmatic's prospective and on-going contractual relations in Mongolia, Puerto Rico and the Philippines.  Dominion has further harmed Smartmatic's position in the

4



marketplace by falsely claiming credit for Smartmatic's achievements, and misrepresenting the enforceability of the License Agreement and the scope of the parties' relationship. As described more fully below, Dominion has unjustly enriched itself at Smartmatic's expense and caused Smartmatic to incur significant monetary and reputational damage. Notwithstanding Smartmatic's repeated attempts to address these issues with Dominion and mitigate the commercial consequences of these actions, Dominion has consistently attempted to avoid its obligations under the License Agreement by, first, attempting to limit the scope of the Agreement and compel Smartmatic to renegotiate its terms and, then, simply disclaiming these obligations by "terminating" the License Agreement. Dominion's refusal to perform its contractual obligations has forced Smartmatic to file suit to protect its interests and enforce its rights under the License Agreement.

### B.  The PCOS Agreement

14.     Smartmatic is a leading developer of electronic voting systems and automated election technology.  In 2009, Smartmatic sought to contract with the Republic of the Philippines' ("Philippines") Commission on Elections ("COMELEC") to provide certain technology and services to modernize and automate the Philippines' National Elections ("Philippines Election Modernization Project" or "Project").  One of COMELEC's requirements for the Project was an election solution that had the ability to read and interpret data from paper ballots, and Smartmatic determined that certain PCOS technology marketed by Dominion would likely satisfy this requirement and be compatible with Smartmatic's election products.

5



Consequently, Smartmatic began negotiating with Dominion the terms for a license authorizing it to manufacture and sell voting systems which would incorporate Dominion's PCOS technology. On January 12, 2009, Smartmatic and Dominion Voting Systems Corporation executed a Memorandum of Understanding ("MOU") in which the parties agreed to continue to negotiate with one another exclusively and in good faith for the purpose of entering a definitive agreement.

15.     On April 3, 2009, the parties executed a Binding Term Sheet setting forth their respective rights and obligations regarding Dominion's agreement to license to Smartmatic all relevant technology owned by Dominion required to market, sell and implement Dominion's current and future PCOS technology.

16.     On April 4, 2009, Smartmatic International and "Dominion Voting Systems" executed a license agreement in which Dominion granted Smartmatic International a license to use and manufacture hardware, software, and firmware utilizing Dominion's technology. This agreement defines such technology as "[a]ll relevant technology owned by Dominion required to market, sell and implement PCOS technology (including all current and future versions of them), specifically inclusive of PCOS hardware, all software and firmware resident on the hardware, and [election management system] software, including the Democracy Suite EMS and Democracy Suite Image Cast PCOS." *See* April 4, 2009 License Agreement ¶ 4. The parties understood that this agreement would be used to demonstrate to COMELEC that Dominion

6

licensed and authorized Smartmatic to include and incorporate into the Project Dominion's Democracy Suite EMS and Image Cast PCOS technology.

17.    In reliance on the parties' obligations set forth in the MOU, the Binding Term Sheet, and the license agreement, Smartmatic TIM, a Philippines-based Joint Venture Company, executed a contract with COMELEC in July 2009 to provide a paper-based automated election system for the Project utilizing the Licensed Technology.[1]  Under the terms of that contract, Smartmatic TIM agreed to provide COMELEC with electronic voting machines, consolidation and canvassing systems, transmission expertise, technical assistance, and overall project management.  The contract further provided COMELEC the right to purchase certain voting products and systems from Smartmatic TIM at the conclusion of the Project.  Defined by this agreement as the "Goods," the voting systems and products subject to COMELEC's option to purchase are defined as "the [PCOS] machines and their peripherals, personal computers, servers, electronic transmission devices, printers, integrated software and other related equipment, both hardware and software, including all deliverable supplies . . . and all other materials necessary to carry out the Project."  *See* July 10, 2009 Contract between Smartmatic TIM and COMELEC at § 1.14.  This option to purchase, if exercised, also included a perpetual license to use the "Goods" and the right to modify or customize such "Goods" for future

---

[1] Smartmatic TIM is a joint venture between Total Information Management Corporation ("TIM") and Smartmatic International Corporation organized under Philippines law.

7



elections at COMELEC's expense. In sum, COMELEC was acquiring the option to purchase an integrated, fully-functional automated voting system that utilized the Licensed Technology, with the right to modify and enhance the voting system as technology advanced.

18.     On October 9, 2009, Smartmatic International and Dominion International expanded upon the obligations set forth in the MOU, the Binding Term Sheet, and the April 2009 license agreement by executing the License Agreement, in which Dominion International granted to Smartmatic International a worldwide license "to make, have made, use, import, offer for sale, lease and sell" voting systems utilizing that certain PCOS technology developed by Dominion International ("Licensed Products"), which included, but was not limited to, the technology described on Exhibit A to the Agreement. Agreement §§ 1.4, 2.1. Entitled "PCOS Voting Systems Specifications and Trademarks", Exhibit A specifically identifies and describes the then current version of Dominion's ImageCast Precinct Count Optical Scanner and its Democracy Suite Election Management System, which together comprise the Licensed Technology incorporated into the Licensed Products for use in the Project.

19.     In addition to authorizing Smartmatic International to incorporate Dominion's PCOS technology into automated election platforms offered by Smartmatic, the License Agreement obligates Dominion International to provide "all know-how, trade secrets, methodologies and other technical information relating to the generally released Dominion PCOS voting systems (not including internal releases)" ("Licensed Technology"), and to "provide Smartmatic with all information related to the Licensed Technology . . . as may be

8

reasonably necessary for Smartmatic to exploit the licenses granted in [the Agreement.]"
Agreement at §§ 1.4, 2.2. Dominion International further agreed to provide certain technical
assistance to ensure the Licensed Technology functioned properly. *See, e.g.,* Agreement at §§
2.2, 3.1 ("Dominion [International] shall provide at ███ cost a minimum base level of support
of 1 full time equivalent for the hardware, software, firmware and [election management system]
developed by Dominion [International] for inclusion in Licensed Products").

20.   In the event Dominion International modifies or enhances the Licensed
Technology, and makes such modifications or enhancements "generally available" to its
customers or licensees, the License Agreement obligates it to "provide Smartmatic with
sufficient information with respect to such modifications or enhancements to enable Smartmatic
to incorporate [the] modifications or enhancements into [the] Licensed Products." Agreement §
3.2. Further, should Dominion International develop and release products incorporating new
PCOS technology, it must make such new technology available to Smartmatic International upon
its release to Dominion's other customers or licensees. *See id.*

21.   The License Agreement also provides Smartmatic International "the right to
request Dominion support and to make new developments, additions, modifications or
enhancements to the Licensed Technology ('Requested Improvements')." *Id.* § 3.3. Smartmatic
International must compensate Dominion International for any such Requested Improvements ███
███████████, unless otherwise agreed by the Parties in an applicable statement of work. *See
id.* Although Requested Improvements are subject to Dominion International's approval, the

9



License Agreement does not authorize Dominion to refuse any reasonable requests made by Smartmatic pursuant to this section. *See id.*

22.     The Agreement required Dominion International to "place all of its source code for the firmware and [election management system software], as well as all hardware design and manufacture related documents as per Exhibit B, in an escrow account with a third party escrow agent approved by Smartmatic." Agreement § 5.2. Exhibit B to the License Agreement states that "the concept Source Code and IP to be placed in escrow by Dominion applies to the current version and the immediate prior version" of the subject technology, source code, and other information as enumerated in that Exhibit ("Escrowed Materials"). Exhibit B to the Agreement. In the event Dominion International breaches its obligations to provide the products or support it is obligated to provide under the Agreement, and fails to cure such breach within thirty days of receipt of notice from Smartmatic International, "such [E]scrowed [M]aterials shall be released to Smartmatic for the sole purpose of providing such products or services that Dominion [International] failed to provide."[2] Agreement § 5.2.

---

[2]     In furtherance of Dominion International's escrow obligations under Section 5.2 of the License Agreement, Dominion International, Smartmatic International and Iron Mountain executed a Three-Party Escrow Service Agreement on or about April 27, 2010, which sets forth the parties' various rights and obligations relating to the Escrowed Materials ("Escrow Agreement"). Pursuant to the terms of that contract, Dominion International was obligated to deposit the Escrowed Materials with Iron Mountain within ten days. *See* Escrow Agreement §2(a). The Escrow Agreement also enumerates the contents of the Escrowed Materials and obligates Dominion International to deposit with Iron Mountain "the current version and the immediate prior version" of all such Materials. *See id.* §5. Further, Dominion must provide Iron Mountain a complete and functional copy of the Escrowed Materials at all times. *See id.* §2(a). Dominion Voting Systems Corporation certified the Escrowed Materials in Exhibit Q of the Escrow Agreement. *See id.* Exh. Q.

10

23.     The Agreement also contained a termination clause: should Dominion International default on any of its obligations under the Agreement and fail to remedy such default within sixty days after receiving notice by Smartmatic International, "Smartmatic shall be entitled to terminate th[e] Agreement by written notice to Dominion [International]."[3]  *See* Agreement § 7.2.   Section 7.2 further provides that "[u]pon termination of this Agreement pursuant to this Section 7.2, no Party shall be relieved of any obligations incurred prior to such termination and the Party seeking termination shall be entitled to damages caused by the other Party['s] breach of this Agreement." *See id.*

24.     In exchange for the license described above, Section 3.4 of the Agreement, entitled "Non-Compete," restricts Smartmatic International's ability to "develop, market or sell" PCOS voting systems.  Agreement § 3.4.  These restrictions purport to prevent Smartmatic from developing, marketing or selling any Licensed Products in the United States during the term of the Agreement.  *See id.*  Although the phrase "in the United States" was not separately defined in the License Agreement, both parties understood that phrase to delineate the geographic area in the fifty states and not territories possessed by the United States or commonwealths associated with the United States.  Further, it was the intention and understanding of the parties that Dominion would focus its energies on the domestic market in the United States, while

---

[3]     Dominion has similar termination rights.  *See* Agreement § 7.2 ("Dominion shall be entitled to terminate this Agreement by written notice to Smartmatic in the event that Smartmatic shall be in default of any of its obligations hereunder and shall fail to remedy any such default within sixty (60) days after notice thereof by Dominion").

Smartmatic focused its attention on international markets other than in the United States or Canada.

25.     Because of the inherent sensitivities associated with the parties' obligations to one another, and to third-parties, the License Agreement contained a confidentiality provision that prohibited Smartmatic from disclosing the Agreement's terms or even its existence without Dominion's written consent. *See id.* § 8.14 ("In no event shall Smartmatic disclose the terms or existence of this Agreement without the prior written consent of Dominion").

26.     The parties selected Delaware law to govern and interpret the License Agreement. *See id.* § 8.2. They also "irrevocably submit[ted] to the nonexclusive jurisdiction of the state and federal courts of the State of Delaware" for any dispute arising out of or relating to the Agreement. *Id.* § 8.3. The parties further "irrevocably agree[d]" to submit all related claims, disputes, actions or proceedings "solely to such courts" and, thus, "irrevocably waive[d]" any objection to venue for any such disputes brought in a Delaware court. *Id.*

27.     The Agreement became effective on its execution date, October 9, 2009, and terminates on April 3, 2014, "unless terminated earlier in accordance with the provisions of this Article 7." *Id.* § 7.1.

28.     At the time it executed the License Agreement with Smartmatic International, Dominion International was not only aware that Smartmatic intended to utilize the Licensed Technology for the purposes of the Project in the Philippines, but Dominion was also aware that COMELEC had the option to purchase the voting products and systems (i.e., the "Goods")

12

incorporating the Licensed Technology with the perpetual right to use and modify the Licensed Technology in all future elections.

### C.   The Statement of Work

29.     At or about the time the parties executed the License Agreement, Dominion International and Smartmatic International executed an initial Statement of Work (Statements of Work are also defined as "SOW"), which they supplemented and amended a number of times as the Project progressed and its technical scope became more defined.

30.     The initial Statement of Work sets forth the specific tasks, deliverables, and technical support required of Dominion International relating to the Project.  *See id.* § 1.6 (identifying the "SOW" as "the document agreed [to] by the Parties which contains specific terms and conditions for specific projects").  The initial SOW incorporates a series of tables that identify the Parties' respective obligations, tasks, and milestones.   *See* Initial SOW § 4 ("Dominion [International] will provide . . . the Project Assistance that is detailed below in Table 1 and 2"); *see also* Agreement at 29 [Table 2] ("The following Dominion Development items reflect [the] initial set of requirements for the proposed functionality").   The Agreement incorporates the SOW by reference. *See id.* § 8.7.

31.     Tracking the language of the License Agreement, the initial SOW obligates Dominion International to provide Smartmatic International "all information related to the Licensed Technology . . . as may be known or possessed by Dominion [International] and as may

13



be reasonably necessary for Smartmatic to exploit the licenses granted" in the License Agreement. Initial SOW § 3.

32.    Among the products the initial SOW tasked Dominion International with providing include: the delivery of certain PCOS training manuals and manufacturing documents, *see* Agreement at 25-26; the delivery of certain PCOS firmware, *see id.* at 25; the delivery of certain PCOS hardware, *see id.* at 25; and, the delivery of election management system ("EMS") software designed to be used with Dominion International's PCOS system, *see id.* at 26.

33.    The initial Statement of Work further obligates Dominion International to provide project assistance and technical support to ensure the Licensed Technology functions properly. *See* Initial SOW §§ 4 ("Project Assistance at no Additional Charge"), 5 ("Additional Project Assistance"). Among the specific support functions assigned to Dominion International in the initial SOW include: manufacturing support, *see* Agreement at 26; support for configuring the EMS platform, including the generation of configuration files for the PCOS units, *see id.* at 27; quality assurance support, *see id.* at 26; and, certain quality control testing functions, *see id.* at 33.

34.    In the event COMELEC chose not to exercise its option to purchase the voting products and systems incorporating the Licensed Technology (defined as "Goods" in its contract with Smartmatic TIM), the initial SOW obligates Dominion International to work collaboratively with Smartmatic International to identify alternative means of employing these devices, and to sell or lease such items from Smartmatic's inventory prior to selling or leasing new PCOS

14

systems to other customers, so long as the Licensed Products in inventory could reasonably be made to meet the customer's requirements. *See* Initial SOW § 8.

35.     In the event COMELEC exercises its purchase option, "Smartmatic shall pay Dominion an additional license fee in the amount ███████████████████████ the receipt of payment from COMELEC or any third party of the purchase option price or any other purchase or lease payment."[4]   *Id.* § 9 ("Additional Payments").   In furtherance of Dominion's obligations under Section 8 of the Initial SOW, Smartmatic International and Dominion International discussed contingency arrangements for the redeployment of the Licensed Products in the event COMELEC chose not to exercise its purchase option.

### D.   The 2010 Election Modernization Project in the Philippines

36.     The first phase of the Project was intended to culminate with the successful completion of the Philippines' first automated general election, which was scheduled for May 10, 2010 ("Election"). The Election was comprehensive: including both national and local races, there were over 85,000 candidates vying for nearly 17,000 positions, with an electorate of over 50 million voters. Moreover, there was considerable local concern regarding the potential consequences of moving to automated voting given the recent history of elections in the Philippines, which were characterized by violence and allegations of fraud.

---

[4] To the extent Dominion is entitled to any Additional Payments, which Smartmatic denies since any such obligations have not yet accrued and thus post-date Dominion's "termination," such Additional Payments are subject to the doctrines of setoff and/or recoupment based upon the quantum of Smartmatic's damages as described herein.



37.     During a test of the automated voting system conducted shortly before the Election, COMELEC and Smartmatic discovered a defect in the Licensed Technology—Dominion International's software failed to correctly read and record the paper ballot. Once Dominion acknowledged the problem with the software and proposed a solution, Smartmatic International had to obtain, load, distribute, and install new memory cards with the reprogrammed software to over 76,000 PCOS voting systems, most of which had already been delivered to the various polling stations located throughout the 7,100 islands in the archipelago. These steps were necessary to ensure the correct interpretation of votes cast on approximately 50,000,000 paper ballots that had already been printed and were ready for use. Remedying this programming error—for which Dominion International contemporaneously acknowledged responsibility—caused Smartmatic International to incur significant monetary damages and reputational harm, and allowed some to cast doubt as to the legitimacy of the elections themselves. Not only did Smartmatic incur over thirteen million dollars in remedial expenses, but as a direct consequence of Dominion International's failure to perform, COMELEC withheld funds owed to Smartmatic International, initiated a public investigation into Smartmatic's handling of the election and delayed its decision to purchase the voting products and systems (the "Goods") pending additional technical verification. This failure also led to a series of judicial challenges questioning the use of the Licensed Technology for future elections, which continue to this day. Smartmatic has incurred damages in excess of $ 20 million as a result of Dominion's failure to deliver functional Licensed Technology.

16



38.     Following the completion of the Election, COMELEC asked Smartmatic International to make certain modifications to the Licensed Products.  Because some of these modifications required adjustments to the Licensed Technology, Smartmatic International requested Dominion International's assistance with satisfying COMELEC's requirements.  *See* Agreement § 3.3.  Dominion International failed to timely respond and, contrary to the terms of the License Agreement, sought to use the amendments to the SOW to impose new contractual conditions for its performance.  Among other things, Dominion International sought to limit its liability for all such additional technical support, notwithstanding that such work was related to pre-existing contractual obligations under the License Agreement.  Dominion International's refusal to provide timely assistance pursuant to these obligations materially harmed and delayed Smartmatic TIM's ability to sell the Licensed Products to COMELEC.[5]  As a result of Dominion International's failure to provide such support, COMELEC delayed its exercise of its purchase option, which has caused Smartmatic to incur significant monetary damages, including local storage fees in excess of $ 2.5 million per year.

39.     On March 30, 2012, COMELEC agreed to purchase the voting products and systems (the "Goods") pursuant to its contract with Smartmatic TIM.  Accordingly, COMELEC

---

[5] In September 2010, COMELEC executed a deed of sale to acquire 920 voting machines.  Although Smartmatic has not yet received full payment from COMELEC for this limited purchase and, thus, payment to Dominion is not yet due, Smartmatic nonetheless forwarded payment to Dominion at the rate set forth in Section 9 of the initial SOW on August 8, 2012 as a gesture of good faith.

17

and Smartmatic TIM executed a Deed of Sale setting forth the terms of sale, which included the completion of certain enhancements and modifications to the Licensed Technology. Smartmatic will not receive full and final payment for the Goods incorporating the Licensed Products until these modifications and enhancements have been completed and are verified by COMELEC, and payment is received from Smartmatic TIM.

40.    Smartmatic presented COMELEC's requested enhancements and modifications to Dominion in March 2012 pursuant to Smartmatic's contractual rights under Section 3 of the License Agreement.    Moreover, Smartmatic advised Dominion that these requested enhancements and modifications were conditions precedent to COMELEC's acceptance of such voting products and systems, were in preparation for the Philippines 2013 national elections, and must therefore be completed on a timely basis. Following various requests by Smartmatic for confirmation of work estimates and timescales to complete the requested improvements, Dominion purported to terminate the Agreement on May 23, 2012.    Moreover, Dominion notified Smartmatic on June 6, 2012 that it would only perform the required modifications and enhancements if Smartmatic agreed to revise the payment terms and limitations of liability set forth in the License Agreement. Dominion's proposed new terms were wholly inconsistent with the parties' existing contractual obligations and significantly to Dominion's advantage. The following week, Dominion notified Smartmatic it would not complete the requested modifications and enhancements unless Smartmatic further agreed to waive any and all claims it may have against Dominion.

18



41.     To effectively service, modify, or enhance the Licensed Products, as authorized by the License Agreement, Smartmatic International must have either Dominion's contracted for assistance or access to the Escrowed Materials.  Dominion International's refusal to provide the products and support requested by Smartmatic International may, therefore, only be remedied by the release of the materials in escrow, or required to be escrowed, with Iron Mountain pursuant to Section 5.2 of the License Agreement.  Agreement § 5.2 ("In the event Dominion breaches its obligations to provide the products or support it is obligated to provide under this Agreement and fails to cure such breach within thirty (30) days of receipt of notice from Smartmatic, such escrowed materials shall be released to Smartmatic for the sole purpose of providing such products or services that Dominion failed to provide").

42.     Accordingly, pursuant to Section 4(d) of the Escrow Agreement, Smartmatic International asked Iron Mountain to verify that Dominion International had, in fact, placed in escrow the materials identified in Section 5 of the Escrow Agreement.[6]  *See* Escrow Agreement §§ 4(d), 5.  Iron Mountain recently confirmed that Dominion International has not deposited a complete set of these materials: Dominion did not place in escrow any of the required materials until May 2012, despite its prior representations to the contrary, and even then only deposited

_____

[6] In March 2010, Dominion provided a certificate of deposit stating that the Escrowed Materials had been deposited with Iron Mountain.  Smartmatic relied upon this representation and further believed that Dominion continued to place in escrow new versions of these Materials as they were developed, pursuant to Dominion's obligation to deposit with Iron Mountain "the current version and the immediate prior version" of all Escrowed Materials. Exhibit B to the Agreement.

19

with Iron Mountain an older version of them, although the License Agreement requires Dominion to deposit into escrow the current version and the immediate prior version of its Source Code and relevant intellectual property.[7]   *See id.*   Smartmatic International also understands that Dominion International may have intentionally placed in escrow encrypted Source Code and/or other Escrowed Materials such that in the event this information is required for any reason connected with the Project, it will not be capable of functional application without Dominion's direct support and involvement.

43.    On June 1, 2012, Smartmatic International asked Dominion to fulfill its escrow obligations within ten days by placing in escrow the current version and the immediate prior version of the Escrowed Materials. *See* Smartmatic International Letter dated June 1, 2012. On June 11, 2012, Dominion International notified Smartmatic International that it considered the Agreement terminated as of May 23, 2012, notwithstanding the fact that no opportunity to cure was ever provided, and specifically disclaimed its support and escrow obligations. *See* Dominion International Letter dated June 11, 2012. Smartmatic has reminded Dominion that it incurred these obligations prior to Dominion's purported termination of the License Agreement,

---

[7] According to its own website and press materials, Dominion has modified and enhanced the Licensed Technology over the past few years. In fact, Dominion's website boasts that its Democracy Suite 4.0, which includes the ImageCast Evolution, Precinct, and Central Count Scanners, as well as the associated Election Management System, has been certified by the United States Election Assistance Commission. Although Smartmatic has a contractual right to this modified and enhanced technology, Dominion is withholding this technology from Smartmatic and has repeatedly notified Smartmatic's negotiating partners that Dominion has superior technology. Dominion is reportedly using this as a basis for competing against Smartmatic.

and Section 7.2 of the Agreement expressly prohibits Dominion from using "termination" as a basis for refusing to fulfill its previously incurred obligations.  Nonetheless, Dominion refuses to fulfill Smartmatic's requests for improvements, modifications, and enhancements to the Licensed Technology, or to place in escrow the current version and the immediate prior version of the Escrowed Materials, so that Smartmatic may provide the products or services Dominion refuses to provide.

### E.  The June 2012 Mongolia Election

44.    Dominion International's failure to fulfill its obligations relating to the Project is not the only instance whereby Dominion has failed to honor the License Agreement and prevented or adversely affected Smartmatic International from exercising its rights to market the Licensed Technology. Based on information and belief, Dominion International has violated its obligation under the License Agreement to provide Smartmatic with the technical information owned or possessed by Dominion relating to the Licensed Technology, which Dominion is using to compete against Smartmatic and undermine Smartmatic's attempts to market and sell Licensed Products. *See* Agreement §§ 1.4, 3.

45.    For example, Dominion has acknowledged that it demonstrated certain critical functionality relating to the Cyrillic language before the Mongolian Election Authorities, but refuses to provide Smartmatic International with sufficient information regarding such functionality so as to enable Smartmatic to incorporate the functionality into the Licensed Products, while at all times denying that the functionality in any way represented Licensed

21

Technology. *See id.* Moreover, when requesting access to and support for such functionality, Dominion responded with development timescales that were designed to prejudice the ability of Smartmatic to compete with Dominion on equivalent terms and on a strategic market opportunity in which the ability to demonstrate a voting system's compatibility with the Cyrillic language represented a major achievement. Dominion reportedly notified the Authority that Smartmatic does not have access to the demonstrated functionality, which may only be obtained through Dominion directly.

46.     On March 5, 2012, Smartmatic International notified Dominion International that it had breached its contractual obligations and demanded access to the demonstrated technology pursuant to Section 3.2 of the License Agreement. Dominion International ignored Smartmatic's correspondence and refuses to provide this modified or enhanced technology to Smartmatic International.

47.     In consequence of the demonstration provided by Dominion, the Mongolian Election Authorities reportedly agreed to purchase the ImageCast PCOS voting system from Dominion, without reference to any further open bidding process, and the said system was used in the first automated elections held in Mongolia in June 2012.

### F.   The November 2012 Puerto Rico Election

48.     In June 2011, the Puerto Rico State Elections Commission ("Commission") issued a request for proposal relating to the acquisition of hardware, software and support

22

services for the purpose of implementing a uniform electronic vote counting system using optical scanning voting technology.

49.     Both Smartmatic and Dominion submitted bids in response to the Commission's request for proposal.   Shortly thereafter, Smartmatic entered into discussions with the Commission to provide the requested automated election products and services.   Based on the status of those negotiations, and on an extensive period of prior discussions and demonstrations with the Puerto Rican authorities going back many years, Smartmatic believed it had a reasonable expectation of entering a contractual relationship with the Commission.

50.     Smartmatic recently learned that Dominion informed the Commission that Smartmatic does not have access to the latest Certificated PCOS technology developed by Dominion and which Smartmatic understands represented a condition precedent to securing a successful bid pursuant to the terms of the Request for Proposal.   If true, Dominion International has violated its obligations under the License Agreement by failing either to provide Smartmatic International with the Licensed Technology and/or modifications and enhancements to the Licensed Technology, or to license and make available to Smartmatic International Dominion's new PCOS technology.   *See* Agreement § 1.4 (definition of Licensed Technology) and § 3.2. Alternatively, if Dominion International has not denied Smartmatic International access to Dominion's new, modified, or enhanced PCOS technology, but instead misrepresented to the Commission Smartmatic's right to access such technology, it has wrongfully interfered with

23

Smartmatic's prospective business relationships and adversely affected Smartmatic's right to market, lease and sell the Licensed Technology.

51.     Dominion also misrepresented to the Commission the scope of the geographic restriction in the License Agreement by claiming that Smartmatic is contractually prohibited from competing against it in Puerto Rico. Dominion made this representation with the full knowledge that, at the time the parties executed the License Agreement, they intended to treat Puerto Rico as an international market available to both parties.

52.     Smartmatic has recently discovered that Dominion, in seeking to secure the Puerto Rican election opportunity, also sought to procure manufacturing capacity and expertise from Smartmatic's exclusive contract manufacturer, thereby seeking to induce the contract manufacturer into breaching its exclusive manufacturing agreement with Smartmatic.

53.     Once Smartmatic became aware of Dominion's interference with the Commission, it immediately demanded that Dominion contact the Commission in writing and correct its misrepresentations. Based on information and belief, Dominion has failed to take any steps to correct its misrepresentations and is therefore responsible for all damages Smartmatic suffers as a consequence.

54.     As a result of the misrepresentations referred to above, the Commission refused to entertain negotiations with Smartmatic, notwithstanding the fact that Smartmatic had ready access to manufacturing capability, had presented a lower bid, and had access to the financial

24

resources required by the Commission, which began exclusive negotiations with Dominion instead.

55.     On information and belief, after having decided to award the contract for the provision of a PCOS automated voting system to Dominion and following extensive negotiations between the parties, the Puerto Rican Election Commission declared it had suspended its automation and modernization project because Dominion sought to vary the terms of the original request for proposal by refusing to provide the requisite Financial Performance Bond and sought to impose additional contractual conditions that made the completion of the project unpalatable and subject to judicial challenge.  Consequently, Dominion deprived all parties of this business opportunity and denied the Puerto Rican people the opportunities and benefits afforded by automated voting.

56.     Dominion International's conduct in Mongolia and Puerto Rico appear to be consistent with a pattern of activity designed to interfere with Smartmatic's prospective business relationships and prejudice Smartmatic International's ability to compete.

### G. Dominion's Invalid Attempt at Terminating the License Agreement

57.     Thirteen months after the Puerto Rican Election Commission issued its Request for Proposal, which Dominion knew had been the subject of a formal bid response by Smartmatic, Dominion International notified Smartmatic International on May 23, 2012 that "pursuant to Section 7.2 of the PCOS Agreement, [Smartmatic] is in breach of the PCOS Agreement and [Dominion International] is terminating the agreement as a result of such

25

breach." *See* Dominion International Letter dated May 23, 2012. Dominion International further claimed that Smartmatic International's purported breach "is not capable of being remedied. . . [so] the PCOS Agreement is terminated immediately," or "in the unlikely event that Dominion International is not entitled to immediate termination. . . the [License] Agreement will terminate 60 days from Your receipt of this Notice." *Id.* The letter further instructed Smartmatic International to "cease using any Licensed Product in any jurisdiction" and to "return to Dominion International all Confidential Information as defined in Section 6 of the Agreement." *Id.* Dominion based its "termination" solely upon its interpretation of Section 3.4 ("Non-Compete") and whether Puerto Rico is "in the United States," as that phrase is used in the Agreement. *Id.*

58.     On May 24, 2012, the next day, Smartmatic International notified Dominion International that its purported termination of the License Agreement was invalid; the Agreement remained a valid, binding and enforceable contract; and Dominion International must therefore immediately withdraw its "termination" notice and fulfill its contractual obligations. *See* Smartmatic International Letter dated May 24, 2012. On June 5, 2012, Smartmatic International reiterated its position regarding the invalidity of Dominion International's purported termination and requested confirmation from Dominion that it would fulfill its contractual obligations under the Agreement. *See* Smartmatic International Letter dated June 5, 2012.

59.     On June 11, 2012, Dominion International confirmed it "terminated" the License Agreement as of May 23, 2012. *See* Dominion International Letter dated June 11, 2012.

26

Dominion further asserted that it was under no obligation to fulfill its obligations to Smartmatic International pursuant to that contract and specifically denied any obligation to fulfill its escrow and support obligations (sections §§ 5.2 and 3.3, respectively). *See id.* Although Dominion subsequently acknowledged that Smartmatic communicated its requests for enhancements, modifications, improvements, and technical support from Dominion prior to Dominion's "termination" notice, Dominion claims its purported termination "wip[ed] out that obligation." *See* Dominion International Letter dated July 10, 2012 ("Smartmatic may have contacted Dominion for the Requested Improvements from Dominion before the date Dominion terminated the PCOS Agreement on May 23, 2012, to the extent Dominion had any obligation, it was to deliver those Requested Improvements and such delivery obligation would not have occurred until after the termination of the PCOS Agreement, thereby wiping out that obligation"). Because Dominion refuses to provide technical support, COMELEC's requested modifications and enhancement have not been fully implemented, and Smartmatic has not yet received final payment from COMELEC. Any obligations under Section 9 of the initial Statement of Work ("Additional Payments") have, therefore, not yet accrued and post-date Dominion's "termination."

60.    Smartmatic has repeatedly notified Dominion that its purported termination of the License Agreement is both substantively and procedurally infirm. First, Dominion has misinterpreted the geographic restrictions set forth in Section 3.4 of the Agreement ("Non-Compete"). Dominion's position is not supported by law, the Agreement, or the parties' intent.

27

Second, Dominion's "termination" fails to comply with the requirements set forth in the License Agreement. In the event of a purported breach, Section 7.2 authorizes the non-breaching party to terminate the Agreement, but only after providing notice of the alleged breach followed by a sixty day period during which the breaching party has an opportunity to cure. Although Smartmatic International denies that it is in breach of any of its contractual obligations, Dominion International has purported to terminate the Agreement without providing Smartmatic the opportunity to cure any alleged breach. Dominion International's purported termination fails to comply with the requirements of Section 7.2 and is, therefore, invalid. Moreover, Section 7.2 expressly forbids Dominion from using termination, even a valid one, as a basis for refusing to perform its previously incurred contractual obligations, such as Dominion's escrow and support obligations described above. Nonetheless, Dominion has refused to fulfill its obligations under the Agreement since it issued its "termination" notice on May 23, 2012.

61.    In an attempt to mitigate its damages, Smartmatic continued to communicate with Dominion following its "termination" in May 2012; however, Dominion refuses to fulfill its contractual obligations under the License Agreement unless Smartmatic agrees to revise the payment terms and limitations of liability set forth in the Agreement. Moreover, Dominion has further conditioned its performance upon Smartmatic's agreement to waive any and all claims Smartmatic may have against Dominion. Dominion's unqualified refusal to perform its existing contractual obligations under the License Agreement unless and until Smartmatic accedes to these new terms was intended to radically alter the parties' existing contractual obligations: these

28

new terms are wholly inconsistent with and fundamentally different from the obligations contained in the License Agreement, and are significantly to Dominion's advantage. Dominion's continued refusal to perform its obligations under the License Agreement has forced Smartmatic to file suit to protect its interests and enforce its contractual rights.

## III.  IRREPARABLE HARM

62.    If Smartmatic is denied its bargained-for right either to obtain from Dominion modifications, enhancements, improvements, and new developments to the Licensed Technology, or to access the Escrowed Materials for the purpose of providing the products or services Dominion refuses to provide, Smartmatic will suffer immediate and irreparable harm, the consequences of which are unpredictable and beyond the parties' control. As demonstrated above, Dominion is systemically engaging in anticompetitive conduct designed to jeopardize Smartmatic's revenue-generating relationships and harm its ability to compete in a market segment characterized by significant barriers to entry.   If Dominion is not prevented from withholding its services and Escrowed Materials from Smartmatic, Smartmatic will be compelled to seek alternative methods of incorporating the modified Licensed Technology into its automated election systems to attempt to mitigate the consequences of its lack of access to the underlying technology, which will jeopardize Smartmatic's current business relationships and deprive it of opportunities to develop new ones.  Paradoxically, Dominion's refusal to fulfill its contractual obligations will imperil *Smartmatic's* standing in the marketplace.  Dominion has done just that in Mongolia and Puerto Rico, where it misrepresented Smartmatic's ability to

29

access the Licensed Technology and persuaded entities with whom Smartmatic was negotiating to withdraw from negotiations with Smartmatic and pursue a contractual relationship with Dominion instead.

63.     Smartmatic's request for expedited relief is further justified because of the difficulty of quantifying its damages after the fact, which would be imprecise, difficult to calculate, and would not provide full, fair, and complete relief for the alleged wrong in any event. The inevitable harm to Smartmatic's reputation, loss of goodwill, and revenue-generating relationships is difficult, if not impossible, to measure and cannot adequately be compensated by monetary damages alone. Smartmatic will, therefore, suffer irreparable harm in the absence of expedited judicial intervention.

## COUNT I

### Declaratory Judgment

64.     Plaintiffs hereby incorporate paragraphs 1 through 63 as though fully set forth herein.

65.     Despite the clear language in the License Agreement, Dominion International refuses to acknowledge its contractual obligations to Smartmatic International. An actual controversy has therefore arisen and now exists between the Parties regarding Dominion International's obligations under this Agreement. Accordingly, pursuant to the Delaware Declaratory Judgment Act, 10 *Del. C.* §§ 6501 *et seq.*, Smartmatic seeks a declaration from the Court on the following:

## 1.   Dominion's "termination" of the License Agreement is invalid

66.   Under section 7.2 of the License Agreement, Dominion International may terminate the Agreement "by written notice to Smartmatic [International] in the event that Smartmatic [International] shall be in default of any of its obligations hereunder and shall fail to remedy any such default within sixty (60) days after notice thereof by Dominion [International]." On May 23, 2012, Dominion International notified Smartmatic International of an alleged breach, but purported immediately to terminate the Agreement without providing Smartmatic International the required sixty days to cure any alleged default. Dominion International's notice fails to fulfill the preconditions for termination set forth in the Agreement and is therefore invalid. Moreover, Dominion's "termination" is substantively infirm because it is based upon a misinterpretation of the geographic restrictions set forth in Section 3.4 of the Agreement ("Non-Compete"). Dominion's interpretation of this provision is not supported by applicable law, the Agreement, or the parties' intent. Despite Smartmatic International's communications to Dominion contesting the validity of Dominion International's purported termination on both of these points, Dominion International has not withdrawn its "termination" or otherwise given Smartmatic International any indication that it will fulfill its contractual obligations under the Agreement. In fact, Dominion has repeatedly and unequivocally confirmed its purported termination of the Agreement and its refusal to perform its obligations under that contract.

67.   Smartmatic seeks a declaration from the Court that Dominion International's purported termination of the Agreement is invalid.

31

68.     Smartmatic International also seeks to recover its attorneys' fees and costs.

2        (a).     **The License Agreement is valid, binding, and enforceable; Dominion must specifically perform its obligations under Section 3 of the Agreement and the related Statements of Work within thirty days and release to Smartmatic the Escrowed Materials for the sole purpose of providing the modifications, enhancements, and improvements Dominion fails to provide;**

69.     Under section 7.2 of the License Agreement, Dominion International may terminate the Agreement "by written notice to Smartmatic [International] in the event that Smartmatic [International] shall be in default of any of its obligations hereunder and shall fail to remedy any such default within sixty (60) days after notice thereof by Dominion [International]." Dominion purported to terminate the License Agreement on May 23, 2012, but failed to fulfill the substantive and procedural requirements for termination set forth in section 7.2 of the Agreement. Dominion's attempted termination is, therefore, invalid and the License Agreement remains a valid, binding, and enforceable contract.

70.     Section 3 of the Agreement and Section 5 of the Philippines Project's initial Statement of Work obligate Dominion to provide certain technical support services relating to the Licensed Technology. Moreover, Section 5.2 of the Agreement obligates Dominion International to place in escrow "all of its source code for the firmware and EMS, as well as all hardware design and manufacture related documents." "In the event Dominion [International] breaches its obligations to provide the products or support it is obligated to provide. . . and fails to cure such breach within thirty (30) days of receipt of notice from Smartmatic, such escrowed

32

materials shall be released to Smartmatic for the sole purpose of providing such products or services that Dominion [International] failed to provide."

71.    COMELEC has requested from Smartmatic certain modifications, comprising enhancements and improvements to the Licensed Products or, alternatively, Additional Project Assistance, some of which require adjustments to the Licensed Technology.  Pursuant to the Agreement, which obligates Dominion to provide Smartmatic with technical support and assistance to make such requested modifications and improvements, Smartmatic specifically requested Dominion's assistance with those modifications that required adjustments to the Licensed Technology.  Because the Licensed Technology includes Dominion's proprietary source code and intellectual property, Smartmatic requires Dominion to perform its support obligations under the Agreement for the purpose of the 2013 Philippines elections and also to release the Escrowed Materials to Smartmatic to enable Smartmatic to provide the support which Dominion refuses to provide.

72.    Smartmatic seeks a declaration from the Court that the License Agreement remains valid, binding and enforceable, and Dominion International must, therefore, specifically perform its obligations under Section 3 of the License Agreement and the related Statements of Work within thirty days and release to Smartmatic the Escrowed Materials for the sole purpose of providing the products or services Dominion fails to provide.

73.    Smartmatic International also seeks to recover its attorneys' fees and costs.

33



(b)   **Alternatively, Dominion's refusal to perform its contractual obligations under the License Agreement constitutes a repudiation of the Agreement; Smartmatic is discharged from its performance obligations under the Agreement as of the date of Dominion's repudiation, including any obligation to provide the Additional Payments to Dominion as set forth in Section 9 of the initial Statement of Work, and the Escrowed Materials are to be released to Smartmatic for the sole purpose of providing such products or services that were accrued obligations of Dominion prior to its repudiation.**

74.   Under section 7.2 of the License Agreement, Dominion International may terminate the Agreement "by written notice to Smartmatic [International] in the event that Smartmatic [International] shall be in default of any of its obligations hereunder and shall fail to remedy any such default within sixty (60) days after notice thereof by Dominion [International]." Dominion purported to terminate the License Agreement on May 23, 2012, but failed to fulfill the substantive and procedural requirements for termination set forth in section 7.2 of the Agreement.   Dominion's attempted termination is, therefore, invalid and Dominion's unequivocal notice that it will not perform its valid, binding, and enforceable obligations under the License Agreement coupled with its outright refusal to perform these obligations constitute a repudiation of that contract.

75.   COMELEC has requested from Smartmatic certain modifications to the Licensed Products.  Since some of the modifications requested by COMELEC require adjustments to the Licensed Technology, which contains Dominion's proprietary source code and intellectual property, Smartmatic specifically requested Dominion's assistance with these modifications pursuant to Section 3 of the Agreement.  Dominion subsequently notified Smartmatic that it

34

would fulfill these contractual support obligations, but only if Smartmatic agreed to revise the payment terms and limitations of liability set forth in the License Agreement. Dominion further conditioned its performance upon Smartmatic's agreement to waive any and all claims Smartmatic may have against Dominion. Dominion's unqualified refusal to perform its existing contractual obligations under the License Agreement unless and until Smartmatic accedes to these terms was intended to radically alter the parties' existing contractual obligations. Moreover, these new terms are wholly inconsistent with and fundamentally different from the obligations contained in the License Agreement. Despite its pre-existing contractual obligation to make such modifications and enhancements, Dominion has specifically and repeatedly denied any obligation to perform its support functions under the License Agreement. Dominion's unequivocal refusal to perform its binding contractual obligations coupled with its demand that Smartmatic agree to new terms fundamentally different from those contained in the License Agreement each constitute a repudiation of that contract.

76.     Smartmatic seeks a declaration from the Court that Dominion International's refusal to perform its contractual obligations under the License Agreement constitutes a repudiation of the Agreement such that Smartmatic is discharged from all performance obligations under that contract as of the date of Dominion's repudiation. Smartmatic seeks a further declaration from the Court that Dominion's repudiation of the Agreement pre-dated any obligation under Section 9 of the initial Statement of Work to make any Additional Payments to Dominion and Smartmatic is, therefore, specifically discharged from this obligation. Moreover,

35

the Escrowed Materials are to be released to Smartmatic for the sole purpose of providing such products or services that were accrued obligations of Dominion prior to its repudiation.

77.     Smartmatic International also seeks to recover its attorneys' fees and costs.

## COUNT II

### (Breach of the License Agreement)

### Dominion Improperly "Terminated" the Agreement

78.     Plaintiffs hereby incorporate paragraphs 1 through 63 as though fully set forth herein.

79.     The License Agreement is a valid contract, and is enforceable by and binding upon Smartmatic International and Dominion International.

80.     Smartmatic International has fully performed its obligations as required by this agreement.

81.     Under section 7.2 of the License Agreement, Dominion International may terminate the Agreement "by written notice to Smartmatic [International] in the event that Smartmatic [International] shall be in default of any of its obligations hereunder and shall fail to remedy any such default within sixty (60) days after notice thereof by Dominion [International]." Dominion International purported to terminate the License Agreement on May 23, 2012, but failed to fulfill the substantive and procedural requirements for termination set forth in section 7.2 of the Agreement. Dominion Interntional's attempted termination is, therefore, invalid and Dominion's refusal to perform its contractual obligations under the License Agreement

36

constitutes a breach of contract. Dominion International's failure to perform is not excused by any reason.

82.     Dominion International's failure to perform the contractual obligations imposed by the License Agreement constitutes a breach of that contract. Smartmatic International has sustained damages because of Dominion International's breach and is therefore entitled to recover monetary damages, as well as all reasonable attorneys' fees and costs.

## COUNT III

### (Breach of the License Agreement)

### Dominion Failed to Deliver Functional Licensed Technology

83.     Plaintiffs hereby incorporate paragraphs 1 through 63 as though fully set forth herein.

84.     The License Agreement is a valid contract, and is enforceable by and binding upon Smartmatic International and Dominion International.

85.     Smartmatic International has fully performed its obligations as required by this agreement.

86.     Under the terms of the License Agreement and the SOW incorporated therein, Dominion International was obligated to deliver to Smartmatic International functional Licensed Technology, plus "all information related to the Licensed Technology as may be known or possessed by Dominion [International] and as may be reasonably necessary for Smartmatic to exploit the licenses granted in [the Agreement]." Dominion International was also contractually

37

obligated to provide Smartmatic International with the technical support needed to ensure the Licensed Technology's functionality. Despite these obligations, Dominion International failed to provide functional Licensed Technology in accordance with its contractual obligations, it failed to provide the information related to the Licensed Technology necessary for Smartmatic International to exploit the licenses granted in the Agreement, and it failed to provide the technical support needed to ensure the Licensed Technology functioned properly. Dominion International's failure to perform is not excused by any reason.

87. Dominion International's failure to perform the contractual obligations imposed by the License Agreement constitutes a breach of that contract. Smartmatic International has sustained damages because of Dominion International's breach and is therefore entitled to recover monetary damages, as well as all reasonable attorneys' fees and costs.

## COUNT IV
### (Breach of the License Agreement)

### Dominion Failed to Provide Timely Technical Support

88. Plaintiffs hereby incorporate paragraphs 1 through 63 as though fully set forth herein.

89. The License Agreement is a valid contract, and is enforceable by and binding upon Smartmatic International and Dominion International.

90. Smartmatic International has fully performed its obligations as required by this agreement.

38

91.     Under the terms of the License Agreement, Dominion International was obligated to provide to Smartmatic International the technical support needed to incorporate the "hardware, software, firmware and EMS developed by Dominion" into the Licensed Products.  The initial SOW, which the Agreement expressly incorporates, further obligated Dominion International to provide "Project Assistance" as set forth on Tables 1 and 2 of the initial SOW and "Additional Project Assistance," as set forth in Section 5 of the initial SOW.  Despite these obligations, Dominion International failed to provide Smartmatic International with timely technical support in accordance with its contractual obligations.  Dominion International failed to address timely Smartmatic International's Requested Improvements and COMELEC's conditions for exercising its option to purchase the Licensed Products (i.e., the "Goods"), which has compromised Smartmatic International's ability to provide satisfactory customer service and materially harmed Smartmatic's ability to sell the Licensed Products to COMELEC.  *See* Agreement § 3.3.  Moreover, Dominion has also failed to provide the required technical support needed to incorporate the modifications and enhancements requested by COMELEC in preparation for the Philippines 2013 national elections.  These requested modifications and enhancements were communicated to Dominion well before its purported termination of the Agreement, which does not serve as a basis for avoiding these support obligations in any event.  Instead, Dominion International has sought to use its ownership and control of the Licensed Technology to rewrite the License Agreement by insisting upon the inclusion of ex post contract conditions in the

39

amended SOWs as a condition to fulfilling its pre-existing contractual obligations. Dominion International's failure to perform is not excused by any reason.

92.     Dominion International's failure to perform the contractual obligations imposed by the License Agreement constitutes a breach of that contract.  Smartmatic International has sustained damages because of Dominion International's breach and is therefore entitled to recover monetary damages, as well as all reasonable attorneys' fees and costs.

## COUNT V

### (Breach of the License Agreement)

### Dominion Failed to Work Collaboratively to Redeploy the Licensed Products

93.     Plaintiffs hereby incorporate paragraphs 1 through 63 as though fully set forth herein.

94.     The License Agreement is a valid contract, and is enforceable by and binding upon Smartmatic International and Dominion International.

95.     Smartmatic International has fully performed its obligations as required by this agreement.

96.     Under the terms of the initial SOW, which the License Agreement expressly incorporates, Dominion International was obligated to "work cooperatively [with Smartmatic] in reselling or re-leasing the Licensed Products in the event COMELEC elects not to exercise the purchase option and the Licensed Products are returned to Smartmatic and placed in its inventory."  The parties further agreed to sell or lease the Licensed Products out of such

40

inventory "before selling or leasing new PCOS systems in any other market where the Licensed Products in inventory can be made to meet the customer's requirements within a reasonable budget."

97.     Despite this obligation, Dominion International failed to work collaboratively with Smartmatic International when it pursued alternative PCOS opportunities in Puerto Rico, Mongolia, and all other territories currently targeted by Dominion, including the United States and Canada. Dominion International also failed to identify alternative uses for the Licensed Technology or to redeploy Licensed Products from Smartmatic's inventory to such other projects.   Dominion International's failure to fulfill its contractual obligations is further compounded by its intentional failure to support, and even prevent Smartmatic's own marketing efforts in Mongolia and Puerto Rico.   Dominion International's breach is not excused by any reason.

98.     Dominion International's failure to perform the contractual obligations imposed by the License Agreement constitutes a breach of that contract.   Smartmatic International has sustained damages because of Dominion International's breach and is therefore entitled to recover monetary damages, as well as all reasonable attorneys' fees and costs.

## COUNT VI

### (Breach of the License Agreement)

### Dominion Failed to Provide New Developments and Next Generation

41

99.     Plaintiffs hereby incorporate paragraphs 1 through 63 as though fully set forth herein.

100.    The License Agreement is a valid contract, and is enforceable by and binding upon Smartmatic International and Dominion International.

101.    Smartmatic International has fully performed its obligations as required by the Agreement.

102.    In the event Dominion International modifies or enhances the Licensed Technology and makes such modifications or enhancements generally available to its customers or licensees, the License Agreement obligates Dominion to "provide Smartmatic with sufficient information with respect to such modifications or enhancements to enable Smartmatic to incorporate such modifications or enhancements" into the Licensed Products.   Further, in the event Dominion International develops and releases new PCOS technology, such technology "shall be licensed and made available to Smartmatic" upon its release to other customers or licensees.

103.    The License Agreement defines "Licensed Technology" as all "know-how, trade secrets, methodologies and other technical information owned or possessed by Dominion" relating to its generally released PCOS voting systems and includes, but is not limited to, Dominion's technology described on Exhibit A to the Agreement.   Exhibit A identifies and describes Dominion's "ImageCast" and "Democracy Suite" technology, which is, therefore, Licensed Technology under the Agreement. Dominion is contractually obliged to make this

42

Licensed Technology, including upgraded, Certificated and enhanced versions of it, available to Smartmatic. This includes, for example, the latest certified version of Democracy Suite 4.0, the ImageCast Evolution (ICE) precinct scanner, the ImageCast (ICP) precinct scanner, and ImageCast (ICC) central count scanner.

104.   Since completing the initial phase of the Philippines project in May 2010, Smartmatic has not received notification of any enhancements or modifications to the Licensed Technology, notwithstanding the fact that many such enhancements and/or modifications have been made.   The effect of this failure to provide full and timely access to this Licensed Technology, when coupled with Smartmatic's contractual restriction from developing its own PCOS voting technology, has significantly harmed Smartmatic's standing in the worldwide market, and its ability to exploit the Licensed Technology.

105.   Dominion Voting recently notified the Puerto Rico State Elections Commission that Smartmatic does not have access to the latest PCOS technology developed by Dominion and then offered to sell voting systems containing such technology to the Commission.   As indicated by these communications, Dominion International has failed to fulfill its contractual obligations to Smartmatic:   It has developed and marketed new technology and/or enhanced its existing technology, but failed to make such developments or enhancements available to Smartmatic. Dominion International's refusal to provide Smartmatic with its newly developed technology, enhancements to existing technology, and information related to the Licensed Products

43

constitutes a breach of the Agreement.  Dominion International's failure to perform is not excused by any reason.

106.    Moreover, Dominion International demonstrated certain critical functionality relating to the Cyrillic alphabet to the Mongolian Election Authorities, who subsequently agreed to purchase the demonstrated election products from Dominion.    Although Smartmatic International demanded access to this functionality pursuant to the License Agreement, Dominion International refuses to fulfill its contractual obligations.  Dominion International's refusal to perform is not excused by any reason.

107.    Dominion International's failure to perform the contractual obligations imposed by the License Agreement constitutes a breach of that contract.  Smartmatic International has sustained damages because of Dominion International's breach and is therefore entitled to recover monetary damages, as well as all reasonable attorneys' fees and costs.

## COUNT VII

### (Breach of the License Agreement)

### Dominion Is Frustrating Smartmatic's Right to Market, Lease and Sell the Licensed Technology

108.    Plaintiffs hereby incorporate paragraphs 1 through 63 as though fully set forth herein.

109.    The License Agreement is a valid contract, and is enforceable by and binding upon Smartmatic International and Dominion International.

44

110.    Smartmatic International has fully performed its obligations as required by the Agreement.

111.    The License Agreement provides Smartmatic International the right "to make, have made, use, import, offer for sale, lease and sell" voting systems embodying the Licensed Technology.   As demonstrated by its failure to provide timely technical support in the Philippines, and its misrepresentations to the Puerto Rico Elections Commission and the Mongolian Election Authorities, Dominion is engaging in conduct designed to prejudice Smartmatic's ability to compete.   Dominion's misrepresentations have adversely affected Smartmatic International's rights under the License Agreement to market the Licensed Technology and, therefore, constitute a breach of that contract.  Dominion International's failure to fulfill its contractual obligations is not excused by any reason.

112.    Moreover, Dominion seeks to take unfair commercial advantage of the Philippines Project by using it to demonstrate its own capability and expertise in the international market.  By way of example, Dominion's web site claims that it has successfully deployed over 100,000 PCOS voting machines ("The greatest number of deployed optical scan systems in the world"), but ignores the fact that 80% of those machines were actually manufactured and deployed by Smartmatic. While Dominion is overstating its role in the Project, it is also notifying Smartmatic's potential customers and business partners that Smartmatic has limited, if any, access to the Licensed Technology, ignoring the fact that the voting machines for which it is attempting to take credit incorporate the very technology it claims Smartmatic cannot access.

45

113.    Dominion has intentionally undermined and frustrated Smartmatic's right to market, lease, and sell the Licensed Technology and has, therefore, breached the License Agreement's implied covenant of good faith and fair dealing.  Dominion International's failure to perform the contractual obligations imposed by the License Agreement constitutes a breach of that contract.    Smartmatic International has sustained damages because of Dominion International's breach and is therefore entitled to recover monetary damages, as well as all reasonable attorneys' fees and costs.

## COUNT VIII

### (Breach of the License Agreement)

### Dominion Failed to Place in Escrow its Source Code, Hardware Design and Manufacture Related Documents

114.    Plaintiffs hereby incorporate paragraphs 1 through 63 as though fully set forth herein.

115.    The License Agreement is a valid contract, and is enforceable by and binding upon Smartmatic International and Dominion International.

116.    Smartmatic International has fully performed its obligations as required by the Agreement.

117.    Section 5.2 of the License Agreement obligates Dominion International to place in escrow, within thirty days of the date of the License Agreement, "all of its source code for the firmware and EMS, as well as all hardware design and manufacture documents as per Exhibit

46

B." *See* Agreement at § 5.2. Exhibit B to the License Agreement states that "the concept Source Code and IP to be placed in escrow by Dominion applies to the current version and the immediate prior version" of the subject technology, source code, and other information as enumerated in that Exhibit. *See* Exhibit B to the Agreement. In the event Dominion International breaches its obligation to provide products or support, and fails to cure such breach within thirty days of receipt of notice from Smartmatic, "the escrowed materials shall be released to Smartmatic for the sole purpose of providing such products or services that Dominion failed to provide." *See* Agreement at § 5.2.

118.    Based on information and belief, Dominion International failed to place in escrow any of the required materials until May 7, 2012. Moreover, Smartmatic International subsequently learned that the material Dominion International placed in escrow was not the current version and the immediate prior version of the required information, but was instead an outdated and possibly encrypted version of these materials, rendering them ineffective. In response to Smartmatic's request to fulfill its escrow obligations, Dominion International notified Smartmatic International on June 11, 2012 that it was under no obligation to place in escrow the materials described in the License Agreement and Exhibit B to the Agreement. Dominion International's failure to place in escrow the source code and other required information as set forth in the License Agreement is a breach of that contract. Dominion International's failure to fulfill its contractual obligations is not excused by any reason.

119.    Dominion International's failure to perform the contractual obligations imposed by the License Agreement constitutes a breach of that contract.  Smartmatic International has sustained damages because of Dominion International's breach and is therefore entitled to recover monetary damages, as well as all reasonable attorneys' fees and costs.

## COUNT IX

### (Tortious Interference with Prospective Contractual Relations)

### Dominion Tortiously Interfered with Smartmatic's Prospective Contractual Relations with the Puerto Rican State Elections Commission

120.    Plaintiffs hereby incorporate paragraphs 1 through 63 as though fully set forth herein.

121.    Smartmatic entered into negotiations with the Puerto Rican State Elections Commission to provide certain automated election products and services.  Based on the status of those negotiations, the fact that Smartmatic had presented a lower priced bid, had manufacturing capability, and possessed superior financial resources, including the ability and willingness to provide the aforementioned Performance Bond, Smartmatic believed it had a reasonable probability of entering a contractual relationship with the Commission.

122.    Smartmatic recently learned that during Smartmatic's negotiations with the Puerto Rican State Elections Commission, Dominion informed the Commission that Smartmatic does not have access to the latest PCOS technology developed by Dominion, including Dominion's PCOS technology that the United States Election Assistance Commission recently certified.

48

Dominion also misrepresented to the Puerto Rican Election Commission the scope of the geographic restriction in the License Agreement, notifying the Commission that Smartmatic is contractually prohibited from competing against it in Puerto Rico. Dominion's misrepresentations to the Commission were intentional and designed deliberately to undermine Smartmatic's negotiations with the Commission.

123.    As a result of Dominion's misrepresentations, the Commission withdrew from negotiations with Smartmatic and instead awarded the contract to Dominion.

124.    Smartmatic has sustained damages because of Dominion's tortious conduct and is therefore entitled to recover all monetary damages arising from Dominion's tortious interference with Smartmatic's prospective business relations with the Commission.

## COUNT X

### (Tortious Interference with Prospective Contractual Relations)

### Dominion Tortiously Interfered with Smartmatic's Prospective Contractual Relations with the Mongolian Election Authorities

125.    Plaintiffs hereby incorporate paragraphs 1 through 63 as though fully set forth herein.

126.    Smartmatic entered into negotiations with the Mongolian Election Authorities to provide certain automated election products and services.  Based on the status of those negotiations, Smartmatic believed it had a reasonable probability of entering a contractual relationship with that entity.

49

127.    Dominion demonstrated certain critical functionality relating to the Licensed Technology to the Mongolian Election Authorities for the purpose of showcasing the availability of such functionality and consummating a purchase agreement with the Authority.  During its demonstration, Dominion reportedly noted to the Authority that Smartmatic did not possess or otherwise have access to the demonstrated functionality, which could only be acquired through Dominion directly.  Dominion made this representation despite its obligation under the License Agreement to provide Smartmatic International with access to the Licensed Technology together with sufficient information with respect to such modifications or enhancements to enable Smartmatic to incorporate such technology into the Licensed Products.

128.    As a result of Dominion's misrepresentations, the Mongolian Election Authority withdrew from negotiations with Smartmatic and instead awarded the contract to Dominion.

129.    Smartmatic has sustained damages because of Dominion's tortious conduct and is therefore entitled to recover all monetary damages arising from Dominion's tortious interference with Smartmatic's prospective business relations with the Authority.

WHEREFORE, Plaintiffs Smartmatic International Corporation, Smartmatic USA Corporation, and Smartmatic International Holding B.V. request that the Court enter an Order and Judgment against Defendants Dominion Voting Systems International Corporation, Dominion Voting Systems, Inc., Dominion Voting Systems Corporation, and Iron Mountain Intellectual Property Management, Inc. as follows:

a.  A declaration from the Court that:

50

(1) Dominion Voting Systems International Corporation did not validly terminate the PCOS Framework License Agreement;

(2) Either:

    a. The PCOS Framework License Agreement is a Valid, Binding, and Enforceable Contract; Dominion Voting Systems International Corporation Must Specifically Perform its Obligations under Section 3 of the Agreement and the Related Statements of Work within thirty days and Release to Smartmatic International Corporation the Escrowed Materials for the Sole Purpose of Providing the Products or Services Dominion Fails to Provide;

    b. Alternatively, Dominion Voting Systems International Corporation's Refusal to Perform its Contractual Obligations under the PCOS Framework License Agreement Constitutes a Repudiation of the Agreement; Smartmatic International Corporation is Discharged from its Performance Obligations under the License Agreement as of the Date of Dominion's Repudiation, including any Obligation to Provide the Additional Payments to Dominion as set forth in Section 9 of the Initial Statement of Work, and the Escrowed Materials are to be Released to Smartmatic for the Sole Purpose of Providing such Products or Services that were Accrued Obligations of Dominion Prior to its Repudiation;

b. A judgment that Dominion Voting Systems International Corporation has breached its contractual obligations under the PCOS Framework License Agreement and is accordingly liable to Smartmatic International Corporation for all lawful monetary damages;

c. A judgment that Dominion Voting Systems International Corporation, Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation tortiously interfered with Smartmatic International Corporation, Smartmatic USA Corporation, and Smartmatic International Holding B.V.'s prospective contractual relations and are accordingly liable for all lawful monetary damages;

d. Reasonable costs, fees and expenses, including attorneys' fees;

e. Pre- and post-judgment interest; and

51

f.    Such other and further relief to which Plaintiffs may show themselves to be justly
       entitled.


Raymond J. DiCamillo (#3188)
Kevin M. Gallagher  (#5337)
RICHARDS LAYTON & FINGER
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
**Counsel for Smartmatic International
Corporation, Smartmatic USA
Corporation, and Smartmatic
International Holding B.V.**

OF COUNSEL:

Bruce D. Oakley
Aaron R. Crane
HOGAN LOVELLS US L.L.P.
700 Louisiana, Suite 4300
Houston, Texas 77002
713.632.1400
713.632.1401


Dated:  September 6, 2012


52