UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | ) Case No. 10-24238 HRT |
| | ) |
| SVS HOLDINGS, INC. | ) Chapter 11 |
| | ) |
| | ) |
| | ) |
| Debtor | ) |

**RESPONSE AND OBJECTION OF JACK BLAINE TO MOTION FOR AUTHORITY AND STANDING TO PROSECUTE CAUSES OF ACTION ON BEHALF OF THE DEBTOR OR, IN THE ALTERNATIVE, FOR APPOINTMENT OF A TRUSTEE**

Jack Blaine, through his attorneys Onsager, Staelin & Guyerson Replies and Objects to the Motion For Authority And Standing To Prosecute Causes of Action On Behalf Of The Debtor Or, In the Alternative, For Appointment of a Trustee ("Motion") filed by Smartmatic ("Smartmatic") as follows:

1.  Smartmatic seeks authority to directly prosecute two categories of claims on behalf of the estate: claims against Jack Blaine ("Blaine") for alleged preferential payments made by Debtor (the "Blaine Claims"); and certain alleged 'avoidance claims' (the "Sequoia Claims") that Sequoia, a non-debtor, may have against other non-debtor parties, Dominion Canada and Dominion USA ("Dominion"). Alternatively, the drastic remedy of appointment of a chapter 11 Trustee is sought to prosecute the alleged claims.

2.  Smartmatic is scheduled as a creditor of the Debtor. In fact, only three creditors are scheduled: Movant for over $9.6 million, Blaine for about $1.6 million, and Sequoia Voting Systems, Inc. (the wholly-owned subsidiary of Debtor) for about $150,000. Accordingly, when Smartmatic pleads that it desires to act "for the benefit of creditors of the Debtor," the truth is that it will be acting for its sole benefit.

3.  The Debtor discloses in the reply to Questions 3 and 23 of its Statement of Financial Affairs, Doc No. 16, that $303,047.00 was paid in a series of 6 payments by Sequoia to

Blaine and in partial re-payment of an approximate $1.6 million dollar debt owed by the Debtor to Blaine. Blaine is shown as 60.14% owner of the Debtor in reply to Question No. 21. All these disclosures are part of the original filings made on June 22, 2010 and these events are not of recent vintage or simply coming to light for the very first time.

4. Moreover, Smartmatic has been able to, and in fact has, conducted discovery in this case through Rule 2004. Its averments that the facts will only be fully available after discovery in the adversary proceedings that it proposes to prosecute must fall on deaf ears.

5. Further, Smartmatic or its affiliates are already in litigation with Dominion in Delaware Chancery Court in the case styled *Smartmatic International Corporation, et al. v. Dominion Voting Systems International Corporation, et al, Civil Action No. 7844-VCP*.

### The Sequoia Claims

6. Smartmatic asserts that it should be permitted to pursue certain claims against Dominion for transfers by <u>Sequoia</u>, not transfers by the Debtor, as fraudulent conveyances made with the intent to hinder, delay or defraud the creditors of the Debtor (really, just Smartmatic). Section 548 of the Bankruptcy Code only permits pursuit of transfers "of an interest of the debtor in property." 18 U.S.C. § 548(a)(1). Smartmatic's attempt to characterize these alleged avoidance claims as 'estate claims' for which a creditor may seek authority to prosecute on behalf of the estate is simply not supported by the facts or the law. The alleged aggrieved party with standing to prosecute the asserted claims in not SVS Holdings, but instead the subsidiary Sequoia, which is not a debtor in any bankruptcy proceeding.

7. Smartmatic does not claim to be a creditor of Sequoia or Dominion. Smartmatic is attempting therefore not only to gain standing, but in one fell swoop to pierce the corporate

veil and ignore the separate existence of the Debtor and its subsidiary, using this Court's jurisdiction over SVS Holdings to improperly reach assets of or claims belonging to Sequoia.

8. Stated differently, Smartmatic does not seek standing to pursue the Debtor's claims, but to exert impermissible control over the Debtor itself in order to control Sequoia. Since the claims described by Smartmatic do not belong to the Debtor, Sequoia is the party that actually would have any standing to pursue the claims described by Smartmatic, if in fact any such claims exist. Thus, Movant seeks to control this non-debtor party through the Debtor. This is far beyond the limited standing that the courts have granted to creditors, even assuming such a grant of authority is proper in this Circuit. *See e.g. In re Fox, 305 B.R. 912* ( B.A.P. 10th Cir. 2004); *Hansen v. Green Tree Servicing, LLC* (*In re Hansen*), 332 B.R. 8, 12– 13 (B.A.P. 10th Cir. 2004) (holding that avoidance claims may only be pursued by a trustee).

9. The prosecution of the alleged avoidance actions of Sequoia would require prosecution under State law, presumably the Uniform Fraudulent Conveyances Act, since the Debtor was not a transferor and thus no Code avoidance causes of action sections are applicable.[1]

10. While not directly implicated by similar facts, the underlying principles articulated in *Stern v. Marshall*, 131 S. Ct. 2601 (2011) would seem to preclude this Court from direct or indirect involvement in what is a purely third party dispute between Sequoia and Dominion. Any such claims would be based upon state law and involve only third party claims.

**The Blaine Claims**

11. Smartmatic also alleges that the Debtor has potential preference and fraudulent conveyance claims against Blaine for what were, in fact, loan repayments. Since Smartmatic

---

[1] In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), the Supreme Court found that a fraudulent conveyance action was akin to a common law contract suit rather than a cause of action unique to the Bankruptcy Code. On that basis, the Court in *Stern* noted that actions "at common law that simply attempt[ ] to augment the bankruptcy estate [are] the very type of claim that we held in ... *Granfinanciera* must be decided by an Article III court." *Stern*, 131 S.Ct. 2601 at 2616 (2011).

alleges that these transfers were from the Debtor, the Debtor has colorable standing to assert a preference claim. Blaine leaves the merits of these claims to any litigation that may ensue, does not admit the facts alleged by Smartmatic and reserves all his defenses.

12. As to the fraudulent conveyance claim, the same SOFA that Smartmatic relies on for its assertion that the preference claim is colorable affirmatively rebuts any possible fraudulent conveyance action. The payments to Blaine were repayment of loans. The allegation that the transfers were for less than equivalent value thus ring hollow. In all events, they would not pass muster under the pleading standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

13. This Court must still determine whether Smartmatic legally may be granted authority to pursue such claims, whether Smartmatic has met the requisite conditions, and whether in this case it is appropriate in all events.

14. Notwithstanding the *dicta* from Tenth Circuit cases cited by Movant, no case in this Circuit has sanctioned the relief requested except under a plan of reorganization.

15. Smartmatic acknowledges that a refusal to pursue a cause of action after demand is a prerequisite to its Motion. See *Canadian Forest Products v. J.D. Irving, Ltd.*, (*In re Gibson Group, Inc.*), 66 F.3d 1436, 1446 (6th Cir. 1995). Smartmatic also asserts that demand on the Debtor and formal refusal to pursue the causes of action are not necessary because demand would be futile. Smartmatic's allegations in this regard are woefully insufficient. As to the potential action against Blaine, all Smartmatic states is that Kevin Hurst, the Debtor's CEO, and Blaine "worked closely together" in the past. This provides no basis whatsoever for the conclusion that Hurst has no incentive and that a demand would meet with an unjustified refusal.

16. As to Smartmatic's claim that "the Debtor has demonstrated no interest in litigating the avoidance actions" and "has let this case languish," it is equally valid to conclude that the alleged claims simply lack merit. In fact, Smartmatic could have made demand long before now, and its lack of any colorable reason for failing to do so cannot now excuse the demand and refusal requirement.

17. No adequate grounds for the extraordinary remedy of the appointment of a chapter 11 trustee to prosecute the alleged preference and avoidance claims and none has been shown under 11 USC §1104(a)(1) or (a)(2) in the Debtor's dealings with the alleged preference or fraudulent conveyance claims. *See In Re Sovereign Estates. Ltd.,* 104 B.R. 702 (E.D.Pa 1989 and *In Re Marvel Entertainment Group Inc*., 140 F. 3d 463 (3rd Cir 1998) for a discussion of the overall legislative requirement of an 'extraordinary remedy' and the reluctance towards the appointment of a Chapter 11 trustee.

18. In the present case no showing of fraud, dishonesty, incompetence, or gross management, or similaractions or failings, have been demonstrated by Smartmatic and the best interest of creditors does not lie with appointment of a Chapter 11 trustee to pursue suspect claims.

**Smartmatic's Motives**

19. The motives and intent of Smartmatic in seeking relief at this point must be seriously questioned. Dominion and Smartmatic are competitors. Smartmatic is recently engaged in litigation with Dominion in Delaware over millions of dollars. Smartmatic is the only creditor of the Debtor other than Blaine and Sequoia, and the only party that would benefit from any litigation now. After two years, Smartmatic suddenly decides it would be in the interest of the estate and "its creditors" to sue the parties with whom it is already litigating in Delaware.

Smartmatic is not trying to promote the interests of anyone but itself. Not only is this effectively a two-party dispute (where neither party is a debtor), but Smartmatic seeks to use this Court as yet another forum to pursue and harass its competitor, Dominion. This is not an appropriate use of the Bankruptcy Code or this Court's jurisdiction. *In re FRP Indus., Inc.*, 73 B.R. 309, 313 (Bankr. N.D. Fla. 1987).

WHEREFORE, Blaine requests that this Court enter an Order (i) denying the Motion; (ii) awarding Blaine his attorneys' fees and costs incurred herein; and (iii) for such other relief the Court deems necessary.

Dated: October 5, 2012                                  Respectfully submitted,

**ONSAGER, STAELIN & GUYERSON, LLC**

s/ Michael J. Guyerson
Christian C. Onsager, #6889
Michael J. Guyerson, #11279
1873 S. Bellaire St., Suite 1401
Denver, Colorado 80222
Ph: (303) 512-1123
Fax: (303) 512-1129
consager@osglaw.com
mguyerson@osglaw.com

### Certificate of Service

I certify that on October 5, 2012, a copy of the foregoing Objection was served by ECF filing and by placing it in the United States mail, postage prepaid, addressed to the following:

| | | |
|---|---|---|
| Brent Cohen<br>Rothgerber Johnson & Lyons LLP<br>1200 17th St., Suite 3000<br>Denver, CO  80202 | Ira S. Greene<br>Khang V. Tran<br>Hogan Lovells US LLP<br>876 Third Avenue<br>New York, NY 10022 | Lars Fuller<br>Baker & Hostetler LLP<br>303 East 17th Avenue<br>Suite 1100<br>Denver, Colorado  80203-1264 |
| U.S. Trustee<br>999 18th Street, Suite 1551 | Kevin S. Neiman<br>1660 Lincoln St. | |

| Denver, CO 80202 | Ste. 1900<br>Denver, CO 80264 | |

/s/Christian C. Onsager