**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Howard R. Tallman**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SVS HOLDINGS, INC. | ) | Case No. 10-24238 HRT |
| | ) | |
| EIN: 26-1850120, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**FINAL FEE APPLICATION BY HOROWITZ & BURNETT, P.C. FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Horowitz & Burnett, P.C. ("**HB**"), bankruptcy counsel for SVS Holdings, Inc., the debtor (the "**Debtor**"), applies for final compensation for fees for services rendered and costs incurred in the Debtor's chapter 11 case, seeking an aggregate final award in the amount of $48,331.56, which amount consists of (i) legal fees in the amount of $21,803 for services rendered from June 1, 2011 to through and including October 16, 2012 (the "**Application Period**"); (ii) costs in the amount of $67.48 incurred by HB during the Application Period; and (iii) a final award of amounts previously awarded to HB on an interim basis in the amount of $26,461.08 (for services rendered and costs incurred from June 8, 2010 to through and including May 31, 2011), pursuant to 11 U.S.C. §§ 328, 330, 331 and 503(b), Federal Rule of Bankruptcy Procedure 2016, and L.B.R. 2016-1, and in accordance with U.S. Department of Justice, Executive Office for United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 (the "**Guidelines**"). In support of this Application, HB respectfully represents as follows:

**I.    RETENTION OF HB, DISCLOSURE OF COMPENSATION, THE
POSTPETITION RETAINER, AND THE FIRST INTERIM FEE APPLICATION**

1.    The Debtor commenced this case on June 8, 2010 (the "**Petition Date**") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.    By Order dated July 8, 2010, the Court authorized the Debtor to retain HB, *nunc pro tunc* to the Petition Date, and also approved a retainer in the amount of $23,033 (Dkt. No. 24) paid from Sequoia Voting Systems, Inc. ("**Sequoia**"), the Debtor's wholly-owned subsidiary.

3.      By Order dated May 13, 2011, the Court authorized HB's receipt of a postpetition retainer in the amount of $15,000, also to be paid from Sequoia (Dkt. No. 61). Sequoia ultimately funded this additional retainer.

4.      On June 30, 2011, HB filed its first and only interim fee application (Dkt. No. 68), seeking approval of an aggregate interim award in the amount of $26,461.08, consisting of legal fees in the amount of $26,355, for services rendered from June 8, 2010 to through and including May 31, 2011, and reimbursement for actual and necessary expenses in the amount of $106.08 incurred by HB during the same period of time.

5.      On July 26, 2011, the Court approved HB's first interim fee application (Dkt. No. 81), and HB drew down $26,461.08 of the retainer in due course.

6.      Thus, presently HB is holding the balance of its retainer in trust in the amount of $11,571.92.

7.      Although HB seeks allowance and approval of $21,870.48 for services rendered and expenses incurred during the Application Period, upon the Court's approval of this Application, HB shall waive its claim to $10,298.56 of the Application Period award, which is the balance remaining after the $11,571.92 in HB's trust account is applied.

## II.     TERMS AND CONDITIONS OF EMPLOYMENT AND COMPENSATION

8.      HB was retained to represent the Debtor and agreed to provide legal services to the Debtor on an hourly basis. The hourly rates for the attorney and paralegals who worked on this case are: (i) Kevin S. Neiman, $290/hour; (ii) Debra Howell, $90/hour; and (iii) Trulee Hoy, $80/hour. The biographical information for undersigned counsel is **Exhibit A** hereto.

9.      Other than as provided for and allowed by 11 U.S.C. § 504, there is no agreement between HB and any other firm, person or entity for the sharing or division of any compensation paid or payable to HB.

## III.    CASE STATUS

10.     The Debtor is a holding company for Sequoia.

11.     Leading into the bankruptcy, the Debtor was in litigation in New York and Delaware with Smartmatic USA Corporation ("**Smartmatic**"),[1] the Debtor's largest creditor. The filing stayed the two actions, and provided Debtor with an opportunity to attempt to resolve its disputes with Smartmatic outside of this litigation.

---

[1]     The use of the term "Smartmatic" herein likewise refers to its relevant affiliated entities, including any predecessor-in-interest.

12. Once in bankruptcy, in addition to trying to settle with Smartmatic, the Debtor sought to allow Sequoia, its wholly-owned subsidiary, sufficient time to liquidate and otherwise wind up outside of bankruptcy. With regard to the wind up, Sequoia negotiated with its remaining creditors and attempted to resolve outstanding claims so that it could make a distribution to the Debtor in its capacity as Sequoia's equity holder. If made, the Debtor intended to use that money to fund a plan of reorganization. By June 2012, however, it became apparent that Sequoia's liabilities exceeded its assets and it would not ultimately be able to upstream money to the Debtor to fund a plan.

13. Postpetition, the Debtor and HB purposefully minimized their activity so as not to unnecessarily waste resources. Notwithstanding, the Debtor did, with the assistance of counsel when appropriate, among other things: (i) prepare and file the Debtor's schedules, statement of financial affairs, equity list, and corporate resolution; (ii) communicate with the Debtor's representative and the Debtor's creditors; (iii) attend the initial debtor interview; (iv) pay all quarterly fees to the U.S. Trustee and otherwise comply with the Guidelines; (v) timely file all monthly operating reports; (vi) respond to Smartmatic's 2004 document requests and attend and defend itself with regard to three 2004 examinations; (vii) communicate with Smartmatic regarding settlement; and (viii) communicate with Smartmatic regarding Smartmatic's 2004 examinations of Dominion Voting Systems, Inc.

14. Moreover, on September 21, 2012, Smartmatic filed two motions seeking standing to prosecute certain actions or appointment of a chapter 11 trustee (Dkt. No. 106), and conversion to chapter 7 (Dkt. No. 103) (and it filed a related motion to expedite the hearing on this first motion (Dkt. No. 109)). The Court set the matters for hearing on October 16, 2012.

15. The Debtor and several other parties-in-interest objected to the relief sought by Smartmatic. *See* Objections, Dkt. Nos. 112 (Dominion), 113 (Debtor), 114 (Jack Blaine), and 115 (Sequoia).

16. At the October 16 hearing, following argument by counsel, the Court ultimately granted the conversion motion and denied the motion seeking standing and appointment of a chapter 11 trustee. The Court entered a conversion order the next day (Dkt. No. 118), along with a judgment (Dkt. No. 119).

17. Also on October 17, 2012, the U.S. Trustee appointed Tom Connolly, Esq. the chapter 7 trustee (Dkt. No. 120), and set a chapter 7 § 341 meeting of creditors for November 14, 2012 (Dkt. No. 121).

18. HB intends to, without any further billing, (i) assist the Debtor comply with its F.R.B.P. 1019(5) requirements, (ii) reasonably support the chapter 7 trustee in orderly transitioning the chapter 11 case to one under chapter 7; (iii) represent the Debtor at the § 341 meeting of creditors, and (iv) otherwise conclude HB's services for the benefit of the Debtor.

19. As for the Debtor's financial condition, HB incorporates by reference the most recent monthly operating report for the Debtor's financial condition as of August 31, 2012 (Dkt. No. 102).

## IV. SERVICES RENDERED

20. To provide the Court and parties-in-interest with understandable information concerning the amount and nature of HB's services during the Application Period, HB has classified its services into two categories of services, which invoices are separate exhibits to this Application.

21. All of the services for which compensation is requested were services that were necessarily rendered after due consideration of the expected cost and anticipated benefit of such services. All time described in the exhibits represents the actual amount of time spent or, in certain instances, less than the actual amount of time spent by attorneys and paralegals of HB who rendered the described services. The tables following the matter descriptions set forth the name(s), applicable billing rate(s) and actual time spent by each HB attorney and paralegal with respect to such matters.

### Exhibit B – Case Administration

22. **Exhibit B** hereto is a detailed statement of services rendered by HB pertaining to general case administration including meetings, telephone conferences and other activities where multiple subject matters were discussed, analyzed, or otherwise acted upon. Such services include reviewing and causing the filing and service of the Debtor's monthly operating reports; causing the Debtor to comply with the Guidelines; attending to matters concerning the 2004 examinations taken by Smartmatic; communicating the status of the Debtor's plans with the U.S. Trustee; reviewing, researching, and objecting to Smartmatic's standing/chapter 11 trustee/conversion motions; and preparing for and attending the contested hearing on same.

| Professional and Paraprofessional | Hourly Rate | Hours | Lodestar Amount |
|---|---|---|---|
| Kevin S. Neiman | 290.00 | 69.6 | $20,184.00 |
| Trulee Hoy | 80.00 | .8 | 64.00 |
| TOTAL | | 70.4 | $20,248.00 |

### Exhibit C – Fee/Employment Applications

23. **Exhibit C** hereto is a detailed statement of services rendered by HB pertaining to its first interim fee application.

| Professional and Paraprofessional | Hourly Rate | Hours | Lodestar Amount |
|---|---|---|---|
| Kevin S. Neiman | 290.00 | 4.7 | $1,363.00 |
| Trulee Hoy | 80.00 | 2.4 | 192.00 |
| TOTAL | | 7.1 | $1,555.00 |

## V.   EXPENSES INCURRED

24. All expenses for which reimbursement is requested are expenses that HB customarily seeks to recoup from its clients, and are actually borne by HB and were necessarily incurred in connection with this case. The specific expenses for which reimbursement is requested during the Application Period are:

| Postage | $1.08 |
|---|---|
| Pacer | N/A |
| Photocopy | $66.40 |
| Courier | N/A |
| TOTAL | $67.48 |

The expenses do not include electronic research despite HB using Westlaw to research its objection to Smartmatic's motions and prepare for the October 16 hearing.

## VI.   EVALUATION OF SERVICES RENDERED: *JOHNSON* CONSIDERATIONS

25. HB believes that the requested fee of $21,803 for 77.5 hours worked is reasonable considering the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), adopted by the Tenth Circuit in *First Nat'l Bank of Lea County v. Niccum (In re Permian Anchor Servs., Inc.)*, 649 F.2d 763, 768 (10th Cir. 1981). A discussion of such factors and their respective applicability to this case follows:

### Time and Labor Required

26. The foregoing summary, together with the exhibits attached hereto, detail the time, nature and extent of the professional services HB rendered for the benefit of the Debtor during the Application Period. The total number of hours expended, 77.5, reveals that HB has, with minimal work, assisted the Debtor operate in compliance with Title 11, the Court's Orders, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Guidelines.

### Novelty and Difficulty of the Questions

27. The issues that have arisen in this case during the Application Period were not novel or particularly difficult until Smartmatic filed its September 2012 motions. Once filed, HB had to quickly respond to complex issues in a short period of time and otherwise represent the Debtor's

interests at the contested October 16 hearing, all while appreciating that it would likely not be paid for these efforts.

### Skill Requisite to Perform Legal Services Properly

28. In rendering services to the Debtor, HB has demonstrated legal skill and expertise in understanding the chapter 11 process and otherwise representing the Debtor's interests in this case.

### Preclusion of Other Employment by Attorney Due to Acceptance of Case

29. HB's representation in this case did not preclude it from accepting other employment.

### Customary Fee

30. The hourly rates of HB's attorneys reflect an hourly rate in relation to that which HB's attorneys typically bill to its clients in other bankruptcy and commercial cases in which client payment is made on a frequent, periodic basis. HB submits that these rates are at least equal to, if not less, than the customary compensation charged by comparably skilled practitioners in cases other than cases under Title 11.

### Whether Fee is Fixed or Contingent

31. HB's compensation in this matter is subject to approval of the Court and therefore contingent.

### Amount Involved and Results Obtained

32. The aggregate amount of fees sought is relatively small for over 26 months of work in a chapter 11 case. HB has undertaken only those tasks that are necessary. Moreover, in terms of results obtained, HB, among other things, (i) appropriately represented the Debtor's interests at the 2004 examinations; (ii) along with the support of other objecting parties, successfully caused Smartmatic's standing/chapter 11 trustee motion to be denied; and (iii) otherwise diligently represented the Debtor's interests in the chapter 11 case.

### Time Limitations Imposed by Client or Other Circumstances

33. The time constraints imposed in this case have been ordinary, except with regard to Smartmatic's recent motions as those required undersigned counsel to set aside other matters and quickly respond.

### Experience, Reputation and Ability of the Attorneys

34. HB is experienced and able in matters of this kind, and has a reputation commensurate with such experience and ability. In addition, undersigned counsel has been practicing corporate bankruptcy law since 1996 and is, therefore, is experienced in chapter 11 matters.

### Undesirability of Case

35. This case has been desirable, and HB is privileged to have the opportunity to represent the Debtor.

### Nature and Length of Professional Relationship with Client

36. As noted in the first interim fee application, prepetition, HB represented Jack Blaine, individually, from March 2010 to June 8, 2010. Prepetition, Mr. Blaine was a shareholder, officer, and director of the Debtor. Mr. Blaine remained a director of the Debtor postpetition. In addition, he is an unsecured creditor of the Debtor. Contemporaneous with the Debtor's retention of HB on June 8, 2010, HB and Mr. Blaine terminated their attorney-client relationship, and the Debtor and Mr. Blaine each waived in writing any potential or actual conflicts of interest that may arise out of HB's prior representation of Mr. Blaine. HB's relationship with Mr. Blaine was also disclosed in its retention application and the affidavit in support thereof (Dkt. No. 9).

37. Moreover, as noted above and previously disclosed, both retainers paid to HB were funded by Sequoia.

38. Other than the foregoing, HB has not had any prepetition professional relationships with the Debtor, or any principal, shareholder, or other person associated with the Debtor.

### Awards in Similar Cases

39. The amount requested by HB is reasonable in terms of awards in cases of similar magnitude, complexity, and time constraint. The compensation that HB requests comports with the mandate of Title 11, which directs that services be evaluated in light of comparable services performed in non-bankruptcy cases in the community. The fee requested by HB, $21,803, reflects an average hourly rate of $281.33 for 77.5 hours of service. The costs that HB seeks reimbursement of were necessarily incurred as a result of this engagement. Such costs are not, therefore, implicit in HB's hourly rates.

### VII. COMPENSATION AND EXPENSES RECEIVED TO DATE

40. As noted above, on June 30, 2011, HB filed one fee application in this case (Dkt. No. 68), which the Court approved on July 26, 2011 (Dkt. No. 81). The application covered the period June 8, 2010 to May 31, 2011 and sought an aggregate interim award of $26,461.08. Upon approval, HB drew down its retainer $26,461.08.

WHEREFORE, HB requests that the Court grant this Application and enter an aggregate final award in the amount of $48,331.56, which amount consists of (i) legal fees in the amount of $21,803, for services rendered during the Application Period; (ii) costs in the amount of $67.48 incurred by HB during the Application Period; and (iii) a final award of amounts previously awarded to HB on an interim basis in the amount of $26,461.08 (for services rendered and costs incurred from June 8, 2010 to through and including May 31, 2011); and (iv) such other and further relief as the Court deems appropriate.

Dated: November 2, 2012.

HOROWITZ & BURNETT, P.C.

*s/ Kevin S. Neiman*
Kevin S. Neiman, # 36560
1660 Lincoln Street, Suite 1900
Denver, CO 80264
Telephone: (303) 996-8600
Fax: (303) 996-8636
E-mail: kneiman@hblegal.net

*Attorneys for SVS Holdings, Inc.*