UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re<br><br>SVS HOLDINGS, INC.<br><br>Debtor. | Case No. 10-24238 HRT<br>Chapter 7 |

TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT
AGREEMENT WITH JACK BLAINE

Tom H. Connolly, Chapter 7 Trustee (the "Trustee"), moves the Court for an order pursuant to Fed. R. Bankr. P. 9019(a) approving a settlement agreement with Jack Blaine ("Blaine"), former CEO of SVS Holdings, Inc. (the "Debtor"). In support of the motion (the "Motion"), the Trustee states as follows:

I.   Introduction and Background

1. On June 8, 2010 (the "Petition Date"), SVS Holdings, Inc. (the "Debtor") filed its voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). On October 16, 2012, the Court entered its Order converting the case to a Chapter 7 proceeding.

2. The Trustee is the duly appointed Chapter 7 Trustee in this bankruptcy case.

3. Prior to the Petition Date, Blaine loaned monies to each of the Debtor and Sequoia Voting Systems, Inc. ("Sequoia"), the Debtor's wholly-owned subsidiary, significant portions of which remain unpaid.

4. On or within one year before the Petition Date (the "Preference Period"), the Debtor made one or more payments to Blaine of $306,047.00 in the aggregate as repayments of loans made to the Debtor (the "Transfers"). The Debtor's Statement of Financial Affairs states that the Transfers were made to Blaine as a creditor and insider of the Debtor, and the Schedules indicate the Transfers were made while the Debtor was insolvent.

5. On November 16, 2012, the Trustee filed a complaint against Blaine and commenced an adversary proceeding captioned Connolly v. Blaine, Adv. Proc. No. 12-1719-HRT in this Court (the "Adversary Proceeding"). In the Adversary Proceeding, the Trustee sought to avoid the Transfers as preferential transfers under Bankruptcy Code § 547 or as fraudulent transfers under Bankruptcy Code § 548, which transfers are avoidable for the benefit of the Debtor's bankruptcy estate (the "Estate"). The Trustee also objected to any claim of Blaine against the Estate pursuant to Bankruptcy Code § 502 because he was liable for avoidable transfers.

6. Blaine did not deny that he received the Transfers during the Preference Period, but denied that the transfers were avoidable and asserted counterclaims against the Estate for setoff or recoupment for additional and significant amounts he allegedly loaned to the Debtor prior to the Petition Date. In particular, Blaine asserted that the loans he made after the Transfers were loans to the Debtor and therefore qualified as subsequent new value that could be offset against the Transfers pursuant to Bankruptcy Code § 547(c)(4). The Trustee's investigation showed that the new loans were to Sequoia and thus could not be offset against the Transfers.

7. On January 22, 2013, Blaine filed a proof claim against the Debtor in the amount of $2,486,444.20. (Claim #10 (the "Blaine Proof of Claim").

8. Sequoia is no longer in business and currently holds approximately $600,000 in its bank account. The Trustee, acting in his capacity as the Debtor's representative to its wholly-owned subsidiary Sequoia, has been resolving claims against Sequoia so that remaining proceeds might be transferred to the Debtor's estate for partial repayment of the Debtor's claim against Sequoia for debts owed. As the sole shareholder of Sequoia, the Estate, via the Trustee, controls the subsidiary and its debt negotiations with creditors, and the timing of payment to Sequoia's creditors.

9. The Trustee believes that the Estate's claims against Blaine have a good chance of success at trial. However, Blaine also has colorable defenses for subsequent new value against Sequoia with respect to amounts loaned after the Transfers and is a substantial creditor of the Debtor. If the Trustee were to proceed to trial with respect to the Transfers and Blaine's subsequent new value defense, the Estate would incur significant attorney fees and costs, and it is unclear if Blaine would be able to pay a judgment in excess of $300,000. Moreover, even if the Trustee succeeded in defeating Blaine's subsequent new value claim, Blaine would then have a claim for the identical amount against Sequoia, thus reducing the amount available for Sequoia to pay to the Estate. In these circumstances, the Estate is better served by seeking payment for an equivalent amount from a more certain source of payment that it controls.

10. Accordingly, the Trustee and Blaine have executed a Settlement Agreement, a copy of which is attached as Exhibit 1, subject to approval of this Court, with respect to the Transfers and Blaine's claims against Sequoia. Rather than seek a significant out-of-pocket settlement directly from Blaine, the Trustee has agreed to accept a nominal amount of $9,000.00 directly from Blaine and require Blaine to assign to the Estate his claims for unpaid loans to Sequoia. Facts available to the Trustee indicate that recovery on Blaine's claim against Sequoia would be similar to the amount of the Transfers, in particular after accounting for the expense of litigation.

## II. The Settlement Agreement

11. The material terms of the Settlement Agreement are as follows:[1]

---

[1] The terms set forth herein are intended only as a summary of the terms of the Settlement Agreement. The Motion is qualified by the terms of the Settlement Agreement.

2

      a.    <u>Settlement Payment</u>. Not more than seven business days after this Court's approval of the Settlement Agreement, Blaine shall pay the Trustee $9,000.00 by cashier's check or wire transfer (the "<u>Settlement Payment</u>").

      b.    <u>Allowed Claim Against the Estate</u>. Upon Blaine's payment of the Settlement Payment, the Trustee shall not object to the Blaine Proof of Claim. The Trustee shall have the right to object to any amended proof of claim filed by Blaine that is greater than the amount asserted in Claim #10.

      c.    <u>Dismissal of Adversary Proceeding</u>. As soon as practicable after Blaine's payment of the Settlement Amount, the Trustee shall file in the Adversary Proceeding an unopposed motion to dismiss the Adversary Proceeding with prejudice

      d.    <u>Release and Assignment of Claims</u>. Upon payment of the Settlement Payment

        i.    All of Blaine's and the Estate's claims against one another shall be deemed released.

        ii.    All of Blaine's claims against Sequoia shall be deemed assigned to the Estate.

        iii.    All of Sequoia's claims against Blaine shall be deemed released.

### III. The Settlement Agreement Is Fair and Equitable and in the Best Interest of the Estate

13.    When considering a motion brought under Rule 9019(a), a court is to "determine whether the settlement is fair and equitable and in the best interest of the estate." <u>Frates v. Kaiser Steel Corp. (In re Kaiser Steel Corp.)</u>, 105 B.R. 971, 976 (D. Colo. 1989). In making this determination, the court is to consider: (a) the probable success of the litigation on the merits; (b) any potential difficulty in collection of a judgment; (c) the complexity and expense of the litigation; and (d) the paramount interest of the creditors. See <u>id</u>. (citing <u>In re The Hermitage Inn, Inc.</u>, 66 B.R. 71, 72 (Bankr. D. Colo. 1986)).

14.    With respect to each of these elements, "the court need not resolve all of these issues, but must only identify them so that the reasonableness of the settlement may be evaluated." <u>The Official Committee of Unsecured Creditors of Western Pac. Airlines, Inc. v. Western Pac. Airlines, Inc. (In re Western Pac. Airlines, Inc.)</u>, 219 B.R. 575, 579 (D. Colo. 1998) (quotation marks omitted). "The overall purpose is to weigh carefully ... the value of the settled claim against the value to the estate by the settlement." <u>Id</u>. at 579-80 (quotation marks omitted). These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the costs of the proposed settlement. For the reasons set forth below, the Settlement Agreement meets this standard.

15. *Probability of Success in Litigation*. The Trustee believes that the probability of success in avoiding the Transfers is good. The Settlement Agreement, however, will likely generate as much, if not more, for the estate than success on the merits at trial, without the need for further litigation. After accounting for the fact that Blaine's claims against Sequoia would later significantly reduce any amount paid by Sequoia to the Estate (as Blaine would then be Sequoia's largest creditor), the terms of Settlement Agreement resolves the uncertainty of whether Blaine's loans post-Transfers were to Sequoia or to the Debtor. Given these circumstances, the Settlement Agreement is a reasonable, sensible, and cost-effective resolution.

16. *Potential Difficulty in Collection of a Judgment against Blaine*. Collection of any significant judgment against an individual is almost always difficult. The Trustee has not investigated the collectability of a judgment of at least $300,000 against Blaine, but to the extent such a judgment is uncollectable, the Settlement Agreement ensures that the equivalent amount or more of such a judgment will be collected against Sequoia, which the Trustee knows holds $600,000 and who controls payments to its creditors.

17. *Expense and Delay of Litigation*. Litigation in respect of the Transfers, Blaine's subsequent new value counterclaims against the Estate, the Blaine Proof of Claim, and the uncertainty of Blaine's and Sequoia's claims against one another likely would result in significant additional expense for the Estate and possibly delay payment to creditors.

18. *Paramount Interests of Creditors*. The Settlement Agreement is fair and equitable and is in the paramount interests of the Estate and its creditors. By entering into the Settlement Agreement, the Estate, Blaine, and Sequoia have resolved claims with relatively minimal litigation. The Settlement Agreement ensures that significant proceeds from Sequoia will be transferred to the Estate, and any collectability concerns have been resolved. The Trustee has ensured that he will collect the Transfers "in kind" from Sequoia, rather than try to collect a similar judgment from Blaine.

**WHEREFORE**, the Trustee requests that the Court enter an Order approving the Settlement Agreement and grant such other and further relief as the Court deems just and proper.

DATED: February 20, 2013.

                                  FOSTER GRAHAM MILSTEIN & CALISHER, LLP

                                  /s/ Daniel J. Garfield
Daniel J. Garfield, #26054
360 S. Garfield St., 6th Fl.
Denver, Colorado 80209
Tel: (303) 333-9810
Fax: (303) 333-9786
dgarfield@fostergraham.com

*Attorneys for Chapter 7 Trustee Tom Connolly*

4

## CERTIFICATE OF MAILING

I hereby certify that on this 20th day of February, 2013, a true and correct copy of the **TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT WITH JACK BLAINE** was sent via U.S. mail, postage prepaid, and properly addressed to the following:

U.S. Trustee
999 18th St., Ste. 1551
Denver, CO 80202

Khang V. Tran
Ira S. Green
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

Brent R. Cohen
Rothgerber Johnson & Lyons, LLP
1200 17th Street, Suite 3000
Denver, CO 80202

Michael J. Guyerson
Onsager, Staelin & Guyerson, LLC
1873 S. Bellaire St., Ste. 1401
Denver, CO 80222

SEE ATTACHED

/s/ Olga Brusilovskaya

SVS Holdings, Inc.
PO Box 815
Broomfield, CO 80038-0815

US Bankruptcy Court
US Custom House
721 19th St.
Denver, CO 80202-2508

Avaya, Inc
c/o RMS Bankruptcy Recovery Services
P.O. Box 5126
Timonium, Maryland 21094-5126

CIT Communications Finance Corporation
aka Avaya Financial Services
1162 E. Sonterra Blvd
San Antonio, TX 78258-4047

Colorado Department Of Revenue
1375 Sherman St.
Room 504
Attention Bankruptcy Unit
Denver CO 80261-0001

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Jack Blaine
717 17th St, Suite 310
Denver, CO 80202-3310

Jack Blaine
c/o Christian Onsager, Esq.
Onsager Staelin & Guyerson, LLC
1873 S. Bellaire Ste. 1401
Denver, CO 80222-4359

Jeffrey P. Bialos
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415

Lars Fuller
Baker & Hostetler LLP
303 East 17th Avenue
Suite 1100
Denver, CO 80203-1264

Securities and Exchange Commission
Midwest Regional Office
175 W. Jackson Blvd.
Ste. 900
Chicago IL 60604-2815

Security & Exchange Commission
Central Regional Office
1801 California St.
Ste. 1500
Denver CO 80202-2656

Sequoia Voting Systems, Inc.
717 17th St, Suite 310
Denver, CO 80202-3310

Smartmatic Corporation
1001 Broken Sound Parkway, Suite D
Boca Raton, FL 33487-3532

Smartmatic USA Corporation
c/o Ira S. Greene, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022-7222

US Trustee
999 18th St.
Ste. 1551
Denver, CO 80202-2415

Jack Blaine
c/o Onsager, Staelin & Guyerson
1873 S. Bellaire St.
Suite 1401
Denver, CO 80222-4359

Kevin S. Neiman
1660 Lincoln St.
Ste. 1900
Denver, CO 80264-1901

Tom H. Connolly
950 Spruce St.
Suite 1C
Louisville, CO 80027-1977

## SETTLEMENT AGREEMENT

This settlement agreement is entered into this ___ day of February, 2013 (the "Settlement Agreement") among Tom Connolly, as trustee for the Chapter 7 bankruptcy estate of SVS Holdings, Inc. (the "Trustee") and Jack Blaine ("Blaine," and together with the Trustee, the "Parties").

## RECITALS

WHEREAS, on June 8, 2010 (the "Petition Date"), SVS Holdings, Inc. (the "Debtor") filed its voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), in Case No. 12-24238-HRT (the "Bankruptcy Case"), in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court").

WHEREAS, on October 16, 2012, the Bankruptcy Court entered its Order converting the Bankruptcy Case to a Chapter 7 case, and Trustee was appointed as the Chapter 7 Trustee in the Bankruptcy Case, with power to assert claims held by the Debtor's bankruptcy estate (the "Estate").

WHEREAS, Sequoia Voting Systems, Inc. ("Sequoia") is the wholly-owned subsidiary of the Debtor.

WHEREAS, prior to the Petition Date, Blaine loaned monies to each of the Debtor and SVS, portions of which remain unpaid.

WHEREAS, on November 16, 2012, the Trustee filed a complaint against Blaine and commenced an adversary proceeding captioned Connolly v. Blaine, Adv. Proc. No. 12-1719-HRT in the Bankruptcy Court (the "Adversary Proceeding").

WHEREAS, in the Adversary Proceeding, the Trustee asserted causes of action to avoid repayments of loans by the Debtor to Blaine.

WHEREAS, Blaine asserts in the Adversary Proceeding that such loan repayments are not avoidable and made counterclaims against the Estate.

WHEREAS, the Parties desire to settle the Adversary Proceeding and all other claims that exist or might exist between the Estate and Blaine in accordance with the terms and conditions set forth in this Settlement Agreement.

NOW, THEREFORE, for good and valuable consideration, and in order to compromise and settle the Adversary Proceeding and other matters among them, the Parties hereto agree as follows:


EXHIBIT 1

## Agreement

1. <u>Settlement Payment</u>. Not more than seven business days after the Effective Date (as defined below), Blaine shall pay the Trustee $9,000.00 by cashier's check or wire transfer (the "<u>Settlement Payment</u>").

2. <u>Allowed Claim Against the Estate</u>. Upon Blaine's payment of the Settlement Payment, the Trustee shall not object to Blaine's Proof of Claim in the Bankruptcy, filed on January 22, 2013, Claim #10. The Trustee shall have the right to object to any amended proof of claim filed by Blaine that is greater than the amount asserted in Claim #10.

3. <u>Dismissal of Adversary Proceeding</u>. As soon as practicable after Blaine's payment of the Settlement Amount, the Trustee shall file in the Adversary Proceeding an unopposed motion to dismiss the Adversary Proceeding with prejudice.

4. <u>The Estate's Release of Claims against Blaine</u>. Upon Blaine's payment of the Settlement Payment, and without the need for the execution and delivery of additional documentation or the entry of any additional orders of the Bankruptcy Court, any and all rights, claims, liens, actions, causes of action, defenses, suits and proceedings whatsoever, in law, equity or otherwise, which the Debtor or Chapter 7 Trustee ever had, now has, or hereafter may have against Blaine, including but not limited to by reason of, arising from, or in connection with the Adversary Proceeding, shall be deemed waived, released, discharged and relinquished.

5. <u>Blaine's Release of Claims against the Debtor</u>. Except as provided in this Settlement Agreement, upon Blaine's payment of the Settlement Payment, and without the need for the execution and delivery of additional documentation or the entry of any additional orders of the Bankruptcy Court, any and all rights, claims, liens, actions, causes of action, defenses, suits and proceedings whatsoever, in law, equity or otherwise, which Blaine ever had, now has, or hereafter may have against the Debtor, including but not limited to by reason of, arising from, or in connection with the Adversary Proceeding, shall be deemed waived, released, discharged and relinquished.

6. <u>Blaine's Assignment of Claims against Sequoia to the Estate</u>. Upon Blaine's payment of the Settlement Payment, and without the need for the execution and delivery of additional documentation or the entry of any additional orders of the Bankruptcy Court, any and all rights, claims, liens, actions, causes of action, defenses, suits and proceedings whatsoever, in law, equity or otherwise, which Blaine ever had, now has, or hereafter may have against Sequoia shall be deemed assigned, conveyed, and transferred to the Estate.

7. <u>The Estate's Release of Sequoia's Claims against Blaine</u>. Upon Blaine's payment of the Settlement Payment, and without the need for the execution and delivery of additional documentation or the entry of any additional orders of the Bankruptcy Court, any and all rights, claims, liens, actions, causes of action, defenses, suits and proceedings whatsoever, in law, equity or otherwise, which the Debtor or Chapter 7 Trustee ever had, now has, or hereafter may have on behalf of its wholly owned subsidiary Sequoia against Blaine, including but not limited to by reason of, arising from, or in connection with the Adversary Proceeding, shall be deemed waived, released, discharged and relinquished.

8.  Effectiveness. This Settlement Agreement shall become effective upon the Bankruptcy Court's entry of an order approving it (the "Effective Date").

9.  Amendment. This Settlement Agreement may not be amended or modified except by an instrument in writing signed by each Party.

10. Headings. The descriptive headings of the several sections of this Settlement Agreement are inserted for convenience of reference only and do not constitute a part of this Settlement Agreement.

11. Applicable Law. This Settlement Agreement shall be governed in all respects, including the validity, interpretation and effect thereof, by the Bankruptcy Code and the substantive laws of the State of Colorado.

12. Assignment/Binding Effect. This Settlement Agreement and all the provisions hereof shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

13. Counterparts. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

14. Entire Settlement. This Settlement Agreement constitutes the entire settlement and supersedes all other prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof, and, except as otherwise expressly provided herein, this Settlement Agreement is not intended to confer upon any other person any rights or remedies hereunder.

IN WITNESS WHEREOF, each of the Parties has caused this Settlement Agreement to be executed all as of the day and year first above written.

| JACK BLAINE | TOM CONOLLY, AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF SVS HOLDINGS, INC. AND FOR ITS WHOLLY OWNED SUBSIDIARY SEQUOIA VOTING SYSTEMS, INC. |
|---|---|
| /s/ Jack Blaine | _____ |

3

8. <u>Effectiveness</u>. This Settlement Agreement shall become effective upon the Bankruptcy Court's entry of an order approving it (the "<u>Effective Date</u>").

9. <u>Amendment</u>. This Settlement Agreement may not be amended or modified except by an instrument in writing signed by each Party.

10. <u>Headings</u>. The descriptive headings of the several sections of this Settlement Agreement are inserted for convenience of reference only and do not constitute a part of this Settlement Agreement.

11. <u>Applicable Law</u>. This Settlement Agreement shall be governed in all respects, including the validity, interpretation and effect thereof, by the Bankruptcy Code and the substantive laws of the State of Colorado.

12. <u>Assignment/Binding Effect</u>. This Settlement Agreement and all the provisions hereof shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

13. <u>Counterparts</u>. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

14. <u>Entire Settlement</u>. This Settlement Agreement constitutes the entire settlement and supersedes all other prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof, and, except as otherwise expressly provided herein, this Settlement Agreement is not intended to confer upon any other person any rights or remedies hereunder.

IN WITNESS WHEREOF, each of the Parties has caused this Settlement Agreement to be executed all as of the day and year first above written.

**JACK BLAINE**

**TOM CONOLLY, AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF SVS HOLDINGS, INC. AND FOR ITS WHOLLY OWNED SUBSIDIARY SEQUOIA VOTING SYSTEMS, INC.**

_____ _____, Trustee

3