**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| In re | |
| | Case No. 10-24238 HRT |
| SVS HOLDINGS, INC., | Chapter 7 |
| and | |
| | Case No. 14-11360 HRT |
| SEQUOIA VOTING SYSTEMS, INC., | Chapter 11 |
| Debtors. | Jointly Administered under Case No. 10-24238 HRT |

**MOTION TO SUBSTANTIVELY CONSOLIDATE DEBTORS' ESTATES**
**AND**
**MOTION FOR SUBSTANTIVE CONSOLIDATION**
**<u>NUNC PRO TUNC</u> TO JUNE 8, 2010**

Tom H. Connolly (the "<u>Trustee</u>"), as Chapter 7 trustee for SVS Holdings, Inc. ("<u>SVS</u>"), and for Chapter 11 debtor Sequoia Voting Systems, Inc. ("<u>Sequoia</u>"), move this Court for an order substantively consolidating the SVS and Sequoia bankruptcy estates into a single Chapter 7 bankruptcy estate under Case No. 10-24238 HRT. The Trustee further moves this Court for an order holding that such substantive consolidation shall, for all purposes, be <u>nunc pro tunc</u> to June 8, 2010, the date on which SVS filed its Chapter 11 bankruptcy petition. In support of these motions, the Trustee and Sequoia state as follows:

## I.   Introduction and Background

1. SVS was formed in 2007 for the purpose of acquiring Sequoia from Smartmatic USA Corporation ("<u>Smartmatic</u>") in a leveraged buy-out. SVS's sole asset is all of the stock of Sequoia. SVS never conducted any business of its own. Its only function was as a holding company for Sequoia.

2. Sequoia was incorporated in Delaware in 1990 and was, at the time it was acquired by SVS, engaged in providing electronic voting systems, election technologies, and related support services to governmental entities. Between 2007 and 2010, Sequoia ran into financial difficulty and liquidated all of its operating assets in two transactions which are the subject of the fraudulent transfer action, discussed in more detail below.

3. During the period between SVS's acquisition of Sequoia and SVS's bankruptcy filing, SVS and Sequoia shared the same or substantially the same officers and boards of directors, which, it appears to the Trustee, did not act independently or in the best interests of the separate entities. SVS and Sequoia also shared a single business location and address, operated out of the same bank accounts, and commingled assets and affairs. The Trustee is also informed and believes that intercompany transactions between SVS and Sequoia were often not documented and that SVS and Sequoia did not hold themselves out to the public as separate entities, such that creditors and other parties could not readily distinguish between the two.

4. On June 8, 2010 (the "SVS Petition Date"), SVS filed a voluntary petition under Chapter 11 in the Bankruptcy Court. SVS's primary creditor at the time of its filing was and remains Smartmatic for the purchase price of Sequoia. Though in Chapter 11 for a year and a half, SVS never had any operating business to reorganize. While SVS was in Chapter 11 and before the Trustee was appointed, Sequoia remained outside of bankruptcy and worked to settle the residual obligations it had to parties other than to SVS and Smartmatic. Sequoia, like SVS, during this period had no operating business, and, like SVS, had Smartmatic as its principal creditor. Sequoia's obligations to Sequoia arose from goods and services supplied by Smartmatic after the 2007 purchase by SVS of Sequoia.

5. The principal dispute in SVS's and now also Sequoia's bankruptcies has been and continues to be the propriety of SVS's and Sequoia's sales of substantially all of the assets of Sequoia to Dominion Voting Systems Corp. and its affiliate Dominion Voting Systems, Inc. (collectively, "Dominion") for a fraction of the price SVS paid when purchasing those same assets from Smartmatic. The asset sales occurred in 2009 and 2010 and left both SVS and Sequoia as empty shells.

6. Smartmatic is by far the largest creditor of SVS and Sequoia either separately or on a consolidated basis, Sequoia's schedules list 26 creditors, all of which are listed as having disputed claims, in a total amount of approximately $3,400,000, approximately $2,800,000 of which is owed to Smartmatic.

7. SVS's schedules and proofs of claim show $12,200,000 in total claims of which approximately $9,400,000is claimed by Smartmatic and another $1,600,000 are intercompany claims between Sequoia and SVS that would be eliminated in substantive consolidation.). Though there has been no final allowance of claims, it appears that Smartmatic holds approximately 80% of the unsecured claims both against SVS and Sequoia separately and would hold approximately the same percentage if the entities are consolidated.

8. On December 7, 2012, the Trustee proceeded with the fraudulent transfer claims against Dominion and filed an adversary proceeding in the Bankruptcy Court in a matter captioned Connolly v. Dominion Voting Sys. Corp., et al., Adv. Proc. No. 12-1757 HRT (the "Adversary Proceeding"). In addition to the fraudulent transfer claims against Dominion, the Trustee also filed a claim against Dominion to substantively consolidate SVS's bankruptcy estate with the assets and liabilities of Sequoia. The Adversary Proceeding has since been moved to the United States District Court for the District of Colorado (the "District Court") after that court withdrew the reference, Case No. 13-cv-00169-REB. The District Court referred the Adversary Proceeding to the Bankruptcy Court for all pre-trial matters. (Dkt. #27 in the Adversary Proceeding).

9. Smartmatic, pursuant to a funding agreement with the Trustee approved by this Court on December 4, 2012, (Dkt. #150), is providing funds to the SVS bankruptcy estate to pay for attorney fees and costs associated with the Adversary Proceeding. No such arrangement exists between Smartmatic and Sequoia.

10. On June 19, 2013, Dominion filed a motion to dismiss the Adversary Proceeding, arguing, among other reasons, that the District Court could not order the substantive consolidation of Sequoia and SVS because Sequoia was not a party to the Adversary Proceeding and because it was not a debtor in bankruptcy. (Dkt. #28 in the Adversary Proceeding).

2

11. On November 20, 2013, the Bankruptcy Court held that Sequoia must be a defendant in the Adversary Proceeding in order to substantively consolidate it with SVS and gave the Trustee leave to file an amended complaint that included such a claim against Sequoia. (Dkt. #53 in the Adversary Proceeding).

12. On December 4, 2013, the Trustee filed an Amended Complaint in the Adversary Proceeding that asserted a claim directly against Sequoia (but not against Dominion) to substantively consolidate SVS's estate with the assets and liabilities of Sequoia. (Dkt. #54 in the Adversary Proceeding). Though Sequoia confessed to the Trustee's claim to substantively consolidate the two entities, (Dkt. #61 in the Adversary Proceeding), the question still remained whether the Bankruptcy Court could substantively consolidate a debtor with a non-debtor.

13. In order to resolve that remaining issue, with the approval of the Bankruptcy Court, on February 11, 2014, the Trustee caused Sequoia to file its voluntary Chapter 11 petition and remains a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. The Trustee now seeks consolidation of the two debtor entities.

## II. Substantive Consolidation of the Bankruptcy Estates of SVS and Sequoia Will Benefit Creditors of Both Estates

14. Substantive consolidation of the assets and liabilities of SVS and Sequoia is in the best interests of their respective estates and creditors. The Bankruptcy Code does not specifically authorize substantive consolidation, but courts have long recognized it as an equitable remedy available in bankruptcy cases, and where courts have concerns about consolidation, almost uniformly, those concerns are based upon consolidating a debtor with a non-debtor. See, e.g., Federal Dep. Ins. Corp. v. Hogan (In re Gulfco Inv. Corp.), 593 F.2d 921, 928-31 (10th Cir. 1979); Fish v. East, 114 F.2d 177, 191-92 (10th Cir. 1940). In determining whether substantive consolidation is appropriate, courts in the Tenth Circuit have considered a number of factors, which one court has reduced to two general components: "(1) the extent to which the entity to be substantively consolidated was managed or controlled by the debtor, and (2) whether the entity to be substantively consolidated had an economic existence independent from the Debtor." In re Horsley, 2001 WL 1682013, at *4 (Bankr. D. Utah Aug. 17, 2001); see Helena Chm. Corp. v. Circle land and Cattle Corp. (In re Circle Land and Cattle Corp.), 213 B.R. 870, 875076 (Bankr. D. Kan. 1997). Other courts have held that substantive consolidation is appropriate when "necessary to avoid some harm or realize some benefit." Drabkin v. Midland-Ross Corp. (In re Auto-Train, Inc.), 810 F.2d 270, 276 (D.C. Cir. 1987); accord Union Sav. Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.), 860 F.2d 515, 519 (2d Cir. 1988).

15. Here, as noted above, Sequoia was managed and controlled by SVS and had little or no economic existence independent from SVS. SVS and Sequoia shared the same or substantially the same officers and boards of directors. SVS and Sequoia also shared a single business location and address, operated out of the same bank accounts, and commingled assets and affairs. The Trustee is also informed and believes that intercompany transactions between SVS and Sequoia were often not documented and that SVS and Sequoia did not hold themselves out to the public as separate entities, such that creditors and other parties could not readily distinguish between the two. For example, loans to SVS and/or Sequoia from SVS's former president, Jack Blaine, were commingled among the two debtors without regard to which debtor

3

received or used the funds.  The Trustee is also not aware of any creditor who relied on the separateness of SVS and Sequoia when extending credit.

16.     Pursuant to the proposed order submitted with these Motions, potential claimants against Sequoia will be given an additional period to file claims which will be treated as timely in the consolidated case.  Any settlements accomplished by Sequoia after SVS filed its bankruptcy petition, but before Sequoia filed its bankruptcy petition will not be undone because consolidation of the two cases would set a petition date for both entities as of the 2010 petition date for SVS.

17.     Consolidation would benefit the estates and their creditors by ensuring equality of distribution to all creditors, regardless of whether that creditor thought it was dealing with SVS or Sequoia, and by substantially reducing costs of administration.  Further. as noted above, Smartmatic is by far the largest creditor of both estates and would not be harmed by consolidation as it will receive similar amounts whether or not the estates are consolidated.

### III.  Substantive Consolidation Should Be Nunc Pro Tunc to the SVS Petition Date

18.     This Court should further consolidate the estates of SVS and Sequoia as of the SVS Petition Date.  Courts have typically consolidated estates nunc pro tunc to the earliest filing date of multiple debtors where the result would ensure equality of distribution by furthering the estates' ability to pursue avoidance claims:

> If the reasons for substantively consolidating two cases filed under the Code is to protect the unsecured creditors of both debtors where the assets and liabilities of the debtors are so intermingled as to make them substantially the same, and if the purpose of the preference provisions is to assure equality of distribution among all creditors, then it logically follows that where two cases are substantively consolidated upon a determination by the Court that the assets and liabilities of each debtor are not clearly separable, the preference provisions require us to treat the creditors of both debtors in substantially the same manner. In order for us to do so, we must assign a like filing date to both Debtors for purposes of the preference provisions.

Evans Temple Church of God in Christ and Community Ctr., Inc. v. Carnegie Body Co. (In re Evans Temple Church of God in Christ and Community Ctr., Inc.), 55 B.R. 976, 982 (Bankr. N.D. Ohio 1986); accord First Nat'l Bank of Barnesville v. Rafoth (In re Baker-Getty Fin'l Servs., Inc.), 974 F.2d 712, 720-21 (6th Cir. 1992); see Alexander v. Compton (In re Bonham), 229 F.3d 750, 769-71 (9th Cir. 2000); Kroh Bros. Dev. Co. v. Kroh Bros. Mgmt. Co (In re Kroh Bros. Dev. Co.), 117 B.R. 499, 502 (W.D. Mo. 1989); Saccurato v. Shawmut Bank, N.A. (In re Mars Stores, Inc.), 150 B.R. 869, 880 (Bankr. D. Mass. 1993).

19.     Other courts have relied on a balancing test in consolidating multiple estates nunc pro tunc to the earliest filing date.  For example, the additional inquiry set forth in Auto-Train requires a court to find that "the use of nunc pro tunc yields benefits greater than the harm it inflicts."  In re Auto-Train Corp., Inc., 810 F.2d at 277.  After the proponent of retroactive consolidation shows that it is necessary to achieve some benefit or avoid some harm, the party objecting to consolidation "may challenge the nunc pro tunc entry of the consolidation order by establishing that it relied on the separate credit of one of the entities to be consolidated and that it will be harmed by the shift in filing dates."  Id.; see Simon v. New Ctr. Hosp. (In re New Ctr.

Hosp.), 179 B.R. 848, 857 (Bankr. E.D. Mich. 1994) (court applied balancing test and consolidated estates nunc pro tunc to earlier filing date); In re Kroh Bros. Dev. Co., 117 B.R. at 502 (same).

20. Whether this Court applies the bright-line test set forth in Evans Temple Church or the balancing test set forth in Auto-Train, it should substantively consolidate SVS and Sequoia nunc pro tunc to the SVS Petition Date. This would result in a 2010 petition date for Sequoia, which would resolve any potential statute of limitation problems and ensure that no parties would be surprised by avoidance claims that would have accrued if there were a 2014 petition date. To the extent any creditors might have dealt separately with the two entities prior to 2010, there is no evidence of which the Trustee or Sequoia is aware that any creditor will be harmed by setting the petition date for both entities as the SVS Petition Date.

21. While some courts have declined to consolidate nunc pro tunc as of the date of the earliest filing among multiple entities, no court has held that it cannot do so under any circumstances. See, e.g., Walton v. Post-Confirmation Committee of Unsecured Creditors of GC Cos. (In re GC Cos.), 298 B.R. 226, 231-32 (D. Del. 2003) (court applied Auto-Train balancing test and consolidated estates, but declined nunc pro tunc consolidation to earlier filing date); Giuliano v. Shorenstein Co. (In re Sunset Aviation, Inc.), 468 B.R. 641, 649 (Bankr. D. Del. 2011) (court did not consolidate estates nunc pro tunc in adversary proceeding to earlier date because earlier consolidation order in bankruptcy case had not done so).

22. Here, where the assets of the respective estates were commingled prior to bankruptcy, and where pre-bankruptcy record-keeping (now 3½ years old) makes it extremely difficult to identify precisely which assets belong to which entities, nunc pro tunc consolidation would relieve the estates of the expense of reconstructing ownership histories. Nunc pro tunc consolidation avoids needless litigation over matters which, given the alter ego relationship between SVS and Sequoia, are essentially collateral to the merits of the Adversary Proceeding. Retroactive consolidation "permits the representatives of the respective estates to rely on the Code's avoidance powers with a minimum of procedural wrangling." Feltman v. Warmus (In re American Way Serv. Corp.), 229 B.R. 496, 527 (Bankr. S.D. Fla. 1999); see In re Kroh Bros. Dev. Co., 117 B.R. at 502 ("Nunc pro tunc consolidation would make it possible for a trustee to pursue an action under §§ 547 and 548, so the first requirement, benefit to the estate, is satisfied.").

23. The fraudulent transfer claims in the Adversary Proceeding are potentially the most valuable assets of the bankruptcy estates. The Trustee seeks to consolidate the two estates nunc pro tunc as of the SVS Petition Date and will rely on that date for purposes of applying the applicable statutes of limitation to his fraudulent transfer claims. Consolidating the two estates as of that date will benefit creditors of both estates by ensuring that creditors of both companies will benefit from any proceeds generated from such litigation, with no harm to either the estates or their creditors, and recognizes the sale of Sequoia's assets for less than equivalent value effectively transferred equity out of both estates simultaneously to the prejudice of all creditors; the separateness of the entities is not an appropriate distinction when concerning the timing of the consolidation. Consolidation as of June 8, 2010, is appropriate because Sequoia, like SVS, stopped doing business before that date, so no creditor can realistically claim any harm due to nunc pro tunc consolidation.

**WHEREFORE**, the Trustee and Sequoia request that the Court enter an Order a) substantively consolidating the bankruptcy estates of SVS and Sequoia into a single Chapter 7 bankruptcy case under Case No. 10-24238 HRT, and b) consolidating those estates nunc pro tunc as of the SVS Petition Date, and grant such other and further relief as the Court deems just and proper.

DATED: February 28, 2014.

                                     **FOSTER GRAHAM MILSTEIN & CALISHER, LLP**

                                     *By: /s/Daniel J. Garfield*
Daniel J. Garfield, #26054
360 S. Garfield St., 6th Fl.
Denver, Colorado 80209
Tel: (303) 333-9810
Fax: (303) 333-9786
dgarfield@fostergraham.com

*Attorneys for Chapter 7 Trustee Tom Connolly and Sequoia Voting Systems, Inc.*