## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | Case No. 10-24238-HRT |
| SVS HOLDINGS, INC. | Chapter 7 |
| and | Case No. 14-11360-HRT |
| SEQUOIA VOTING SYSTEMS, INC., | Chapter 11 |
| Debtors. | Jointly Administered under Case No. 10-24238-HRT |

**OBJECTION OF DOMINION VOTING SYSTEMS CORPORATION AND DOMINION VOTING SYSTEMS, INC., TO (A) MOTION TO SUBSTANTIVELY CONSOLIDATE DEBTORS' ESTATES AND (B) MOTION FOR SUBSTANTIVE CONSOLIDATION *NUNC PRO TUNC* TO JUNE 8, 2010, AND REQUEST FOR HEARING**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ i

INTRODUCTION ................................................................................................... 1

PROCEDURAL BACKGROUND.............................................................................. 2

FACTS RELEVANT TO SUBSTANTIVE CONSOLIDATION.................................. 5

ARGUMENT .......................................................................................................... 7

I.     MOVANTS' FAILURE TO PROVIDE ANY EVIDENCE TO SUPPORT
       SUBSTANTIVE CONSOLIDATION COMPELS THE OUTRIGHT DENIAL OF
       THEIR MOTION.................................................................................... 7

II.    MOVANTS' BARE, UNSUPPORTED ALLEGATIONS FAIL TO MEET ANY
       APPLICABLE LEGAL STANDARD FOR SUBSTANTIVE CONSOLIDATION. 14

       A.    Movants Oversimplify the Legal Standard for Substantive Consolidation. ......... 14

       B.    Movants Fail to Meet Any of the *Riviera* Tests.................................... 15

             1.    The financial affairs of SVS and Sequoia are not hopelessly commingled.... 15

             2.    Creditors did not deal with SVS and Sequoia as a single unit........................ 16

             3.    Movants have not shown substantial identity between SVS and Sequoia or
                   that consolidation is necessary to avoid harm or realize a benefit................. 18

       C.    Movants Have Not Alleged Any Fraudulent or Unjust Purpose that Would Justify
             Substantive Consolidation. ..................................................... 19

III.   SUBSTANTIVE CONSOLIDATION OF SVS AND SEQUOIA WOULD BE AN
       IMPROPER, INEQUITABLE APPLICATION OF AN EQUITABLE DOCTRINE.
       ........................................................................................................ 21

       A.    Substantive Consolidation is an Extraordinary Equitable Remedy. ..................... 21

       B.    Substantive Consolidation Should Not Be Invoked for the Primary Benefit of
             Smartmatic, and to the Detriment of Sequoia's Other Creditors. .......................... 21

IV.    NO BASIS FOR *NUNC PRO TUNC* SUBSTANTIVE CONSOLIDATION EXISTS.
       ........................................................................................................ 23

       A.    The Tenth Circuit Applies a Strict Test for *Nunc Pro Tunc* Orders that the SVS
             Trustee Cannot Meet........................................................... 23

B.   The Cases Cited by the SVS Trustee in Favor of *Nunc Pro Tunc* Consolidation Are Distinguishable. ........................................................................................... 23

C.   *Nunc Pro Tunc* Substantive Consolidation Would Be Inequitable Here. ............. 25

D.   The Trustee Overlooks the Adverse Practical Effects of *Nunc Pro Tunc* Consolidation. ...................................................................................................... 26

E.   Any *Nunc Pro Tunc* Substantive Consolidation Should Not Relate Back to SVS's Petition Date ......................................................................................................... 27

V.   DOMINION HAS STANDING TO CHALLENGE SUBSTANTIVE CONSOLIDATION, IN DEFENSE OF ITS SIGNIFICANT DIRECT FINANCIAL INTERESTS THAT THE SVS TRUSTEE IS ATTACKING. .................................. 27

CONCLUSION AND REQUEST FOR HEARING .................................................................. 30

# TABLE OF AUTHORITIES

## CASES

*Ault v. Emblem Corp. (In re Wolf Creek Valley Metro. Dist. No. IV),*
    138 B.R. 610 (D. Colo. 1992) ................................................................. 28

*Birmingham v. Experian Info. Solutions, Inc.,*
    633 F.3d 1006 (10th Cir. 2011) ............................................................ 19

*Cannon Mfg. Co. v. Cudahy Packing Co.,*
    267 U.S. 333 (1925) ............................................................................... 9

*Central Claims Servs. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.),*
    192 B.R. 903 (Bankr. S.D. Ohio 1996) .................................................. 8

*Crosby v. Mills,*
    413 F.2d 1273 (10th Cir. 1969) ............................................................ 23

*Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.),*
    810 F.2d 270 (D.C. Cir. 1987) ...................................................... passim

*Dye v. Sachs (In re Flashcom, Inc.),*
    361 B.R. 519 (Bankr. C.D. Cal. 2007) .................................................. 29

*Evans Temple Church of God in Christ and Cmty. Ctr., Inc. v. Carnegie Body Co. (In re Evans Temple Church of God in Christ and Cmty. Ctr., Inc.),*
    55 B.R. 976 (Bankr. N.D. Ohio 1986) ............................................ 23, 24

*FDIC v. Hogan (In re Gulfco Inv. Corp.),*
    593 F.2d 921 (10th Cir. 1979) ........................................................ 15, 20

*First Nat'l Bank of Barnesworth v. Rafoth (In re Baker-Getty Fin. Servs., Inc.),*
    974 F.2d 712 (6th Cir. 1992) ................................................................ 24

*Fish v. East,*
    114 F.2d 177 (10th Cir. 1940) ........................................................ 15, 20

*Helena Chem. Co. v. Circle Land and Cattle Corp. (In re Circle Land and Cattle Corp.),*
    213 B.R. 870 (Bankr. D. Kan. 1997) ............................................ 15, 19, 20

*Heller & Co. v. Langenkamp (In re Tureaud),*
    59 B.R. 973 (N.D. Okla. 1986) ............................................................ 21

*In re Balanced Plan, Inc.,*
    257 B.R. 921 (Bankr. W.D. Mo. 2001) ................................................ 29

*In re Global Indus. Techs., Inc.,*
    645 F.3d 201 (3d Cir. 2011) ................................................................ 28

*In re Grupp*,
    No. 08-40940, 2009 WL 8762885 (Bankr. N.D. Ind. Apr. 6, 2009) ........................................... 8

*In re Horsley*,
    No. 99-30458-JAB, 2001 WL 1682013 (Bankr. D. Utah Aug. 17, 2001)........................ passim

*In re OptInRealBig.com, LLC*,
    345 B.R. 277 (Bankr. D. Colo. 2006) ................................................................. 29

*In re Owens Corning*,
    419 F.3d 195 (3d Cir. 2005) ................................................................. passim

*In re Riviera Drilling & Exploration Co.*,
    Case No. 10-11902, 2012 WL 6719591 (Bankr. D. Colo. Dec. 19, 2012)............................... 14

*In re Schupbach Invs., LLC*,
    Case Nos. 11-11425, 11-13633, 2012 WL 3564159 (Bankr. D. Kan. Aug. 17, 2012) ........... 21

*In re Tureaud*,
    45 B.R. 658 (Bankr. N.D. Okla. 1985) ................................................................. 27

*In re Weatherford*,
    434 B.R. 644 (Bankr. N.D. Ala. 2010) ................................................................. 8

*In re Winn-Dixie Stores, Inc.*,
    356 B.R. 239 (Bankr. M.D.Fla. 2006) ................................................................. 14

*In re Worldcom, Inc.*,
    No. 02–13533, 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ................................... 14

*Jobin v. Boryla (In re M&L Bus. Machine Co., Inc.)*,
    75 F.3d 586 (10th Cir. 1996) ................................................................. 25

*Law v. Siegel*,
    571 U.S. ___ (2014)................................................................. 25

*Nickless v. Avnet, Inc. (In re Century Elecs. Mfg., Inc.)*,
    310 B.R. 485 (Bankr. D. Mass. 2004) ................................................................. 24

*Nintendo Co. v. Patten (In re Alpex Computer Corp.)*,
    71 F.3d 353 (10th Cir. 1995) ................................................................. 28

*Park v. Kaiser Coal Corp. (In re Kaiser Steel Corp.)*,
    998 F.3d 783 (10th Cir. 1993) ................................................................. 28

*Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Sys.)*,
    293 B.R. 479 (Bankr. E.D. Mo. 2003)................................................................. 27

*Reider v. FDIC (In re Reider)*,

31 F.3d 1102 (11th Cir. 1994) ................................................................................ 7

*Simon v. ASIMCO Techs., Inc. (In re Am. Camshaft Specialties, Inc.),*
410 B.R. 765 (Bankr. E.D. Mich. 2009) ........................................................... 7, 15

*U.S. v. AAPC, Inc. (In re AAPC, Inc.),*
277 B.R. 785 (Bankr. D. Utah 2002) .................................................................. 23

*Union Savings Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.),*
860 F.2d 515 (2d Cir. 1988) .................................................................. 15, 16, 19

## STATUTES

11 U.S.C. § 1109(b) ............................................................................................. 28
11 U.S.C. § 510(b) ................................................................................................. 7

## RULES

Fed. R. Bankr. P. 9013 ......................................................................................... 8
Fed. R. Bankr. P. 9019(a) ................................................................................... 27

## TREATISES

5 Collier on Bankruptcy (15th ed.) § 1100.06 at p. 1100-35 ............................... 8

Dominion Voting Systems Corporation and Dominion Voting Systems, Inc. (collectively, "Dominion") respectfully submit this Objection to the motion by Tom H. Connolly, as Chapter 7 Trustee (the "SVS Trustee") for SVS Holdings, Inc. ("SVS"), on behalf of SVS and Sequoia Voting Systems, Inc. ("Sequoia," and together with the SVS Trustee, "Movants"), to substantively consolidate SVS and Sequoia and their motion for substantive consolidation *nunc pro tunc* to June 8, 2010, the date of SVS's bankruptcy filing (collectively, the "Motion").

## INTRODUCTION

1.      The Motion should be denied.  It is the latest of the SVS Trustee's efforts to substantively and retroactively consolidate SVS with Sequoia.  As with prior efforts, the Motion is brought at the instigation and with the financing of SVS's largest creditor and Dominion's major competitor, Smartmatic USA Corporation ("Smartmatic").  The main purpose of the Motion is to enhance Smartmatic's ability to benefit from Sequoia's alleged fraudulent transfer claims against Dominion and avoid statute of limitations problems.

2.      The law does not permit the relief sought in the Motion.  The extraordinary instances where courts have invoked the equitable doctrine of substantive consolidation have arisen from the necessity to pool multiple debtors' assets and liabilities to benefit all creditors, where the debtors' assets and liabilities were so hopelessly entangled that they could not be separated or where the consolidated entities dealt with creditors as a single entity, to those creditors' detriment.[1]  There are no such facts here.  As Movants acknowledge, SVS had no business to consolidate with Sequoia's business, and the record is undisputed that the SVS Trustee's benefactor, Smartmatic, dealt with SVS and Sequoia in their separate capacities (and that creditors other than Smartmatic dealt only with Sequoia without relying on SVS).

---

[1] Courts in the Tenth Circuit also generally restrict consolidation to situations where it is necessary to avoid or remedy fraud or injustice.  *See infra* note 36.

Moreover, Movants' sole purpose in seeking consolidation here—pursuing enhanced fraudulent transfer claims against Dominion for Smartmatic's benefit—would contradict Smartmatic's actions in creating the SVS/Sequoia corporate structure, harm Sequoia's creditors, and be inequitable.

3.     As detailed below, the Court should deny the Motion for five reasons:  (i) Movants have offered no supporting evidence (no affidavits, documents or anything else), but only naked allegations; (ii) by contrast, as explained below, Dominion has submitted the declarations of seven witnesses (Exs. A-G hereto) to demonstrate that the facts do not warrant substantive consolidation;[2] (iii) even if Movants' allegations were supported with evidence, they would not satisfy any applicable legal standard for consolidation; (iv) it would be inequitable to permit consolidation for Smartmatic's primary benefit (given its involvement in creating SVS as a separate entity) to the potential detriment of Sequoia's other creditors; and (v) not only is substantive consolidation unwarranted, no legal or equitable basis exists to impose it *nunc pro tunc* to the date of SVS's bankruptcy filing in 2010.

## PROCEDURAL BACKGROUND

4.     On June 8, 2010, SVS filed a Chapter 11 petition with the Court.  In October 2012, while denying Smartmatic's motion to authorize it to bring fraudulent transfer claims directly against Dominion, the Court converted SVS's case to one under Chapter 7 and appointed the SVS Trustee.  SVS, as Sequoia's sole shareholder, had the ability to put Sequoia into bankruptcy from June 2010 until the appointment of the SVS Trustee, and the SVS Trustee could have done so from October 2012 onward.  Instead, on December 7, 2012, the SVS Trustee commenced the adversary proceeding captioned *Connolly, as Trustee v. Sequoia Voting*

---

[2] These declarations are not all of the evidence that Dominion is prepared to offer, but they are more than enough to demonstrate that Movants' contentions are wrong and that on the record before the Court, the Motion should be denied, or, at a minimum, that the Court should hold an evidentiary hearing on Movants' request for substantive consolidation.

*Systems, Inc., Dominion Voting Systems Corporation, and Dominion Voting Systems, Inc.*, Adv. Pro. No. 12-1757-HRT (the "Adversary Proceeding") against Dominion, seeking to draw Sequoia, a non-debtor, into bankruptcy indirectly, through the same improper claim for substantive consolidation of Sequoia with SVS that he seeks in the Motion.

5.       The SVS Trustee's purpose in adopting a substantive consolidation strategy is undisputed:  he wants a mechanism to allow Smartmatic, *SVS's* largest creditor and financier of the SVS Trustee's claims against Dominion [Dkt 139], to benefit from *Sequoia's* potential recoveries on claims alleging that *Sequoia* made constructively fraudulent transfers to Dominion in 2009 and 2010.  Thus, the SVS Trustee placed a substantive consolidation claim against Dominion as the first claim in the complaint commencing the Adversary Proceeding.

6.       On June 19, 2013, Dominion moved to dismiss the Adversary Proceeding, arguing that the substantive consolidation theory, on which the SVS Trustee's constructive fraudulent transfer claims depend, is legally and factually deficient.  The Court held that the SVS Trustee's complaint "must be dismissed if Sequoia is not named as a party to" the Adversary Proceeding along with Dominion, but allowed the SVS Trustee to amend the complaint to remedy this defect.  (*See* Order on Motion to Dismiss [Adv. Pro. Dkt 53] ("Order on Motion to Dismiss") at 5-7.)  The Court expressed no view on whether consolidation was appropriate, only that it was hypothetically possible if supported in fact.

7.       On December 4, 2013, the SVS Trustee filed an amended complaint [Adv. Pro. Dkt 54] (the "Amended Complaint") to name Sequoia as an additional defendant, but purported to drop Dominion as a defendant to the count seeking substantive consolidation of SVS and Sequoia (by omitting Dominion from the heading to count one of the Amended Complaint).  The Court did not direct this change, nor is it appropriate, given that most claims against Dominion in

the Amended Complaint continue to depend entirely on a consolidation of SVS and Sequoia. Rather, the change seems intended by the SVS Trustee as an effort to deprive Dominion of an opportunity to defend against substantive consolidation. On January 6, 2014, Sequoia (controlled by the SVS Trustee) filed an answer [Adv. Pro. Dkt 61] confessing judgment on the claims against it in the Amended Complaint, and cross-claimed against Dominion by joining in the SVS Trustee's claims against Dominion. These tactics appear to be another attempt by the SVS Trustee to force substantive consolidation without providing interested parties like Dominion with a full opportunity to challenge it. Dominion answered [Adv. Pro. Dkt 59] the Amended Complaint, contested the SVS Trustee's substantive consolidation count by denying numerous allegations in the Amended Complaint, asserted defenses (including a defense based on the SVS Trustee's failure to name indispensable and necessary parties, such as Dominion, in his consolidation count), and reserved its rights.

8.      On December 27, 2013, more than a year after his appointment, the SVS Trustee filed his Motion for Authorization to File Chapter 11 Bankruptcy Petition for Non-Debtor Subsidiary [Dkt 186]. The SVS Trustee did so for the primary purpose of consolidating SVS with Sequoia and thereby pursuing enhanced alleged constructive fraudulent transfer claims against Dominion (the "Sequoia Chapter 11 Motion"). Dominion filed a Limited Objection and Reservation of Rights [Dkt 188] to contest certain characterizations that the SVS Trustee made concerning substantive consolidation and to reserve its rights to challenge substantive consolidation. The Court granted the SVS Trustee the limited authority to file a Chapter 11 petition for Sequoia [Dkt 191].

9.      On February 11, 2014, Sequoia filed its Chapter 11 petition and Schedules and Statement of Financial Affairs [Case No. 14-11360-HRT Dkt 1].

10. The SVS Trustee then filed a Motion for Joint Administration [Dkt 193] (the "Joint Administration Motion") seeking to have SVS's and Sequoia's bankruptcy cases combined for administrative purposes.  Dominion filed a Limited Objection and Reservation of Rights [Dkt 194] to contest certain superfluous and inaccurate statements bearing on substantive consolidation.  Dominion again reserved its rights to challenge substantive consolidation.[3]  The Court allowed joint administration [Dkt 195] (the "Joint Administration Order") and noted that "certain recitals in the [Joint Administration] Motion to which the Objection refers are not necessary for entry of this Order . . ." (Joint Administration Order at 1.)  The Joint Administration Order expressly states that it "shall have **no effect upon the substantive issues of the estates**." (*Id.* (emphasis in original).)

11. Smartmatic filed a Joinder to the Motion on March 18, 2014 [Dk 200] (the "Joinder"), in which it adopts the Movants' arguments as to consolidation.

## FACTS RELEVANT TO SUBSTANTIVE CONSOLIDATION

12. Smartmatic purchased Sequoia in 2005.  (Blaine Decl. ¶ 7; Hurst Decl. ¶ 7.)  At the time, Sequoia had been in business in the voting systems industry for over 100 years.  (Blaine Decl. ¶ 17; Hurst Decl. ¶ 7.) Shortly after Smartmatic acquired Sequoia, the U.S. Government (through the Committee on Foreign Investment in the United States (CFIUS)) began investigating Smartmatic's acquisition of Sequoia. (Blaine Decl. ¶ 9; Hurst Decl. ¶ 9.)  The investigation ostensibly arose because Smartmatic, which had ties to Venezuela, owned Sequoia, which conducted elections for numerous governmental entities in the U.S. (Blaine Decl. ¶ 9.)  In response to the investigation, Smartmatic entered into an agreement with the United States to sell Sequoia within six months. (Blaine Decl. ¶ 9; Hurst Decl. ¶ 9.)  The agreement came at a time

---

[3] The SVS Trustee did not challenge Dominion's standing in respect of the two limited objections, each of which expressly stated that Dominion would contest any attempt at substantive consolidation, as the SVS Trustee and Sequoia were already aware from Dominion's answer to the Amended Complaint.

when the overall voting systems business was in decline. (Miller Decl. ¶ 14.) In 2007, to meet

the deadline imposed by its agreement, Smartmatic sold its stock in Sequoia to SVS, a new

holding company owned by former Smartmatic management and formed with Smartmatic's

encouragement for the acquisition. (Blaine Decl. ¶ 11; Hurst Decl. ¶ 10; Miller Decl. ¶ 15.)

13.     In consideration for its sale of Sequoia, Smartmatic received an unsecured

purchase-money promissory note from SVS (the "SVS Note"). (Blaine Decl. ¶ 12; Hurst Decl. ¶

10.) Sequoia was neither a co-obligor nor guarantor of the SVS Note. (Blaine Decl. ¶ 12.) At

approximately the same time, one Smartmatic affiliate entered into a Distribution Agreement

with SVS, while another affiliate entered into a Services Agreement with Sequoia. (*Id.* ¶ 13)

After the sale, Sequoia continued in business with many of the same customers and contracts as

under its previous ownership. (Blaine Decl. ¶ 21; Hurst Decl. ¶ 13.)

14.     As a result of the SVS Note and according to SVS's bankruptcy schedules,

Smartmatic is SVS's largest creditor (holding more than 80% of all general unsecured claims

against SVS). (*See* SVS Schedule F [Dkt 18].) Smartmatic and its affiliates also allege much

smaller claims against Sequoia relating to the 2007 divestiture and for goods and services that

Smartmatic allegedly provided to Sequoia. (Sequoia Schedule F [Case No. 14-11360 Dkt 1].)[4]

According to Sequoia's schedules, Smartmatic is also Sequoia's largest creditor, although the

amount of Smartmatic's alleged claims against Sequoia, even taken at face value, is a fraction of

the amount of Smartmatic's alleged claims against SVS. (*Id.*) None of Smartmatic's claims has

been proven, and all are listed as disputed in Sequoia's schedules.[5]

---

[4] Smartmatic first asserted these claims in connection with a state court fraudulent transfer lawsuit filed against Dominion in June 2013, apparently in response to Dominion's motion to dismiss the Adversary Proceeding (which was then pending consideration by the Court). However, according to Mr. Hurst, Sequoia's former *de facto* CEO who negotiated settlements with Sequoia creditors, Smartmatic never approached him to try to collect, or negotiate a settlement of, any alleged claims against Sequoia. (Hurst Decl. ¶ 16.)

[5] Dominion reserves the right to challenge all asserted claims of Smartmatic, including if

15.     While SVS was formed only in 2007 in connection with Smartmatic's divestiture of Sequoia, Sequoia (or its predecessors) had been in existence as an operating company for over 100 years.  (Blaine Decl. ¶ 17; Hurst Decl. ¶ 7.)  Many Sequoia creditors dealt with Sequoia before SVS even existed.  (Blaine Decl. ¶ 17.)  And creditors that dealt with Sequoia after the divestiture did not rely on any unity of the two entities.  (Hurst Decl. ¶ 13.)  To the knowledge of Mr. Hurst, who from the time of the Smartmatic divestiture until 2012 served as Sequoia's Vice President of Business Strategy and Development and later as its CEO, no Sequoia creditor asked about the financial wherewithal of SVS, asked that SVS provide a guarantee for Sequoia, or otherwise indicated that the existence of SVS had anything to do with the creditor's decision to extend credit to Sequoia, notwithstanding that SVS's ownership of Sequoia was public record.  (*Id.*)  Even after SVS's bankruptcy, Sequoia creditors did not express that they were creditors of SVS or that they were looking for payment from SVS during the process of settling Sequoia claims.  (*Id.* ¶¶ 14-17.)  Thus, substantive consolidation would defy the reasonable expectations of creditors who dealt with Sequoia and SVS as separate entities throughout their existence.

## ARGUMENT

### I.    MOVANTS' FAILURE TO PROVIDE ANY EVIDENCE TO SUPPORT SUBSTANTIVE CONSOLIDATION COMPELS THE OUTRIGHT DENIAL OF THEIR MOTION.

16.     Movants bear the high burden of proof to establish that substantive consolidation is warranted.[6]  Fed. R. Bank. P. 9013 requires that a "motion shall state ***with particularity*** the

---

consolidation is ordered.  For example, in the event of consolidation, because Smartmatic's claims against SVS arose from a sale of Smartmatic's equity in Sequoia to SVS, those claims should not permit Smartmatic to recover as a creditor of Sequoia. 11 U.S.C. § 510(b).

[6] *Reider v. FDIC (In re Reider)*, 31 F.3d 1102, 1109 (11th Cir. 1994) ("The burden is upon the proponent of a motion for consolidation and is exacting."); *In re Owens Corning*, 419 F.3d 195, 212 (3d Cir. 2005) (proponents have the burden to show the rationale for substantive consolidation); *In re Horsley*, No. 99-30458-JAB, 2001 WL 1682013, at *5 (Bankr. D. Utah Aug. 17, 2001) (noting that a trustee seeking substantive consolidation bears the burden to prove the necessary elements); *Simon v. ASIMCO Techs., Inc. (In re Am. Camshaft Specialties, Inc.)*, 410 B.R. 765, 786 (Bankr. E.D. Mich. 2009) ("[E]ven those courts that impose substantive

grounds therefor, and shall set forth the relief or order sought."[7]  "The word 'particularity' is

defined to mean 'fullness or minuteness of detail in the treatment of something,' or 'small

details.'"[8]  This requirement is even more important in the context of substantive consolidation,

which involves a fact intensive inquiry, on a case-by-case basis.[9]

17.     Movants have not offered ***any*** evidence to support the Motion.  This is not due to

a lack of opportunity: (a) the SVS Trustee has had over a year and a half since his appointment to

investigate the relationship between SVS and Sequoia; (b) the SVS Trustee has all the records of

SVS and Sequoia; and (c) Smartmatic, which is funding the SVS Trustee's litigation against

Dominion, sold Sequoia to SVS, directed SVS's formation to facilitate that sale, and has dealt

with SVS and Sequoia since the sale.[10]  Yet, the Motion consists only of generalized

unsubstantiated allegations, unsupported legal conclusions, and mere suppositions.  Basically,

the Motion parrots the sparse allegations regarding substantive consolidation in the SVS

Trustee's original Complaint and nearly identical Amended Complaint, and fails to supply any

admissible evidence or legal foundation for substantive consolidation under any legal standard.

---

consolidation consistently observe that it is an extraordinary remedy and one that is to be used sparingly.").

[7] Fed. R. Bankr. P. 9013 (emphasis added); *In re Grupp*, No. 08-40940, 2009 WL 8762885, at *1 (Bankr. N.D. Ind. Apr. 6, 2009) (denying unopposed motion for failure to state cognizable claim for relief under Rule 9013 because "[u]nlike adversary proceedings which contemplate notice pleading, motions initiating contested matters are required to state the grounds for relief 'with particularity.'").

[8] *See In re Weatherford*, 434 B.R. 644, 647 (Bankr. N.D. Ala. 2010) (citation omitted).

[9] *See, e.g., Central Claims Servs. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.),* 192 B.R. 903, 905 (Bankr. S.D. Ohio 1996) ("A review of the case law dealing with substantive consolidation makes it clear that decisions on the subject are fact intensive, and decisions are made on a case-by-case basis.") (citing 5 Collier on Bankruptcy (15th ed.) § 1100.06 at p. 1100-35).

[10] Within weeks after the filing of SVS's bankruptcy petition in 2010, Smartmatic obtained from this Court the authority to conduct document discovery and Rule 2004 examinations of Dominion.  Following those discovery efforts, Smartmatic sought permission from the Court to itself pursue the same claims that the SVS Trustee is currently pursuing against Dominion in the Adversary Proceeding, but its request was denied, leading instead to Smartmatic's funding of the Adversary Proceeding.  Through its Joinder, Smartmatic seeks to further involve itself in the same litigation that the Court denied it authority to pursue directly.

18.     The handful of "factual" allegations Movants proffer (below in bold) are vague, conclusory, and unsubstantiated—and (as Dominion describes in the text immediately following each of Movants' statements[11]) are so generic that they could describe almost any corporate structure in which a "holding company" owns all of the equity in an "operating company."  For example:

- **"Sequoia and SVS shared the same or substantially the same officers and boards of directors."** (Motion ¶ 15.)  Movants fail to explain the significance of this unremarkable allegation or how the alleged overlap might somehow be improper.  As the Supreme Court recognized long ago, the mere presence of common officers and directors cannot justify disregarding corporate separateness.[12]  Nor do Movants provide any evidence concerning how meetings of the respective boards were conducted or any other aspect of the alleged overlap.

- **"SVS and Sequoia also shared a single business location and address, operated out of the same bank accounts, and commingled assets and affairs."** (Motion ¶ 15.)  Movants fail to identify why a single location between holding company and operating company would be significant.  They offer no evidence as to what amounts were deposited into and withdrawn from the alleged common accounts for what purposes, how the accounts and any checks were labeled, or any other detail about the respective companies' cash management.  They give no detail or substantiation regarding any supposed commingling.

- **"The Trustee is also not aware of any creditor who relied on the separateness of SVS and Sequoia when extending credit."** (Motion ¶ 15.)  The SVS Trustee's alleged lack of awareness is irrelevant.  Movants fail to offer admissible evidence concerning any current or former creditor of SVS or Sequoia who claims to have dealt with SVS or Sequoia, let alone dealt with one entity believing it to be the other.

19.     Other of Movants' assertions (below in bold) are not only unsubstantiated, but irrelevant:

- **"Sequoia was managed and controlled by SVS and had little or no economic existence independent from SVS."** ( Motion ¶ 15.)  As Movants acknowledge, SVS was the holding company for Sequoia, SVS's wholly-owned subsidiary.  Under their vague and overbroad statement, Movants are effectively advocating that all holding company-operating company structures must result in substantive consolidation.

---

[11] Dominion follows the same formatting approach in the text following the material quoted in paragraphs 19, 20 and 22 below.

[12] *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337 (1925).

- **"The SVS Trustee is also informed and believes that . . . SVS and Sequoia did not hold themselves out to the public as separate entities, such that creditors and other parties could not readily distinguish between the two."** (Motion ¶ 15.) Even ignoring that the SVS Trustee's "information and belief" do not constitute facts and admissible evidence, the SVS Trustee provides no hint as to when, how, or by whom he was "informed" of these alleged facts, or on what factual basis his "belief" is supposedly founded. Regardless, Movants allege that SVS had no business, so it is unsurprising and irrelevant that SVS did not "hold itself out" to the public in any way. SVS's purpose was to serve as a holding company, not to do business with the public. Thus, the fact that creditors dealt with Sequoia and not SVS militates against consolidation, not for it.

20.     The additional representation (below in bold) is not only unsubstantiated, but subjective:

- **The two entities' officers and directors, "it appears to the Trustee, did not act independently or in the best interests of the separate entities."** (Motion ¶ 3.) What might "appear" to the SVS Trustee is beside the point. In addition to failing to provide any evidence of any instance in which the entities' officers and directors supposedly failed to act in the respective best interests of SVS and Sequoia, the SVS Trustee fails to specify the legal standard (*e.g.*, Delaware business judgment rule) by which he purportedly evaluates the officers' and directors' actions.

21.     None of the suppositions in the Motion rises to the level of particularity required under Rule 9013. And Movants fail to provide even a scintilla of actual, admissible evidence.

22.     Moreover, many of Movants' allegations (below in bold) are directly contradicted or undermined by the SVS Trustee's earlier representations to this Court, and to other facts readily ascertainable from the record in SVS's and Sequoia's bankruptcy cases and the Adversary Proceeding:

- **"SVS and Sequoia . . . commingled assets and affairs."** (Motion ¶ 15.) Movants' allegation is belied by Movants' own ability to identify separately the assets and liabilities of SVS and Sequoia. The Amended Complaint sets forth the individual assets and liabilities of SVS and Sequoia at various points in time. (Amended Complaint ¶¶ 8, 53, 80). SVS and Sequoia have filed separate schedules of their respective assets and liabilities in their separate bankruptcy cases. The SVS Trustee's motion to approve a settlement of avoidance claims with Sequoia's former president, Mr. Blaine [Dkt 159] (the "Blaine Settlement Motion"), at ¶ 8, separately identifies assets of Sequoia. The Sequoia Chapter 11 Motion, at ¶ 9, contains a detailed accounting of Sequoia's assets and liabilities and refers to the separate books and records of Sequoia.

- **"The Trustee is also informed and believes that intercompany transactions between SVS and Sequoia were often not documented."** (Motion ¶ 15.)  Although the SVS Trustee fails to explain in this allegation what "often not documented" means, the SVS Trustee alleged in his claims against Dominion in the Amended Complaint (¶¶ 52, 79) that SVS is one of Sequoia's creditors based on intercompany obligations from Sequoia to SVS.

- **"The Trustee is also not aware of any creditor who relied on the separateness of SVS and Sequoia when extending credit."** (Motion ¶ 15.)  Directly contrary to this allegation, Movants have acknowledged that the entities had separate creditors.  (SVS Schedule F [Dkt 18]; Sequoia Schedule F [Case No. 14-11360 DKT 1]; Blaine Settlement Motion ¶ 8.  The Motion itself represents that "Sequoia remained outside of bankruptcy and worked to settle the residual obligations it had to parties other than SVS and Smartmatic." (Motion ¶ 4.)  In the Blaine Settlement Motion, the SVS Trustee took the position that amounts owing by Sequoia to Mr. Blaine could not be set off against amounts owing by Mr. Blaine to SVS because the two entities were distinct.  (*See* Blaine Settlement Motion ¶ 6 ("The Trustee's investigation showed that the new loans were to Sequoia and thus could not be offset against the Transfers [by SVS].").)  Indeed, the primary consideration provided by Mr. Blaine to the SVS estate in the Blaine settlement —assignment to the SVS Trustee of Mr. Blaine's claims against Sequoia, free from any claims or defenses by Sequoia — would effectively disappear in the event of a consolidation of SVS and Sequoia, thus undermining the basis for the settlement upon which the SVS Trustee represented to the Court that the settlement should be approved.

  Most importantly, as described in more detail below, Smartmatic, which makes up the bulk of the creditor base of each entity, was able to distinguish between the two entities.  Smartmatic allegedly has separate claims against both SVS and Sequoia.  (*See* Motion ¶¶ 4, 6; SVS Schedule F [Dkt 18]; Sequoia Schedule F [Case No. 14-11360 DKT 1].)  Further, the fact that Smartmatic has a funding arrangement with the SVS Trustee, but not with Sequoia (Motion ¶ 9), supports the separateness of the entities and belies any notion that substantive consolidation is appropriate here.

- **"Consolidation would benefit the estates and their creditors by ensuring equality of distribution to all creditors . . . and by substantially reducing the costs of administration."**  (Motion ¶ 17.)  Movants fail to articulate how substantive consolidation would reduce the costs to administer the estates.  The Court has already authorized joint administration and SVS and Sequoia have filed separate schedules.  Moreover, substantive consolidation would ***not*** ensure equality of distributions to all creditors.  Instead, it would allow Smartmatic to benefit by permitting it to access potential Sequoia assets (which should be paid exclusively to Sequoia creditors) to satisfy its alleged claims against SVS.  Such a result would adversely affect all creditors of Sequoia other than Smartmatic.

  23.     Contrary to Movants' unsupported allegations, the testimony of the declarants in

Exhibits A to G (collectively, the "Declarations") demonstrates that consolidation would be inappropriate and unwarranted. These Declarations both show that the Movants' allegations are incorrect and offer additional facts that weigh heavily against consolidation. The Declarations are from the following witnesses and address the following subjects:[13]

- **Jack Blaine**: Mr. Blaine, a former Smartmatic employee and the former Chief Executive Officer and a director of both Sequoia and SVS, explains Smartmatic's role in encouraging SVS's formation as a holding company to buy Sequoia, how Smartmatic accepted an unsecured promissory note from SVS only (and not from Sequoia) as consideration for Smartmatic's sale of Sequoia, Smartmatic's relationship with SVS and Sequoia, and his knowledge of creditors' expectations regarding the two entities. (*See* Exhibit A.)

- **Kevin Hurst**: Mr. Hurst, a former employee of Smartmatic and later *de facto* CEO of Sequoia who was involved in negotiating settlements with the majority of Sequoia's creditors, explains Smartmatic's role in creating SVS as a holding company for Sequoia, the nature of SVS's debt to Smartmatic, Smartmatic's lack of pursuit of its alleged debts against Sequoia, and Sequoia's relationship with its creditors, including his understanding that creditors did not rely on the financial wherewithal of SVS, did not ask that SVS provide a guaranty for Sequoia, and did not otherwise indicate that the existence of SVS played a role in their decision to do business with Sequoia. (*See* Exhibit B.)

- **Harris N. Miller**: Mr. Miller, who at the behest of the U.S. government and Smartmatic became an outside trustee to Smartmatic during the CFIUS-directed sale process for Sequoia and became an independent board member of both SVS and Sequoia following Smartmatic's 2007 divestiture of Sequoia, explains that he abided by his customary director duties to each entity and voted independently on behalf of each entity. For example, Mr. Miller voted to put SVS into bankruptcy in 2010, but at the time allowed Sequoia to seek to resolve its obligations outside of bankruptcy. Mr. Miller also expresses his opinion, based on his understanding of SVS's and Sequoia's corporate structure and Smartmatic's relationship with the two entities, that substantively consolidating SVS and Sequoia would be inequitable. (*See* Exhibit C.)

- **Daniel Davidson, Drew Sunstein, and Angie Rogers**: Mr. Davidson, owner of D3 Technology Solutions ("D3"), and Mr. Sunstein, President of Sunrise Labs, Inc. ("Sunrise"), each of which provided services to Sequoia, explain that they did not know that Sequoia was owned by SVS, the existence of SVS had no bearing on D3's or Sunrise's business relationship with Sequoia or its decisions to extend credit to Sequoia, neither D3 nor Sunrise understood that creditors of SVS would be able to look to the assets of Sequoia for repayment, and that they object to consolidation. (*See* Exhibits D and E.) Ms. Rogers, the Commissioner of Elections for the State of Louisiana, a former

---

[13] If the Court entertains further evidence on the issue of consolidation, Dominion reserves the right to supplement the Declarations with additional evidence.

customer of Sequoia, explains that she was unaware that Sequoia was owned by SVS, all of her dealings were with Sequoia, and, as far as she is aware, the existence of SVS had no bearing on the State's business relationship with Sequoia.  (*See* Exhibit F.)

- **Jon Ahern**: Mr. Ahern is a Certified Public Accountant ("CPA") and a Senior Director in the Denver office of Alvarez & Marsal Global Forensic and Dispute Services.  Mr. Ahern opines, based on his review of documents in this matter, including financial statements and other documents produced by the SVS Trustee, that Sequoia and SVS maintained separate identities from an accounting and financial standpoint and that Sequoia's auditors issued an audit report for Sequoia in 2006 that only could have been issued if the auditors were confident of Sequoia's separateness from SVS  (*See* Exhibit G.)

24.     The Declarations further rebut Movants' claim that SVS and Sequoia shared a substantial identity or that creditors relied on any supposed unity of the entities in transacting business with Sequoia or SVS.  They also demonstrate that Smartmatic had actual knowledge of the separateness of SVS and Sequoia.  They also show that the officers and directors of the entities did act in the best interests of Sequoia and SVS separately.  For example, when SVS's board of directors voted to place SVS into bankruptcy in 2010, they made the judgment that it was in Sequoia's best interests to remain outside of bankruptcy as a going concern, with the goals of discharging its obligations to, and receiving payments from, Dominion and of resolving creditor claims outside of the bankruptcy process and separate from SVS.  (*See* Blaine Decl. ¶ 20; Miller Decl. ¶ 17-18; *see also* Hurst Decl. ¶ 15.)

25.     Based on the foregoing, Movants have failed to raise any question of fact or to provide any basis on which they can meet their high burden of proving that the Court should order substantive consolidation—or even an evidentiary hearing on the Motion.  Given the 18 months that the SVS Trustee has had to gather evidence and prepare a motion that complies with Rule 9013, combined with the fact that the SVS Trustee continues to engage in procedural tactics in pursuit of consolidation without support from any creditor other than Smartmatic (and in the face of opposition from other Sequoia creditors), the Court should deny the Motion outright.

26.     At a minimum, the Court should hold an evidentiary hearing at which Movants should be required to put on evidence in support of their allegations, and Dominion should be permitted to present evidence challenging the propriety of consolidation.[14]  The Joint Scheduling Order [Adv. Pro. No. 12-1757 Dkts 63-64] permits Dominion (whose substantial legal and financial rights are at stake) to take and use depositions in connection with any evidentiary hearing on consolidation.[15]  The parties have already begun document discovery pursuant to the Joint Scheduling Order, and the Joint Scheduling Order provides that depositions may be noticed after the deadline for the filing of this Objection.

## II.   MOVANTS' BARE, UNSUPPORTED ALLEGATIONS FAIL TO MEET ANY APPLICABLE LEGAL STANDARD FOR SUBSTANTIVE CONSOLIDATION.

### A.   Movants Oversimplify the Legal Standard for Substantive Consolidation.

27.     Although the Tenth Circuit has not mandated any single test for substantive consolidation, the Court in *Riviera* recently summarized the predominant tests by concluding that substantive consolidation should be granted if:

> (i) the debtor's financial affairs are so intertwined with the other entities' that it is either impossible or costly to untangle them;
>
> (ii) creditors have dealt with the various entities as a single unit; or
>
> (iii) there is a substantial identity between the entities and consolidation is necessary to avoid some harm or realize some benefit.[16]

---

[14] *See In re Worldcom, Inc.*, No. 02–13533, 2003 WL 23861928, at *45 (Bankr. S.D.N.Y. Oct. 31, 2003) ("Litigation of [substantive consolidation issues is] complex and protracted, involving expert analyses and detailed testimony regarding the extent of the [debtors'] accounting and operational entanglement, including complex issues attendant to . . . intercompany claims . . ., as well as evidence of the extent to which each holder of [a claim] that opposes substantive consolidation relied upon the separate legal identity of [the debtor] when it extended credit . . . ."); *In re Winn-Dixie Stores, Inc.*, 356 B.R. 239, 250 (Bankr. M.D. Fla. 2006) (holding that court would have to consider extensive testimony and other evidence regarding creditor reliance and extent of commingling).  The Joint Scheduling Order contemplates such a hearing if necessary.  (*See* Joint Scheduling Order at 2 ("Additional proceedings with respect to the Consolidation Motion will be set, as necessary . . . .").)

[15] *See, e.g.,* Joint Scheduling Order at 3, ¶ 4.

[16] *In re Riviera Drilling & Exploration Co.*, Case No. 10-11902, 2012 WL 6719591, at *9

The standard articulated by the court in *In re Horsley*, cited by Movants, is not inconsistent with the Court's holding in *Riviera*.[17]  Movants seek to oversimplify the test for substantive consolidation by relying only on two "general components" identified in *Horsley* (which components were synthesized from the historical factors in the Tenth Circuit's *Fish* and *Gulfco* decisions).[18]  But the *Horsley* court acknowledged that other factors are also relevant, and went on to examine the tests described in *Riviera* as part of its analysis.[19]  Movants' vague allegations that a parent controlled its subsidiary do not satisfy any of the *Riviera* tests.[20]

### B.    Movants Fail to Meet Any of the *Riviera* Tests.

#### 1.   *The financial affairs of SVS and Sequoia are not hopelessly commingled.*

28.    For substantive consolidation to be appropriate under the entanglement test identified in *Riviera*, the relevant entities' assets must be "hopelessly commingled."[21]  Movants have not shown (or even alleged with particularity) any commingling, let alone that the assets are "so hopelessly scrambled and commingled that it is impossible to separate them and tell them apart thereby resulting in harm to all creditors."[22]  Even where the necessary level of commingling is proven, substantive consolidation is justified "only where the time and expense

---

(Bankr. D. Colo. Dec. 19, 2012) (citing *Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.)*, 810 F.2d 270 (D.C. Cir. 1987); *Union Savings Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515 (2d Cir. 1988)).

[17] *Horsley*, 2001 WL 1682013, at *4-5.

[18] *See Fish v. East*, 114 F.2d 177 (10th Cir. 1940); *FDIC v. Hogan (In re Gulfco Inv. Corp.)*, 593 F.2d 921 (10th Cir. 1979).

[19] *Horsley*, 2001 WL 1682013, at *4-5.

[20] *See, e.g., Helena Chem. Co. v. Circle Land and Cattle Corp. (In re Circle Land and Cattle Corp.)*, 213 B.R. 870, 876 (Bankr. D. Kan. 1997) (applicant must allege more than just veil piercing factors to state a claim for consolidation).

[21] *Gulfco*, 593 F.2d at 929.

[22] *Am. Camshaft*, 410 B.R. at 787; *see Owens Corning*, 419 F.3d at 214 ("hopeless commingling" necessary to support substantive consolidation not shown where "there is no question which entity owns which principal assets and has which material liabilities").

necessary to even attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors."[23]  Movants have not alleged, and cannot allege, that it would be unreasonably difficult or expensive to separate the assets and liabilities of SVS and Sequoia or that doing so would otherwise harm creditors.  As the Third Circuit in *Owens Corning* explained:

> [C]ommingling justifies consolidation only when separately accounting for the assets and liabilities of the distinct entities will reduce the recovery of *every* creditor—that is, when every creditor will benefit from the consolidation . . . . Mere benefit to some creditors, or administrative benefit to the Court, falls far short.[24]

29.     Here, the record demonstrates the opposite of what is necessary to justify substantive consolidation.  The assets and liabilities of SVS and Sequoia have been and continue to be separate and ascertainable.  Movants themselves allege that SVS has no assets other than its stock in Sequoia (Motion ¶ 1)—so no asset of SVS could even hypothetically be commingled Sequoia's assets.  And SVS's biggest liability—the debt owed to Smartmatic on the SVS Note— is set forth in an instrument to which only SVS, and not Sequoia, is a party, and thus is not and could not be commingled with Sequoia's liabilities.  SVS's and Sequoia's separateness is further supported from an accounting and financial standpoint, as detailed in the Declaration of Mr. Ahern, a CPA who has reviewed the entities' financial statements.  (*See* Ahern Decl. ¶ 12.)

### 2. Creditors did not deal with SVS and Sequoia as a single unit.

30.     The second test for substantive consolidation articulated in *Riviera* evaluates whether creditors relied on the separate existence of the affiliated entities or if they treated them as a single entity.  Under this test, a *prima facie* case for substantive consolidation may exist when, "based on the parties' prepetition dealings, a proponent proves corporate disregard

---

[23] *Augie/Restivo*, 860 F.2d at 519 (internal citation and quotations omitted).

[24] 419 F.3d at 214 (emphasis in original).

creating contractual expectations of creditors that they were dealing with debtors as one indistinguishable entity."[25]   The basis for this criterion is that if two debtors caused creditors to rely on the debtors' combined assets when creditors were deciding whether to extend credit, the creditors should share recourse to the debtors' combined assets in bankruptcy.[26]

31.     Here, Movants would have to prove that creditors of SVS and Sequoia dealt with them as a single unit at the time of Sequoia's sales of assets to Dominion in 2009 and 2010.[27] Movants have put forth no evidence to support this conclusion.  Instead, the SVS Trustee states merely that he does not know of any creditor that relied upon the separateness of the entities. (Motion ¶ 15.)  But Movants misstate the applicable standard.  The issue is whether creditors extended credit to either SVS or Sequoia in reliance that the assets of both entities would be available to satisfy the debt.[28]

32.     Moreover, Movants ignore that SVS's largest and only significant creditor— Smartmatic, the entity funding the Adversary Proceeding and the co-proponent and primary beneficiary of the consolidation theory—dealt with SVS and Sequoia as separate entities. Smartmatic participated in SVS's formation as a holding company to buy Sequoia (as part of Smartmatic's divestiture of Sequoia in response to CFIUS concerns) and accepted the SVS Note from only SVS (not both entities) as consideration for its sale of Sequoia.  Smartmatic thus unquestionably understood that the two entities were separate and that Sequoia's assets would *not* be available to satisfy SVS's debts.  (*See* Blaine Decl. ¶¶ 11-15, 21; Hurst Decl. ¶ 10.)

---

[25] *Owens Corning*, 419 F.3d at 212.

[26] *See id.* at 211 n.19.

[27] After those transactions, Sequoia was not conducting further business and had few material assets, other than the cash and other consideration paid by Dominion in those transactions that the SVS Trustee later used to negotiate settlements with Sequoia's separate creditors.

[28] *Owens Corning*, 419 F.3d at 212.

17

Smartmatic separately transacted business with SVS and Sequoia, as shown by its separate contracts with, and claims against, each entity.  (*See* Blaine Decl. ¶ 12-14.)  In addition, as the declarations of Mr. Blaine, Ms. Hurst, Mr. Davidson, Mr. Sunstein, and Ms. Rogers demonstrate, Sequoia's other creditors and customers did not rely on SVS for credit support or otherwise in their transactions with Sequoia.  (*See* Blaine Decl. ¶ 17; Hurst Decl. ¶¶ 12-13, 17-18; Davidson Decl. ¶¶ 5-6; Sunstein Decl. ¶¶ 5-6; Rogers Decl. ¶ 4.)  Finally, Dominion, whose legal and financial interests would be damaged if substantive consolidation is permitted and who could be Sequoia's largest creditor if the 2009 and 2010 transactions were avoided, relied upon the separateness of the entities in negotiating and consummating its purchase of Sequoia assets in 2009 and 2010.  SVS was not a party to either the 2009 or 2010 transaction with Dominion, and SVS's board of directors separately approved a resolution of the 2010 transaction as it constituted the sale of substantially all of Sequoia's then-existing assets.  (Blaine Decl. ¶ 19.)[29]

### 3. Movants have not shown substantial identity between SVS and Sequoia or that consolidation is necessary to avoid harm or realize a benefit.

33.     Under the third test for substantive consolidation articulated in *Riviera*, Movants must show that SVS and Sequoia shared a substantial identity ***and*** that substantive consolidation is necessary to avoid harm or realize a benefit.[30]  Movants have not shown either.  As demonstrated by the lack of commingling and creditors' reliance on the separateness of the two entities, SVS and Sequoia did not share a substantial identity, internally or externally.[31]  All

---

[29] In addition, Sequoia sold its ballot printing business to Pro Document Solutions pursuant to an October 2009 Asset Purchase Agreement.  (Blaine Decl. ¶ 19.)  Again, SVS was not a party to the agreement.  (*Id.*)

[30] *See Auto-Train*, 810 F.2d at 276 ("The proponent must show not only a substantial identity between the entities to be consolidated, but also that consolidation is necessary to avoid some harm or to realize some benefit").  Contrary to Movants' suggestion, avoidance of harm or realization of benefit alone is not sufficient grounds for substantive consolidation.

[31] The determination of whether entities share a "substantial identity" involves an evaluation of factors similar to the "excessive entanglement" and "creditor reliance" tests discussed above.  *See id.*

Movants have noted is the obvious: that SVS was, and remains, a holding company for Sequoia. It cannot be the law that all holding companies are subject to consolidation with their subsidiary operating companies—that result would turn corporate law on its head.[32]

34.     Second, Movants fail to articulate any material benefit to be realized or harm to be avoided by consolidation in this case, net of any damage caused by consolidation.  On the contrary, the Amended Complaint and SVS's and Sequoia's schedules show that granting Movants' requested relief would **cause harm** to Sequoia's creditors (and to Dominion).  Because Sequoia is more solvent than SVS, Sequoia's creditors would be harmed, by having their claims diluted and their recoveries reduced by forcing them to share their recovery with SVS's creditors—in particular Smartmatic, with its almost $9.7 million claim.[33]  Consolidation is inappropriate where creditors would suffer actual harm by the combination of the two entities.[34] In any event, "absent . . . allegations of benefit or harm to general creditors of both corporations, [the proponent] cannot be said to have stated a claim upon which relief can be granted."[35]

### C.     Movants Have Not Alleged Any Fraudulent or Unjust Purpose that Would Justify Substantive Consolidation.

35.     Not only are Movants unable to satisfy even one of the *Riviera* tests for consolidation, no court in the Tenth Circuit has ever granted substantive consolidation in the absence of fraud, where the purpose of consolidation is the enhancement of an avoidance action

---

[32] *See Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006, 1018 (10th Cir. 2011) ("A subsidiary corporation is presumed to be a separate and distinct entity from its parent corporation.") (internal citation omitted).

[33] *See Augie/Restivo*, 860 F.2d at 518 (holding substantive consolidation has the potential to dramatically affect the rights of creditors, because it can force creditors of one entity to "share on a parity with creditors of a less solvent debtor.").

[34] *See Circle Land*, 213 B.R. at 876 ("Better, we think, to ask are any creditors going to be hurt by this consolidation and, if the answer to that is yes (or more properly if the one seeking consolidation cannot prove the opposite), consolidation should be denied in almost every case.") (citation omitted).

[35] *Circle Land*, 213 B.R at 876.

against a third-party defendant.[36]  Movants' allegations are bereft of any suggestion of fraud or wrongdoing.  This makes sense because the sole basis for the SVS Trustee's claims against Dominion is that Sequoia received insufficient consideration for the Purchased Assets.

36.     In each of the Tenth Circuit cases that Movants cite in favor of substantive consolidation, the court refused to order it.  In *Gulfco*, the court declined to consolidate two entities because the assets were not "hopelessly commingled" and there was no indicia of fraud.[37]  In *Horsley*, the court denied consolidation because the entities conducted separate business transactions, and there was contradictory evidence regarding commingling (including that the trustee had already unraveled many of the transactions), and uncontradicted evidence that at least some level of corporate formalities were observed.[38]  In addition, the *Horsley* court focused on the lack of fraud.[39]  The court also noted that the alleged necessity for substantive consolidation to allow the trustee to more easily reach the recipients of alleged preferences and fraudulent conveyances did not justify consolidation.[40]  In *Circle Land*, the proponent did not allege benefit or harm or explain the effect on general creditors of the estate, and thus failed to state a claim for consolidation.[41]

37.     Nor do the allegations here rise to level of the very few cases from Tenth Circuit courts where consolidation was granted.  Those cases involved hopeless commingling, lack of

---

[36] *See Gulfco*, 593 F.2d at 928 (substantive consolidation may only be used for a compelling reason, such as "when necessary to avoid fraud or injustice. . . ."); *Fish*, 114 F.2d 177 (10th Cir. 1940) (allowing substantive consolidation of entities that were organized to "hinder and delay creditors"); *Horsley*, 2001 WL 1682013, at *5 (denying a motion for substantive consolidation because there was insufficient evidence that the entity to be consolidated existed "only in furtherance of [the debtor's] improper financial dealings").

[37] 593 F.2d at 930.

[38] 2001 WL 1682013, at *6.

[39] *Id.* at *5.

[40] *Id.* at *6.

[41] 213 B.R. at 876.

independence by officers and directors, and, in nearly all of the cases, the presence of fraud.[42]

Movants' allegations suffer the same deficiencies as in *Gulfco*, *Horsley*, and *Circle Land*, and in

many respects even fall short of the allegations in those Tenth Circuit cases, each of which

denied consolidation.

## III.  SUBSTANTIVE CONSOLIDATION OF SVS AND SEQUOIA WOULD BE AN IMPROPER, INEQUITABLE APPLICATION OF AN EQUITABLE DOCTRINE.

### A.  Substantive Consolidation is an Extraordinary Equitable Remedy.

38.  Corporate separateness is a fundamental rule that should not be easily

disregarded.[43]  Substantive consolidation undermines this central principle, and as a result has

been described as "extreme," "imprecise," and a "rough-justice" remedy.[44]  Courts have

uniformly cautioned that it should be "used sparingly" and consistent with the doctrine's

equitable nature.[45]  In addition, substantive consolidation should only be used "defensively to

remedy the identifiable harms caused by entangled affairs, it may not be used offensively," as the

SVS Trustee is seeking to do to enhance his avoidance claims against Dominion and circumvent

the applicable statute of limitations.[46]

### B.  Substantive Consolidation Should Not Be Invoked for the Primary Benefit of Smartmatic, and to the Detriment of Sequoia's Other Creditors.

39.  Smartmatic would be the primary beneficiary of substantive consolidation of SVS

and Sequoia—and doubly so, because Smartmatic could use Sequoia's assets to satisfy

---

[42] *See, e.g., Heller & Co. v. Langenkamp (In re Tureaud)*, 59 B.R. 973, 977 (N.D. Okla. 1986).

[43] *Owens Corning*, 419 F.3d at 211 ("[E]ntity separateness is a 'fundamental ground rule.' As a result . . . courts respect entity separateness absent compelling circumstances calling equity (and then even only possibly substantive consolidation) into play.") (internal citation omitted).

[44] *Id.*

[45] *Id.* at 208-09 (internal citation and quotations omitted); *In re Schupbach Invs., LLC*, Case Nos. 11-11425, 11-13633, 2012 WL 3564159, at *4 (Bankr. D. Kan. Aug. 17, 2012).

[46] *Owens Corning*, 419 F.3d at 211.

Smartmatic's large claim against SVS, and (if the SVS Trustee's claims against Dominion were successful) that satisfaction could come in substantial part from one of Smartmatic's primary competitors, Dominion.  That would be a good result for Smartmatic, but it would harm Sequoia's legitimate creditors whose claims Smartmatic's would dwarf.

40.     Smartmatic directed SVS's creation as a separate corporate entity, as part of its divestiture of Sequoia in response to the U.S. government's concerns about Smartmatic's Venezuelan connections.  Smartmatic did not deal with Sequoia and SVS as one and the same. Smartmatic helped to *create* SVS.  Smartmatic then *sold* Sequoia *to* SVS.  Smartmatic accepted the SVS Note *from SVS alone*, without any guarantee from Sequoia.  Smartmatic entered into *separate contracts* with, and has asserted *unique claims* against each of SVS and Sequoia. Smartmatic should not be permitted now, in bankruptcy, to unwind a corporate structure *that it created* in 2007, to elevate its prior status as an equityholder of Sequoia into a debt claim against Sequoia,[47] or to rewrite the contract governing its divestiture of Sequoia, solely to enhance Smartmatic's effort to gain a competitive advantage over Dominion through litigation.

41.     If consolidation were ordered, Sequoia's other creditors would see their claims pool increase considerably without any additional contribution of assets from SVS.[48] According to Sequoia's schedules, creditors other than Smartmatic hold $557,644.49 in general unsecured claims against Sequoia.  Smartmatic's claim against Sequoia, if allowed, brings the total apparent amount of general unsecured claims against Sequoia to $3,383,052.52.  Any recoveries by Sequoia against Dominion should go to satisfy the creditors holding these claims.  But if SVS and Sequoia are consolidated, the claims pool would increase by $9.7 million (over 350%) due to

---

[47] Indeed, its attempt to do so violates Section 510(b) of the Bankruptcy Code.

[48] *Auto-Train*, 810 F.2d at 276 ("[B]ecause every entity is likely to have a different debt-to-asset ratio, consolidation almost invariably redistributes wealth among the creditors of the various entities.").

Smartmatic's claim alone, thus dramatically diminishing potential recoveries by true Sequoia creditors.  Thus, consolidation's benefit to Smartmatic would come at the expense of Sequoia's other creditors.

## IV.   NO BASIS FOR *NUNC PRO TUNC* SUBSTANTIVE CONSOLIDATION EXISTS.

42.   To enhance his claims on Smartmatic's behalf against Dominion in the Adversary Proceeding,  the SVS Trustee would need not only an extraordinary remedy of substantive consolidation, but also the unheard of *nunc pro tunc* application of that remedy, so that he could evade the statute of limitations applicable to certain claims by Sequoia against Dominion.  Like the remedy of consolidation itself, *nunc pro tunc* consolidation is inappropriate here.

### A.   The Tenth Circuit Applies a Strict Test for *Nunc Pro Tunc* Orders that the SVS Trustee Cannot Meet.

43.   Under Tenth Circuit precedent, a *nunc pro tunc* order cannot be used to reflect something that did not occur—it can only correct or recognize a mistake, error or action that occurred while a particular legal action was already pending.[49]  Courts within this circuit have therefore declined to order substantive consolidation on a retroactive basis under circumstances similar to those in this case.[50]  Thus, the Court should not permit Movants to rewrite history by allowing retroactive consolidation.

### B.   The Cases Cited by the SVS Trustee in Favor of *Nunc Pro Tunc* Consolidation Are Distinguishable.

44.   Despite the Tenth Circuit's unequivocal disfavor of *nunc pro tunc* consolidation, the Movants proffer two legal standards from outside the Tenth Circuit to support his claim for *nunc pro tunc* consolidation.[51]  Their request fails under both tests.

---

[49] *Crosby v. Mills*, 413 F.2d 1273, 1277 (10th Cir. 1969).

[50] *See Horsley*, 2001 WL 1682013, at *6; *U.S. v. AAPC, Inc. (In re AAPC, Inc.)*, 277 B.R. 785, 789 (Bankr. D. Utah 2002).

[51] *See Evans Temple Church of God in Christ and Cmty. Ctr., Inc. v. Carnegie Body Co.*

45.     First, Movants rely on the *Evans Temple* line of cases, in which the central
consideration is whether creditors distinguished between the two debtors.[52]  Where creditors did
not distinguish between the two entities, granting *nunc pro tunc* consolidation and treating the
debtors as one entity at the time of the earliest filing, may not be "manifestly unfair."[53]  But as
demonstrated above, creditors of SVS and Sequoia, including Smartmatic, ***did*** distinguish
between the two entities, and Movants have provided no facts to the contrary.  Thus, *nunc pro
tunc* consolidation should not be permitted under the first standard advanced by Movants.

46.     Under Movants' second proposed standard—the *Auto-Train* test—*nunc pro tunc*
consolidation must yield a benefit, and the benefit must be greater than the harm it inflicts.[54]
Here, the only potential benefit is to Smartmatic.  This benefit is insufficient because Smartmatic
itself relied on the two entities' separate credit at all relevant times and was intimately familiar
with their corporate structure, which Smartmatic helped to devise.  Moreover, the harm to
creditors (and to Dominion) outweighs any benefit that Smartmatic might enjoy.  Sequoia's
creditors would be forced to share in a recovery with Smartmatic, which did not rely on the
entities' combined credit in dealing with SVS, when Sequoia's other creditors relied on its
separate credit.  In addition, Dominion, which purchased assets from Sequoia, could be subjected
to enhanced avoidance claims arising from amounts owed to Smartmatic by SVS, an entity from
which it did not buy assets.  Thus, the potential harm to Sequoia's creditors and Dominion far
outweighs the singular potential benefit to Smartmatic of allowing *nunc pro tunc* consolidation.

---

*(In re Evans Temple Church of God in Christ and Cmty. Ctr., Inc.)*, 55 B.R. 976 (Bankr. N.D.
Ohio 1986); *Auto-Train*, 810 F.2d 270.

[52] *See Evans Temple*, 55 B.R. at 982-83; *First Nat'l Bank of Barnesworth v. Rafoth (In re
Baker-Getty Fin. Servs., Inc.)*, 974 F.2d 712, 720-21 (6th Cir. 1992); *see also Nickless v. Avnet,
Inc. (In re Century Elecs. Mfg., Inc.)*, 310 B.R. 485, 489-90 (Bankr. D. Mass. 2004).

[53] *See Evans Temple*, 55 B.R. at 982-83.

[54] *See Auto-Train*, 810 F.2d at 277.

### C.   *Nunc Pro Tunc* Substantive Consolidation Would Be Inequitable Here.

47.     Statutes of limitations exist for a reason—they represent Congress's judgment that claims should be brought within a firmly established and predictable period of time.[55]  As a matter of law, the equitable doctrine of substantive consolidation cannot be used to overrule Congress's judgment and circumvent relevant statutes of limitations.[56]  Unlike the statute of limitations for avoidance actions under Section 546, substantive consolidation is not expressly provided for in the Bankruptcy Code; rather, it relies upon the broad equitable powers of the bankruptcy court in Section 105 of the Bankruptcy Code.  Just this month, the United States Supreme Court reaffirmed the long-standing principle that "Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits."[57]  The court in *Horsley* reached the same conclusion, and thus refused to grant *nunc pro tunc* relief under Section 105 to extend the reachback period established by Section 546 of the Bankruptcy Code for bringing avoidance claims.[58]

48.     *Nunc pro tunc* consolidation would also be inequitable to creditors and other parties in interest who rely on the certainty afforded by statutes of limitations.  The court in *Auto-Train* acknowledged that permitting retroactive consolidation to extend applicable statutory limitations periods would upend creditor expectations and make it more difficult for corporations

---

[55] *See Jobin v. Boryla (In re M&L Bus. Machine Co., Inc.)*, 75 F.3d 586, 590 (10th Cir. 1996) ("Purposes of statutes of limitations are to insure finality and to prevent the assertion of stale claims.").

[56] *See Horsley*, 2001 WL 1682013, at *6 ("Granting the Trustee's motion would circumvent [Section 546's statute of limitations] under the broad guise of employing equity.").

[57] *Law v. Siegel*, 571 U.S. ___ (2014) ("It is hornbook law that §105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'") (citation omitted).

[58] *Horsley*, 2001 WL 1682013, at *8 ("[T]he Trustee seeks substantive consolidation, not to enhance the reorganization of multiple hopelessly intertwined debtors treated by parties as one unit, but instead as a mechanism to expand the statutory limitations periods . . . .  This is simply an attempt to do indirectly that which the Code prohibits.").

to conduct business.[59]  Although Movants state that "no parties would be surprised by avoidance claims that would have accrued if there were a 2014 petition date," it seems much more likely that parties would be blindsided by any attempt by the SVS Trustee to commence Bankruptcy Code avoidance actions with respect to claims dating back to 2008 (or even earlier under state law)—years beyond the reach-back period that would result under Section 546 of the Bankruptcy Code from Sequoia's 2014 petition date.[60]

49.     Sequoia and Smartmatic are free to pursue any rights they may have within applicable law, including direct avoidance claims by Sequoia, but they should not be permitted to flout statutes of limitation in order to excuse their failure to have taken action sooner.

### D.     The Trustee Overlooks the Adverse Practical Effects of *Nunc Pro Tunc* Consolidation.

50.     In 2010 and 2011, Sequoia negotiated settlements with creditors holding a majority of claims against Sequoia.  (Hurst Decl. ¶ 16.)  The SVS Trustee states in the Motion that "any settlements accomplished by Sequoia after SVS filed its bankruptcy petition, but before Sequoia filed its bankruptcy petition will not be undone because consolidation of the two entities would set a petition date for both entities as of the 2010 petition date for SVS."  (Motion ¶ 16.) However, settlements entered into by Sequoia since 2010 have not been approved under Federal Rule of Bankruptcy Procedure 9019 and thus would not be enforceable and would not bar claims by Sequoia against previously-settling creditors if a petition date for Sequoia were retroactively set as of SVS's 2010 petition date.  Rule 9019 provides that compromises and settlements by a

---

[59] *See Auto-Train*, 810 F.3d at 276 ("Although the Bankruptcy Code clearly compels certain transferees to restore to their debtor property received within 90 days of the date their debtor files a petition in bankruptcy, it would thwart the Code's policies to require transferees to disgorge solely on the basis of a bankruptcy filing by their debtor's apparently distinct affiliate.").

[60] For example, companies other than Dominion that purchased assets from Sequoia, such as Pro Document Solutions, which bought Sequoia's print business between the 2009 and 2010 Dominion asset purchases, might be subject to an avoidance claim by the SVS Trustee.

debtor must be approved by the court after providing creditors notice and opportunity for a hearing.[61]   Settlements not approved in accordance with Rule 9019 are unenforceable.[62] Moreover, Movants fail to acknowledge that retroactive consolidation may subject additional pre-2010 transactions by Sequoia to avoidance contrary to the otherwise applicable statute of limitations and relevant look-back periods, thus violating creditors' reasonable expectations.[63]

> **E.    Any *Nunc Pro Tunc* Substantive Consolidation Should Not Relate Back to SVS's Petition Date.**

51.     In one of the few cases from within the Tenth Circuit that permitted *nunc pro tunc* consolidation, *In re Tureaud*, 45 B.R. 658 (Bankr. N.D. Okla. 1985), *aff'd* 59 B.R. 973 (N.D. Okla. 1986), the court permitted substantive consolidation retroactive only to the date of the motion (on notice to all interested parties) for substantive consolidation.[64]   Not only are there no grounds under the Tenth Circuit's standards for the Court to permit *nunc pro tunc* consolidation, there is also no precedent for ordering such consolidation before February 28, 2014—the date Movants served the Motion.

**V.    DOMINION HAS STANDING TO CHALLENGE SUBSTANTIVE CONSOLIDATION, IN DEFENSE OF ITS SIGNIFICANT DIRECT FINANCIAL INTERESTS THAT THE SVS TRUSTEE IS ATTACKING.**

52.     The Motion does not address Dominion's standing to object to substantive consolidation, but the SVS Trustee has indicated to Dominion that he will oppose Dominion's standing.  Thus, Dominion addresses this important threshold matter, in defense of its rightful standing to contest Movants' improper efforts to substantively consolidate SVS and Sequoia.

---

[61] *See* Fed. R. Bankr. P. 9019(a).

[62] *See, e.g., Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Sys.)*, 293 B.R. 479, 485 (Bankr. E.D. Mo. 2003) (holding that, because an alleged settlement was never approved by the court under Rule 9019, the settlement agreement was unenforceable).

[63] *See supra* note 60.

[64] *See Tureaud*, 45 B.R. at 663.

53.     The SVS Trustee's expressed intent to deprive Dominion of standing to contest substantive consolidation at this stage is odd, as the SVS Trustee initially sought consolidation in the first count of his initial complaint ***against Dominion*** in the Adversary Proceeding.  It appears that the SVS Trustee's complicated strategy—(a) amending the complaint to indicate that the consolidation claim is against Sequoia only, (b) confessing judgment on that claim on Sequoia's behalf, and (c) causing Sequoia to file a Chapter 11 case and to seek consolidation by motion—is designed to end-run Dominion's ability to contest the same claim that the SVS Trustee initiated against Dominion in the first instance and that is a linchpin to the SVS Trustee's fraudulent conveyance litigation against Dominion.  Not only is that strategy an ill-conceived attempt to deny Dominion due process, it also has no legal support.

54.     Under section 1109 of the Bankruptcy Code a "party in interest . . . may raise and may appear and be heard on any issue in" a Chapter 11 case.[65]  While Section 1109(b) lists examples of potential parties in interest, the term is not confined to that list.[66]  Instead, a bankruptcy court "must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation."[67]  The phrase "party in interest" has been given a broad interpretation.[68]  The phrase "is generally understood to include all persons whose pecuniary interests are[] directly affected by the bankruptcy proceedings."[69]  "Having the status of a creditor who has filed a proof of claim in a proceeding is

---

[65] 11 U.S.C. § 1109(b).  *See also In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011) ("Article III standing and standing under the Bankruptcy Code are effectively coextensive.").

[66] *Park v. Kaiser Coal Corp. (In re Kaiser Steel Corp.)*, 998 F.3d 783, 788 (10th Cir. 1993).

[67] *Id.* (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)).

[68] *Ault v. Emblem Corp. (In re Wolf Creek Valley Metro. Dist. No. IV)*, 138 B.R. 610, 615 (D. Colo. 1992) ("[I]t is clear that the legislative history of § 1109(b) indicates that Congress sought to encourage and promote greater participation in reorganization cases.").

[69] *Nintendo Co. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 356 (10th Cir.

not a necessary condition precedent to being considered a party in interest."[70]

55.     Dominion is a party in interest with standing to object to substantive consolidation—it is the entity with the most to lose, through damage to its legal and financial interests.[71]  In *Balanced Plan*, a case with facts identical to the situation in this case, the trustee sought to substantively consolidate, *nunc pro tunc*, the estates of a debtor and a nondebtor to acquire standing to pursue an avoidance action against two individuals who had received transfers from the non-debtor.  The potential defendants objected to the motion for substantive consolidation, and the trustee challenged their standing.  The court held that the defendants had standing to object.  The court reasoned that the defendants:

> have a significant financial stake in the outcome of the Trustee's substantive consolidation motion and the Trustee's adversary proceeding, and are being threatened with substantial financial injury.  Such financial injury is directly traceable to the Trustee's substantive consolidation motion, and if the Court denies the motion based upon the [potential defendants'] objection, the potential injury will be avoided.[72]

Here, Dominion, which would be subject to enhanced avoidance claims if SVS and Sequoia are substantively consolidated, has a direct financial stake in the outcome of the Motion.  Dominion has previously been heard on other matters in this case affecting its rights, including the Sequoia Chapter 11 Motion and the Joint Administration Motion, without objection by the SVS Trustee or any other party.  Moreover, the Joint Scheduling Order contemplates that Dominion will be permitted to participate in any hearings regarding substantive consolidation.[73]  Finally, it would

---

1995) (quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir.1993)).

[70] *In re OptInRealBig.com, LLC*, 345 B.R. 277, 281 (Bankr. D. Colo. 2006).

[71] *See In re Balanced Plan, Inc.*, 257 B.R. 921, 923 (Bankr. W.D. Mo. 2001).

[72] *Id.*

[73] *See* Joint Scheduling Order at 3, ¶ 4.  Any ruling based on Sequoia's confession of judgment without due process being afforded to Dominion, such ruling can have no effect as to Dominion in the Adversary Proceeding.  *Cf., Dye v. Sachs (In re Flashcom, Inc.)*, 361 B.R. 519,

be a violation of due process to allow Smartmatic to join the Motion but bar Dominion from contesting it.

56.     It is now time to reject the unfounded, Smartmatic-backed attempt at substantive consolidation and leave the parties to address the constructive fraudulent transfer claims against Dominion on their merits, based on Sequoia's distinct existence and the actual applicable statutes of limitations.  As described above, Sequoia still can bring claims directly against Dominion (subject to Dominion's defenses), and even without consolidation Smartmatic can recover as a creditor in Sequoia's bankruptcy case to the extent it has valid claims against Sequoia.  Nor is the SVS Trustee himself without recourse.  Like Smartmatic, the SVS Trustee can recover in his capacity as Sequoia's creditor to the extent SVS has a valid claim against Sequoia for intercompany debt or otherwise.

## CONCLUSION AND REQUEST FOR HEARING

57.     A year and a half after the SVS Trustee's appointment, Movants have now had their chance to set forth their alleged basis for consolidation; the Motion demonstrates that they cannot prevail.  Based on the existing record, the Court should deny the Motion with prejudice based on Movants' failure to allege with particularity the facts required for, much less proffer any evidence in support of, substantive consolidation of SVS and Sequoia.  To the extent these failures alone do not mandate denial, the SVS Trustee's contradictory representations throughout this case regarding SVS's and Sequoia's separateness and Dominion's evidence of the distinct corporate identities of SVS and Sequoia compel that the Motion be denied.  If the Court does not deny the Motion at this stage, Dominion requests an evidentiary hearing on the Motion pursuant to LBR 9013-1 following a reasonable discovery period.

---

525 (Bankr. C.D. Cal. 2007) (holding that a party has a due process right to defend itself against a claim and cannot be deprived of that right based on stipulation or default judgment).

Dated this 21st day of March, 2014.

SHERMAN & HOWARD L.L.C.

s/ David B. Wilson
David B. Wilson
Eric E. Johnson
633 Seventeenth Street, Suite 3000
Denver, Colorado  80202
Telephone:  (303) 297-2900
Facsimile:  (303) 298-0940
Email: dwilson@shermanhoward.com
Email: ejohnson@shermanhoward.com

- and -

WILMER CUTLER PICKERING HALE
AND DORR LLP
Richard A. Johnston
George W. Shuster, Jr.
60 State Street
Boston, MA 02109
Tel:  617-526-6282
Email: Richard.Johnston@wilmerhale.com

Attorneys for DOMINION VOTING
SYSTEMS CORPORATION and
DOMINION VOTING SYSTEMS, INC.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 21st day of March, 2014, a true and correct copy of the foregoing **OBJECTION OF DOMINION VOTING SYSTEMS CORPORATION AND DOMINION VOTING SYSTEMS, INC., TO (A) MOTION TO SUBSTANTIVELY CONSOLIDATE DEBTORS' ESTATES AND (B) MOTION FOR SUBSTANTIVE CONSOLIDATION *NUNC PRO TUNC* TO JUNE 8, 2010, AND REQUEST FOR HEARING** was filed using the CM/ECF and served by U.S. mail, postage prepaid, as follows:

Daniel J. Garfield
Foster Graham Milstein & Calisher, LLP
360 S. Garfield St., 6th Fl.
Denver, CO 80209

Brent R. Cohen
Chad S. Caby
Kristin M. Bronson
Rothgerber Johnson & Lyons LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO  80202-5885

<u>s/ Roberta Neal                          </u>
Name: