# **EXHIBIT G**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re | |
| | Case No. 10-24238 HRT |
| SVS HOLDINGS, INC., | Chapter 7 |
| and | |
| | Case No. 14-11360 HRT |
| SEQUOIA VOTING SYSTEMS, INC., | Chapter 11 |
| Debtors. | Jointly Administered under Case No. 10-24238 HRT |

### AFFIDAVIT OF JON S. AHERN

| | | |
|---|---|---|
| STATE OF COLORADO | ) | |
| | ) | ss. |
| CITY & COUNTY OF DENVER | ) | |

I, Jon S. Ahern, hereby depose and state under oath as follows to the best of my knowledge and belief:

1.    Alvarez & Marsal Global Forensic and Dispute Services, LLC ("Alvarez & Marsal") has been retained by the Dominion Defendants ("Dominion") and its counsel to assist with business valuation, accounting, damages, and other financial-related issues in the matter of In re SVS Holdings, Inc., Debtor, in Tom H. Connolly, Chapter 7 Trustee v. Dominion Voting Systems Corporation and Dominion Voting Systems, Inc. and in related bankruptcy proceedings.

2.    I am a Senior Director in the Denver office of Alvarez & Marsal.  I have a Bachelor's degree in Economics from Colorado College, and I am a Certified Public Accountant licensed by the State of Colorado.  I am also a Certified Global Management Accountant.  I have over 20 year of experience analyzing the operations and financial condition of companies in many different industries.  This experience has included reviewing and

analyzing financial statements and accounting records of operating companies, holding companies, and subsidiary companies. I have also analyzed transactions and the related accounting for affiliated entities including between operating and holding companies.

3.    During my more than 20 years of experience analyzing companies and their accounting systems and records, I have encountered different methods for companies' accounting and reporting on parent/subsidiary relationships. Parents and subsidiaries may maintain completely separate accounting systems, but it is common for parents and subsidiaries to use the same accounting system but differentiate accounts and transactions for each using a distinct "company code" that enables the accountants to prepare separate financial reports for each entity. In some instances, only the parent company's financial statements are audited; in other instances, both the parent's and the subsidiaries' financial statements are audited. I have also seen instances where a parent and subsidiary maintain separate financial statements, with no consolidation. Regardless, in order to be compliant with U.S. Generally Accepted Accounting Principles, related party transactions – if not eliminated in consolidated financial reporting – must be disclosed and clearly explained in the financial statements and accompanying notes. In addition, in order for an auditor to express an opinion as to the financial statements of either a parent or a subsidiary, under Generally Accepted Auditing Standards, the auditor must be able to distinguish the accounts and business activity of the parent from those of the subsidiary [See **Exhibit A**].

4.    I have been asked by counsel for Dominion to evaluate accounting and financial aspects of the Trustee's claim that Sequoia Voting Systems, Inc. ("Sequoia") and SVS Holdings, Inc. ("SVS Holdings") are alter ego entities and that substantive consolidation of the two is required to avoid harm to the creditors of the two respective companies. According to the

Trustee's claims, Sequoia and SVS Holdings operated out of the same bank accounts, commingled assets and affairs, did not properly account for intercompany transactions and did not hold themselves out to the public, including creditors, as separate entities.[1]

5.    Based only on the information I have reviewed to date in this matter [See **Exhibit B**][2] including certain documents from the Trustee's production of Sequoia records in early March 2014, it is my opinion that from an accounting and financial standpoint, Sequoia and SVS Holdings maintained separate identities.  Sequoia and SVS Holdings had separate accounting records, prepared separate financial statements, accounted for intercompany receivables and payables, entered into separate contracts and clearly explained each company's distinct identity and purpose in financial statements and agreements.

6.    Sequoia and SVS Holdings maintained separate accounting records and separate financial statements.  For example, in Sequoia's audit report dated January 18, 2010 for the years ending December 31, 2008 and December 31, 2007 [See **Exhibit C**, previously identified as Exhibit 30 to the July 21, 2011 Rule 2004 examination of Kevin Hurst],[3] the auditor noted that the financial statements of Sequoia did not include any accounts or activity of SVS Holdings.  Furthermore, the audit report, the financial statements and the notes to Sequoia's financial statements clearly explained the distinction between Sequoia and SVS Holdings and the various related-party transactions that affected Sequoia, SVS Holdings or both entities.  Though Sequoia's audited financial statements described in detail the various

---

[1] Motion to Substantively Consolidate Debtors' Estates and Motion for Substantive Consolidation <u>Nunc Pro Tunc</u> to June 8, 2010, pages 3-4, ¶14-15.

[2] Exhibit B includes information reviewed in reaching the opinions expressed in this Affidavit.  In early March 2014, I received several disks containing thousands of documents produced by the Trustee, and Exhibit B only includes those documents I selected based on keyword searching for accounting terms including "balance sheet", "income statement", "trial balance", "audit report" and other common accounting-related terms.

[3] Sequoia's auditor issued its audit report on January 18, 2010, which was approximately six months after Dominion's purchase of Sequoia's New York contract on July 15, 2009 and approximately four-and-a-half months prior to Dominion's purchase of Sequoia's remaining assets on June 3, 2010.

transactions involving SVS Holdings, Smartmatic Corporation nka Smartmatic USA Corporation ("Smartmatic") and Sequoia, SVS Holdings' obligations to Smartmatic under the parties' 2007 Stock Purchase Agreement [See Exhibit B to the March 20, 2014 Declaration of Jack Blaine ("Blaine Declaration")] and the 2008 Note Purchase Agreement [See Exhibit F to the Blaine Declaration] were not included as liabilities of Sequoia.

7.    In an audit report dated January 18, 2010, Sequoia's auditor Anton Collins Mitchell LLP ("ACM") offered an opinion on the financial statements of Sequoia.  In the audit report, ACM specifically noted that the accounts of SVS Holdings (and the impact of certain transactions described in the related party transactions disclosures in the notes to the audited financial statements) were not included in Sequoia's financial statements.  Had ACM been unable to distinguish the accounts and business activity of Sequoia from that of SVS Holdings, it would not have been able to offer the opinion expressed in the January 18, 2010 audit report under Generally Accepted Auditing Standards [See **Exhibit A**].[4]

8.    I also reviewed financial statements (unaudited) of SVS Holdings for 2008, 2009 and part of 2010 [See **Exhibit D**, previously identified as Exhibit 31 to the July 21, 2011 Rule 2004 examination of Kevin Hurst] which are separate and distinct from Sequoia's financial statements.  SVS Holdings' financial statements reflect separate accounts that were consistent with SVS Holdings' ownership of Sequoia, SVS Holdings' obligations to Smartmatic, its goodwill related to SVS Holdings' acquisition of Sequoia, its amortization of the goodwill, and SVS Holdings' borrowing from shareholders.  SVS Holdings maintained its financial statements separate from Sequoia's and in a manner consistent with

---

[4] AU Section 150, Generally Accepted Auditing Standards, requires that the auditor obtain a sufficient understanding of the entity subject to audit and that the auditor obtain sufficient appropriate audit evidence to afford a reasonable basis for an opinion on the financial statements.

SVS Holdings' ownership of Sequoia. SVS Holdings' financial statements do not include any accounts or any transactions related to Sequoia's business operations.

9.    In both the financial statements of Sequoia and SVS Holdings, the accounting for relationship and transactions between Sequoia and SVS Holdings is transparent and consistent with the roles and responsibilities of each company. Both entities accounted for their intercompany transactions in their respective financial statements. For example, when SVS Holdings extended a loan to Sequoia, SVS Holdings set up a loan receivable account and Sequoia set up a loan payable account. Further, when Sequoia loaned funds to SVS Holdings to pay the first $7 million to Smartmatic under the 2008 Note Purchase Agreement, each entity recorded the transaction in its financial statements. Furthermore, the Sequoia audit report explains that, since a loan from Sequoia to SVS Holdings was not certain to be repaid, Sequoia accounted for the loan as contra-equity (a reduction in SVS Holdings' equity in its wholly-owned subsidiary, Sequoia).

10.   Sequoia and SVS Holdings entered into separate contracts with third parties and were identified as separate parties when entering into the various agreements. For example, the September 2007 Stock Purchase Agreement clearly defines SVS Holdings as a distinct entity and the purchaser of Sequoia from Smartmatic [See Exhibit B to the Blaine Declaration]. Also, in November 2007, Sequoia and SVS Holdings entered into separate contracts with Smartmatic. Sequoia entered into a November 5, 2007 Distribution Agreement with Smartmatic [See Exhibit D to the Blaine Declaration], and SVS Holdings entered into a November 5, 2007 Transition Services Agreement with Smartmatic [See Exhibit E to the Blaine Declaration]. In addition, the Note Purchase Agreement between

Smartmatic and SVS Holdings (not Sequoia) – clearly defines each party, including SVS Holdings as owner of Sequoia [See Exhibit F to the Blaine Declaration].

11. Based on information I have reviewed to-date in this matter, I have not seen any indication that either Sequoia or SVS Holdings misrepresented its relationship with the other to third parties, including Smartmatic, trade partners, creditors, or any customers.

12. As described above, it is my opinion that from an accounting and financial standpoint, Sequoia and SVS Holdings maintained separate identities. Sequoia and SVS Holdings had separate accounting records, prepared separate financial statements, accounted for intercompany receivables and payables, entered into separate contracts and clearly explained each company's distinct identity and purpose in financial statements and agreements.

FURTHER THE AFFIANT SAYETH NOT.

_____
Jon S. Ahern

The foregoing Affidavit was subscribed and sworn to before me this 21 Day of March, 2014, by Jon S. Ahern.

WITNESS my hand and official seal.

My commission expires: May 3, 2014

DEBRA L. MENAUGH
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20044002420
MY COMMISSION EXPIRES MAY 3, 2014

[SEAL]                          _____
                                Notary Public

# EXHIBIT A

Case:10-24238-TBM   Doc#:202-8   Filed:03/21/14   Entered:03/21/14 16:45:32   Page9 of 63

EXHIBIT A



AICPA - American Institute of Certified Public Accountants
  Auditing Standards (SAS)\Codification
    AU Section 100: Introduction
      AU Section 150: Generally Accepted Auditing Standards

| **Accounting Research Manager Interpretive Guidance:** | Miller GAAS Practice Manual: AU Section 150 - Generally Accepted Auditing Standards ▢ |
| --- | --- |

# AU Section 150: Generally Accepted Auditing Standards

**(Supersedes SAS No. 1, section 150.)**

**Source: SAS No. 95 ▢; SAS No. 98 ▢; SAS No. 102 ▢; SAS No. 105 ▢; SAS No. 113 ▢.**

**Effective for audits of financial statements for periods beginning on or after December 15, 2001, unless otherwise indicated.**

*All rights reserved. For information about the procedure for requesting permission to make copies of any part of this work, please call the AICPA Copyright Permissions Hotline at 201-938-3245. A Permissions Request Form for emailing requests is available at http://www.aicpa.org by clicking on the copyright notice on any page. Otherwise, requests should be written and mailed to the Permissions Department, AICPA, Harborside Financial Center, 201 Plaza Three, Jersey City, NJ 07311–3881.*

**.01** An independent auditor plans, conducts, and reports the results of an audit in accordance with generally accepted auditing standards. Auditing standards provide a measure of audit quality and the objectives to be achieved in an audit. Auditing procedures differ from auditing standards. Auditing procedures are acts that the auditor performs during the course of an audit to comply with auditing standards.

## Auditing Standards

**.02** The general, field work, and reporting standards (the 10 standards) approved and adopted by the membership of the AICPA, as amended by the AICPA Auditing Standards Board (ASB), are as follows:

*General Standards*

1. The auditor must have adequate technical training and proficiency to perform the audit.

2. The auditor must maintain independence in mental attitude in all matters relating to the audit.

Case:10-24238-TBM    Doc#:202-8    Filed:03/21/14    Entered:03/21/14 16:45:32    Page10 of 63

EXHIBIT A

3. The auditor must exercise due professional care in the performance of the audit and the preparation of the report.

*Standards of Field Work*

1. The auditor must adequately plan the work and must properly supervise any assistants.

2. The auditor must obtain a sufficient understanding of the entity and its environment, including its internal control, to assess the risk of material misstatement of the financial statements whether due to error or fraud, and to design the nature, timing, and extent of further audit procedures.

3. The auditor must obtain sufficient appropriate[1] audit evidence by performing audit procedures to afford a reasonable basis for an opinion regarding the financial statements under audit.

> [1] See paragraph .06 of section 326, *Audit Evidence,* for the definition of the term *appropriate.* [Footnote added, effective for audits of financial statements for periods beginning on or after December 15, 2006, by Statement on Auditing Standards (SAS) No. 105.]

*Standards of Reporting*[2]

> [2] The reporting standards apply only when the auditor issues a report. [Footnote added, effective for audits of financial statements for periods beginning on or after December 15, 2006, by SAS No. 113.]

1. The auditor must state in the auditor's report whether the financial statements are presented in accordance with generally accepted accounting principles.[3]

> [3] When an auditor reports on financial statements prepared in accordance with a comprehensive basis of accounting other than generally accepted accounting principles (GAAP), the first standard of reporting is satisfied by stating in the auditor's report that the basis of presentation is a comprehensive basis of accounting other than GAAP and by expressing an opinion (or disclaiming an opinion) on whether the financial statements are presented in conformity with the comprehensive basis of accounting used. [Footnote added, effective for audits of financial statements for periods beginning on or after December 15, 2006, by SAS No. 113.]

2. The auditor must identify in the auditor's report those circumstances in which such principles have not been consistently observed in the current period in relation to the preceding period.

3. When the auditor determines that informative disclosures are not reasonably adequate, the auditor must so state in the auditor's report.

4. The auditor must either express an opinion regarding the financial statements, taken as a whole, or state that an opinion cannot be expressed, in the auditor's report. When the auditor cannot express an overall opinion, the auditor should state the reasons therefor in the auditor's report. In all cases where an auditor's name is associated with financial statements, the auditor should clearly indicate the character of the auditor's work, if any, and the degree of responsibility the auditor is taking, in the auditor's report.

[As amended, effective for audits of financial statements for periods beginning on or after December 15, 2006, by Statement on Auditing Standards (SAS) No. 105. As amended, effective for audits of financial statements for periods beginning on or after December 15, 2006, by SAS No. 113.]

**.03** Rule 202, *Compliance With Standards*, of the AICPA Code of Professional Conduct [ET section 202.01 ⬒], requires an AICPA member who performs an audit (the auditor) to comply with standards promulgated by the ASB.[4] The ASB develops and issues standards in the form of SASs through a due process that includes deliberation in meetings open to the public, public exposure of proposed SASs, and a formal vote. The SASs are codified within the framework of the 10 standards.

> [4] In certain engagements, the auditor also may be subject to other auditing requirements, such as Government Auditing Standards issued by the comptroller general of the United States, or rules and regulations promulgated by the U.S. Securities and Exchange Commission. [Footnote renumbered by the issuance of SAS No. 105, March 2006. Footnote subsequently renumbered by the issuance of SAS No. 113, November 2006.]

**.04** The nature of the 10 standards and the SASs requires the auditor to exercise professional judgment in applying them. Materiality and audit risk also underlie the application of the 10 standards and the SASs, particularly those related to field work and reporting.[5] When, in rare circumstances, the auditor departs from a presumptively mandatory requirement, the auditor must document in the working papers his or her justification for the departure and how the alternative procedures performed in the circumstances were sufficient to achieve the objectives of the presumptively mandatory requirement. [As amended, effective December 2005, by SAS No. 102 ⬒. As amended, effective for audits of financial statements for periods beginning on or after December 15, 2006, by SAS No. 113.]

> [5] See section 312, *Audit Risk and Materiality in Conducting an Audit* ⬒. [Footnote renumbered by the issuance of SAS No. 105, March 2006. Footnote subsequently renumbered by the issuance of SAS No. 113, November 2006.]

## Interpretive Publications

**.05** *Interpretive publications* consist of auditing interpretations of the SASs, appendixes to the SASs,[6] auditing guidance included in AICPA Audit and Accounting Guides, and AICPA auditing Statements of Position.[7] Interpretive publications are not auditing standards. Interpretive publications are recommendations on the application of the SASs in specific circumstances, including engagements for entities in specialized industries. An interpretive publication is issued under the authority of the ASB after all ASB members have been provided an opportunity to consider and comment on whether the proposed interpretive publication is consistent with the SASs. [As amended, effective September 2002, by SAS No. 98.]

> [6] Appendixes to SASs referred to in paragraph .05 of this section do not include previously issued appendixes to original pronouncements that when adopted modified other SASs. [Footnote added, effective September 2002, by SAS No. 98. Footnote renumbered by the issuance of SAS No. 105, March 2006. Footnote subsequently renumbered by the issuance of SAS No. 113, November 2006.]

> [7] Auditing interpretations of the SASs are included in the codified version of the SASs. AICPA Audit and Accounting Guides and auditing Statements of Position are listed in appendix D ⬒. [Footnote renumbered by the issuance of SAS No. 98, September 2002. Footnote subsequently renumbered by the issuance of SAS No. 105, March 2006. Footnote subsequently renumbered by the issuance of SAS No. 113, November 2006.]

**.06** The auditor should be aware of and consider interpretive publications applicable to his or her audit. If the auditor does not apply the auditing guidance included in an applicable interpretive publication, the auditor should be prepared to explain how he or she complied with the SAS provisions addressed by such auditing guidance.

## Other Auditing Publications

**.07** *Other auditing publications* include AICPA auditing publications not referred to previously; auditing articles in the *Journal of Accountancy* and other professional journals; auditing articles in the AICPA *CPA Letter*; continuing professional education programs and other instruction materials, textbooks, guide books, audit programs, and checklists; and other auditing publications from state CPA societies, other organizations, and individuals.[8] Other auditing publications have no authoritative status; however, they may help the auditor understand and apply the SASs.

> [8] The auditor is not expected to be aware of the full body of other auditing publications. [Footnote renumbered by the issuance of SAS No. 98, September 2002. Footnote subsequently renumbered by the

EXHIBIT A

issuance of SAS No. 105, March 2006. Footnote subsequently renumbered by the issuance of SAS No. 113, November 2006.]

**.08** If an auditor applies the auditing guidance included in an other auditing publication, he or she should be satisfied that, in his or her judgment, it is both relevant to the circumstances of the audit, and appropriate. In determining whether an other auditing publication is appropriate, the auditor may wish to consider the degree to which the publication is recognized as being helpful in understanding and applying the SASs and the degree to which the issuer or author is recognized as an authority in auditing matters. Other auditing publications published by the AICPA that have been reviewed by the AICPA Audit and Attest Standards staff are presumed to be appropriate.[9]

[9] Other auditing publications published by the AICPA that have been reviewed by the AICPA Audit and Attest Standards staff are listed in AU appendix F ⬚. [Footnote renumbered by the issuance of SAS No. 98, September 2002. Footnote subsequently renumbered by the issuance of SAS No. 105, March 2006. Footnote subsequently renumbered by the issuance of SAS No. 113, November 2006.]

## Effective Date

**.09** This section is effective for audits of financial statements for periods beginning on or after December 15, 2001.

© 1998 American Institute of Certified Public Accountants, Inc.
© 2014 Wolters Kluwer.  All Rights Reserved.

# **EXHIBIT B**

## Facts & Data Considered

**Legal Filings and Deposition Transcripts**

1. Motion To Substantively Consolidate Debtors' Estates And Motion For Substantive Consolidation Nunc Pro Tunc To June 8, 2010, Dated February 28, 2014.
2. Complaint by Tom H. Connolly, Chapter 7 Trustee filed December 7, 2012.
3. Motion by Dominion Voting Systems Corporation and Dominion Voting Systems, Inc., to Dismiss the Complaint filed June 19, 2013 with Exhibits A through J.
4. Deposition of Jack Blaine taken on July 20, 2011 with deposition exhibits 1-17 and 19-27.
5. Deposition of Kevin Hurst taken on July 21, 2011 with deposition exhibits 28-38.
6. Deposition of Peter McManemy taken on July 22, 2011 with deposition exhibits 39-42.
7. Deposition of John Poulos taken on January 12, 2012 with deposition exhibits 1-22.
8. Deposition of Ian MacVicar taken on January 13, 2012 deposition exhibits 1-23.
9. Declaration of Jack Blaine, dated March 20, 2014, including Exhibits.

**Contracts and Agreements**

10. Agreement between Sequoia Voting Systems, Inc. and Dominion Voting Systems Corp. regarding the New York contract, dated April 27, 2007.  (DH 0000005 - 0000050)
11. Stock Purchase Agreement by and among SVS Holdings, Inc., Sequoia Voting Systems, Inc., and Smartmatic Corp. dated September 18, 2007. (AH0000004 - AH0000067)
12. Unsecured Promissory Note from SVS Holdings, Inc. to Smartmatic Corporation, dated November 5, 2007. (AH0000092 - AH0000108)
13. Transition Services Agreement between SVS Holdings, Inc. and Smartmatic Services Corporation, dated November 5, 2007.  (AH0000109 - AH0000118)
14. Distribution Agreement between Smartmatic International Corporation and Sequoia Voting Systems, Inc., dated November 5, 2007.  (AH0000068 - AH0000091)
15. Note Purchase Agreement by and among Smartmatic Corp., SVS Holdings, Inc., and the US Stockholders dated May 28, 2008.  (DH 0000178 - 0000232)
16. Asset Purchase Agreement between Dominion Voting Systems Corp. and Sequoia Voting Systems, Inc. for NY Contract dated July 15, 2009 (with Amendments 1-2). (DH 0000282 - 0000321 and DH 0000384 - 0000391)
17. Asset Purchase Agreement between Sequoia Voting Systems, Inc. and ProDocumentSolutions, Inc. dated October 1, 2009.  (DH 0000322 - 0000383)
18. Asset Purchase Agreement between Dominion Voting Systems Corp. and Sequoia Voting Systems, Inc. dated June 3, 2010.  (DH 0000414 - 0000467)
19. New York Contract - Contract Award Notification.  (DH 0002484 - 0002538)

**Bates Numbered Documents**

| Begin Bates | End Bates |
|---|---|
| 20. DH 0001078 | DH 0001116 |
| 21. DH 0001117 | DH 0001121 |
| 22. LRR05026 | LRR05033 |
| 23. LRR05041 | LRR05048 |
| 24. LRR05049 | LRR05084 |
| 25. LRR05093 | LRR05108 |
| 26. LRR05153 | LRR05169 |
| 27. LRR05196 | LRR05203 |
| 28. LRR05216 | LRR05254 |
| 29. LRR05425 | LRR05586 |
| 30. LRR05610 | LRR05618 |

## Facts & Data Considered

**Bates Numbered Documents**

| Begin Bates | End Bates |
|---|---|
| 31. LRR06243 | LRR06689 |
| 32. LRR06946 | LRR06959 |
| 33. LRR07095 | LRR07131 |
| 34. LRR07187 | LRR07205 |
| 35. LRR07426 | LRR07432 |
| 36. LRR07433 | LRR07434 |
| 37. LRR07435 | LRR07438 |
| 38. LRR07459 | LRR07464 |
| 39. LRR07465 | LRR07472 |
| 40. LRR07473 | LRR07476 |
| 41. LRR07477 | LRR07480 |
| 42. LRR07484 | LRR07811 |
| 43. LRR07812 | LRR08131 |
| 44. LRR12000 | LRR12009 |
| 45. LRR12068 | LRR12071 |
| 46. LRR12073 | LRR12076 |
| 47. LRR12083 | LRR12086 |
| 48. LRR12089 | LRR12090 |
| 49. LRR12096 | LRR12098 |
| 50. LRR12099 | LRR12102 |
| 51. LRR12103 | LRR12105 |
| 52. LRR12106 | LRR12107 |
| 53. LRR12108 | LRR12109 |
| 54. LRR12195 | LRR12201 |
| 55. LRR12202 | LRR12214 |
| 56. LRR12328 | LRR12333 |
| 57. LRR12336 | LRR12338 |
| 58. LRR12351 | LRR12358 |
| 59. LRR12541 | LRR12544 |
| 60. LRR12545 | LRR12548 |
| 61. LRR12549 | LRR12556 |
| 62. LRR13589 | LRR13594 |
| 63. LRR13595 | LRR13607 |
| 64. LRR13608 | LRR13610 |
| 65. LRR13623 | LRR13659 |
| 66. LRR13693 | LRR13704 |
| 67. LRR13721 | LRR13725 |
| 68. LRR14280 | LRR14286 |
| 69. LRR14860 | LRR15045 |
| 70. LRR15046 | LRR15220 |
| 71. LRR15221 | LRR15956 |
| 72. LRR16262 | LRR16266 |
| 73. LRR17453 | LRR17462 |
| 74. LRR17519 | LRR17523 |
| 75. LRR17827 | LRR17836 |

## Facts & Data Considered

**Bates Numbered Documents**

|  | **Begin Bates** | **End Bates** |
|---|---|---|
| 76. | LRR17964 | LRR17976 |

**Other**

77. Valuation as of May 28, 2008. Allocation of the Purchase Price of Sequoia Voting Systems, Inc. Acquired by SVS Holdings, Inc. as of May 28, 2008.  (DH0000119 - DH0000177)

78. Accounting Research Manager: AU Section 150: Generally Accepted Auditing Standards

# **EXHIBIT C**

EXHIBIT C

# 30

DH 0001077

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Financial Statements
### Years Ended December 31, 2008 and 2007




Anton Collins Mitchell LLP



DH 0001078

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Financial Statements
### Years Ended December 31, 2008 and 2007

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Contents

| | |
|---|---|
| Independent Auditors' Report | 1 |
| Balance Sheets | 2 |
| Statements of Operations | 3 |
| Statement of Stockholder's Equity (Deficit) | 4 |
| Statements of Cash Flows | 5 |
| Summary of Accounting Policies | 6 – 13 |
| Notes to Financial Statements | 14 – 31 |

DH 0001080

EXHIBIT C



## Independent Auditors' Report

Board of Directors
Sequoia Voting Systems, Inc.
Denver, Colorado

We have audited the accompanying balance sheets of Sequoia Voting Systems, Inc. (the "Company") as of December 31, 2008 and 2007 and the related statements of operations, stockholder's equity (deficit), and cash flows for the years then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

As described in the summary of accounting policies, the financial statements do not include any of the accounts of the Company's parent, SVS Holdings, Inc. As such, accounting for the acquisitions described in Notes 2 and 3, including liabilities and commitments, is not included in these financial statements. As of December 31, 2008, SVS Holdings, Inc. had future payments described in Note 3 to the financial statements amounting to $9.0 million of which $1.0 million was payable in 2009 and $3.0 million payable in 2010. The satisfaction of liabilities of SVS Holdings, Inc. is dependent on the Company's cash flows from operations.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Sequoia Voting Systems, Inc. at December 31, 2008 and 2007, and the results of its operations and its cash flows for the years then ended in conformity with accounting principles generally accepted in the United States of America.

The accompanying financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 1 to the financial statements, the Company has suffered net losses of $6,155,925 and $32,578,035, which included impairment expense of $929,000 and $12,687,789 for the years ended December 31, 2008 and 2007, respectively, and at December 31, 2008 has stockholder's deficit of $11,529,018. These conditions raise substantial doubt about the Company's ability to continue as a going concern. Management's plans in regard to these matters are also described in Note 1. The financial statements do not include any adjustments that might result from the outcome of this uncertainty.

*Anton Collins Mitchell LLP*

Denver, Colorado
January 18, 2010

Accountants & Consultants

17th & Grant Building • 303 East 17th Avenue, Suite 600 • Denver, Colorado 80203
303.830.1120 • Fax 303.830.8130



DH 0001081

EXHIBIT C

| December 31, | 2008 | 2007 |
|---|---|---|
| **Assets** | | |
| | | |
| **Current assets:** | | |
| Cash and cash equivalents | $ **3,440,179** | $ 8,256,505 |
| Accounts receivable, net | **9,354,608** | 5,831,698 |
| State income tax receivable | **1,456,813** | 1,276,992 |
| Inventories, net | **5,615,202** | 13,172,392 |
| Capitalized cost of goods, current portion | **10,197,097** | - |
| Deposits, current portion | **500,000** | - |
| Prepaid expenses | **104,884** | 936,938 |
| | | |
| Total current assets | **30,668,783** | 29,474,525 |
| | | |
| **Non-current assets:** | | |
| Property and equipment, net | **816,630** | 782,531 |
| Deposits, less current portion | **573,685** | - |
| Capitalized cost of goods, less current portion | **39,364,394** | - |
| Intangible assets, net | **1,090,000** | 2,135,000 |
| | | |
| Total non-current assets | **41,844,709** | 2,917,531 |
| | | |
| | | |
| Total assets | $ **72,513,492** | $ 32,392,056 |

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Balance Sheets

| December 31, | 2008 | 2007 |
|---|---:|---:|
| **Liabilities and Stockholder's Equity (Deficit)** | | |
| **Current liabilities:** | | |
| Accounts payable | $ 7,112,175 | $ 7,692,447 |
| Other payables and accrued liabilities | 3,816,807 | 3,805,310 |
| Capital lease, current portion | 11,764 | 10,423 |
| Vendor note payable | 78,848 | - |
| Due to related parties | 250,820 | 1,261,650 |
| Deferred revenue, current portion | 17,501,527 | 12,994,918 |
| Customer deposits | - | 2,389,450 |
| Total current liabilities | 28,771,941 | 28,154,198 |
| | | |
| **Long-term liabilities:** | | |
| Deferred income tax liability | 423,000 | 787,000 |
| Capital lease, less current portion | 37,081 | 46,014 |
| Due to SVS Holdings, Inc. | 1,407,433 | - |
| Deferred revenue, less current portion | 53,403,055 | 1,777,937 |
| Total long-term liabilities | 55,270,569 | 2,610,951 |
| Total liabilities | 84,042,510 | 30,765,149 |
| **Commitments and contingencies** | | |
| **Stockholder's equity (deficit):** | | |
| Common stock, $0.001 par value; 2,000 shares authorized, | | |
| 1,000 shares issued and outstanding | 1 | 1 |
| Additional paid-in capital | 15,927,953 | 15,927,953 |
| Due from SVS Holdings, Inc. | (7,222,676) | (222,676) |
| Accumulated deficit | (20,234,296) | (14,078,371) |
| Total stockholder's equity (deficit) | (11,529,018) | 1,626,907 |
| **Total liabilities and stockholder's equity (deficit)** | $ 72,513,492 | $ 32,392,056 |

*See accompanying independent auditors' report, summary
of accounting policies and notes to financial statements.*

2

DH 0001083

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Statements of Operations

| Year Ended December 31, | 2008 | 2007 |
|---|---:|---:|
| **Sales, net of discounts** | **$ 63,027,432** | $ 38,481,476 |
| Cost of sales | 45,204,280 | 27,184,371 |
| Gross profit | 17,823,152 | 11,297,105 |
| **Operating expenses:** | | |
| Selling, general, and administrative expenses | 22,818,128 | 27,299,541 |
| Impairment expense | 929,000 | 12,687,789 |
| Depreciation and amortization | 521,463 | 587,678 |
| Total operating expenses | 24,268,591 | 40,575,008 |
| **Operating loss** | **(6,445,439)** | (29,277,903) |
| Other income (expense): | | |
| Interest income | 49,278 | 296,412 |
| Interest expense | (403,267) | (231,563) |
| Other income | 279,503 | 122,019 |
| Total other income (expense) | (74,486) | 186,868 |
| **Net loss before income taxes** | **(6,519,925)** | (29,091,035) |
| **Income tax (benefit) expense** | **(364,000)** | 3,487,000 |
| Net loss | **$ (6,155,925)** | $ (32,578,035) |

*See accompanying independent auditors' report, summary
of accounting policies and notes to financial statements.*

3

# Sequoia Voting Systems, Inc.

## Statement of Stockholder's Equity (Deficit)

| | Common Stock | | Additional Paid-In Capital | Due from SVS Holdings, Inc. | Retained Earnings/ (Accumulated Deficit) | Total |
|---|---|---|---|---|---|---|
| | Shares | Amount | | | | |
| **Balances, January 1, 2007, as restated (Note 11)** | 1,000 | $1 | $15,927,953 | $ - | $ 20,005,708 | $ 35,933,662 |
| Distributions | - | - | - | - | (1,506,044) | (1,506,044) |
| Net loss for the year | - | - | - | - | (32,578,035) | (32,578,035) |
| Due from SVS Holdings, Inc. | - | - | - | (222,676) | - | (222,676) |
| **Balances, December 31, 2007** | 1,000 | 1 | 15,927,953 | (222,676) | (14,078,371) | 1,626,907 |
| Net loss for the year | - | - | - | - | (6,155,925) | (6,155,925) |
| Due from SVS Holdings, Inc. | - | - | - | (7,000,000) | - | (7,000,000) |
| **Balances, December 31, 2008** | 1,000 | $1 | $15,927,953 | $ (7,222,676) | $ (20,234,296) | $ (11,529,018) |

*See accompanying independent auditors' report, summary of accounting policies and notes to financial statements.*

4

DH 0001085

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Statements of Cash Flows

| *Year Ended December 31,* | 2008 | 2007 |
|---|---:|---:|
| **Cash flows from operating activities:** | | |
| Net loss | $ (6,155,925) | $ (32,578,035) |
| Adjustments to reconcile net loss to net cash provided by (used in) operating activities: | | |
| Depreciation and amortization | 521,463 | 587,678 |
| Change in allowance for doubtful accounts | 229,500 | 22,000 |
| Net realizable value adjustment to inventory | 327,871 | 900,000 |
| Deferred taxes | (364,000) | 3,487,000 |
| Impairment of intangibles | 929,000 | 12,687,789 |
| Changes in operating assets and liabilities: | | |
| Accounts receivable | (3,752,410) | 36,810,890 |
| State income tax receivable | (179,821) | (1,276,992) |
| Inventories | 7,229,319 | 770,404 |
| Prepaid expenses | 832,054 | (875,227) |
| Deposits | (1,073,685) | - |
| Capitalized cost of goods | (49,561,491) | - |
| Accounts payable | (580,272) | 3,823,250 |
| Due to related parties, net | (1,010,830) | (28,980,235) |
| Other payables, accrued liabilities and customer deposits | (2,377,953) | (3,362,444) |
| Deferred revenue | 56,131,727 | 198,334 |
| Net cash provided by (used in) operating activities | 1,144,547 | (7,785,588) |
| **Cash flows from investing activities:** | | |
| Purchases of property and equipment | (439,562) | (663,799) |
| Net cash used in investing activities | (439,562) | (663,799) |
| **Cash flows from financing activities:** | | |
| Repayment of capital lease obligation | (7,592) | (6,274) |
| Proceeds from vendor note payable | 2,000,000 | - |
| Repayment of vendor note payable | (1,921,152) | - |
| Cash advances to SVS Holdings, Inc. | (7,000,000) | (222,676) |
| Borrowings from SVS Holdings, Inc. | 1,407,433 | - |
| Distribution to Smartmatic Corporation | - | (1,506,044) |
| Net cash used in financing activities | (5,521,311) | (1,734,994) |
| Decrease in cash and cash equivalents | (4,816,326) | (10,184,381) |
| Cash and cash equivalents, beginning of year | 8,256,505 | 18,440,886 |
| Cash and cash equivalents, end of year | $ 3,440,179 | $ 8,256,505 |
| **Supplemental disclosure of cash paid for:** | | |
| Interest | $ 371,251 | $ 1,464,286 |
| Income taxes | - | 3,399,100 |
| Acquisitions of property and equipment through capital lease transactions | - | 62,711 |

*See accompanying independent auditors' report, summary*
*of accounting policies and notes to financial statements.*

5

DH 0001086

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Summary of Accounting Policies

*Organization and Business*

Sequoia Voting Systems, Inc. (a wholly-owned subsidiary of SVS Holdings, Inc.) (the "Company") was incorporated under the laws of the State of Delaware on December 20, 1990. The Company provides electronic voting systems in the United States and offers election technology, services, and support to state and local governments, including precinct-based optical scan ballot readers, high-speed central count optical scan ballot readers, ballot layout and printing services, and full-face and paginating electronic voting equipment.

On March 9, 2005, Smartmatic International Corporation acquired all outstanding common stock of the Company. Smartmatic International subsequently merged with Smartmatic Corporation.

Effective September 13, 2007, management of the Company formed SVS Holdings, Inc. ("SVS Holdings") to facilitate a buyout of the Company. On November 5, 2007, SVS Holdings acquired all outstanding common stock of the Company from Smartmatic Corporation. See Notes 2 and 3 to the financial statements for a full description of this transaction.

*Basis of Presentation*

The accompanying financial statements include the accounts of the Company. The accompanying financial statements do not include any of the accounts of SVS Holdings, its parent company.

*Use of Estimates*

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America ("GAAP") requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosures of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

*Significant Customers*

All of the Company's sales are derived from contracts with governmental agencies in the states of the United States and their political subdivisions. If the Company is not successful in obtaining new contracts, it could have a material adverse effect on the Company. In addition, the accounts receivable are comprised of amounts due from these governmental agencies.

6

DH 0001087

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Summary of Accounting Policies

For the year ended December 31, 2008, approximately 15% and 12% of the Company's revenues were derived from contracts with two governmental agencies. At December 31, 2008, approximately 55% of the Company's accounts receivable was from one of the governmental agencies noted above.

For the year ended December 31, 2007, approximately 32% of the Company's revenues were derived from contracts with one governmental agency. At December 31, 2007, approximately 35% of the Company's accounts receivable was from this same customer. Approximately 12% of the Company's revenue was derived from a contract with another government agency. At December 31, 2007, there was no accounts receivable from this customer.

### Cash and Cash Equivalents

For purposes of the statement of cash flows, the Company considers all highly liquid instruments purchased with an original maturity of three months or less and certificates of deposit to be cash equivalents.

### Accounts Receivable, net

Accounts receivable are stated at the invoice amount. Accounts receivable are uncollateralized customer obligations that generally require payment within thirty days from the invoice date. Payments of accounts receivable are applied to the specific invoices identified on the customer's remittance advice or, if unspecified, to the earliest unpaid invoices.

### Inventories

Inventories are carried at the lower of cost or market value (estimated net realizable value). Cost is determined using the first-in-first-out method. Substantially all of the work on the completion of the inventory is done through outside independent contractors and such costs are included in inventory costs. Consideration is given to obsolescence, excessive levels and other factors in evaluating net realizable values. Markdowns to estimated net realizable value establish a new cost basis for inventory. Subsequent changes in facts or circumstances do not result in the restoration of previously recorded markdowns or an increase in that newly established cost basis.

7

DH 0001088

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Summary of Accounting Policies

*Property and Equipment, net*

Property and equipment are stated at cost. Depreciation of property and equipment is provided using the straight-line method over the following estimated useful lives:

| | |
|---|---|
| Furniture, fixtures and other | 3 to 10 years |
| Computers and computer equipment | 3 to 4 years |
| Vehicle | 3 to 5 years |
| Leasehold improvements | Lesser of 10 years or term of lease |

Maintenance and repairs are charged to operations when incurred. When fixed assets are sold or otherwise disposed of, the asset account and related accumulated depreciation account are relieved, and any gain or loss is included in operations.

*Revenue Recognition*

The Company records revenue when it is realized, or realizable and earned. The Company considers revenue to be realized or realizable and earned when the following revenue recognition requirements are met: persuasive evidence of an arrangement exists, which generally is a customer contract or purchase order; the products or services have been accepted by the customer via delivery or installation acceptance; the sales price is fixed or determinable within the contract; and collectability is probable.

For product sales, the Company determines that the earnings process is complete when title, risk of loss and the right to use equipment has transferred to the customer. This occurs upon customer acceptance, which is generally upon completion of the installation of all of the items at a job site and the Company demonstrates that the items are in operable condition. Where items are contractually only delivered to a customer, revenue recognition of these items is upon shipment or delivery to a customer location depending on the terms in the contract. Invoices for products delivered that have not been recognized as revenue are reported as deferred revenue. Deferred revenues that extend beyond one year are classified as non-current deferred revenues. Sales tax amounts collected from customers are recorded on a net basis.

Election systems revenue consists of election equipment, software, training, support, installation and maintenance. The election systems contracts contain multiple deliverable elements and custom terms and conditions. Included within the election equipment is software, which operates the election equipment. The related software is considered more than incidental to the equipment as a whole. The Company recognizes revenue for delivered elements only when the fair value of undelivered elements are known, uncertainties regarding customer acceptance are resolved and there are no customer-negotiated refund or return rights affecting the revenue recognized for delivered elements. The Company determines fair

8

DH 0001089

# Sequoia Voting Systems, Inc.

## Summary of Accounting Policies

value of deliverables within a multiple-element arrangement based on the price charged when each element is sold separately. Some contracts may contain discounts and, as such, revenue is recognized using the residual value method of allocation of revenue to the product and service components of contracts.

In addition to the software included within the election equipment, the Company offers a software product which creates the ballots, manages the jurisdiction election cycle workflow and the voting machines before and on Election Day, and provides for tabulation, results reporting, and post-election audits.

Included with the software is maintenance and support. The software license is term limited, and the term of the maintenance and support runs concurrent with the license (generally one year). Fair value for each element in a license does not exist since they are not sold separately, and consequently, the bundled revenue is recognized ratably over the length of the agreement.

Generally, revenues from extended warranty, maintenance fees, license fees and election support are deferred and recognized over the term of the agreements on a straight-line basis.

Trade-in rights are occasionally granted to customers to trade in equipment in connection with subsequent purchases. The Company estimates the value of the trade-in right and reduces the revenue of the initial sale. This amount is recognized at the earlier of the exercise of the trade-in right or the expiration of the trade-in right.

### Cost of Sales

Cost of sales consist of the purchase price of the products and costs incurred by the Company to deliver the goods to the customers, which include, but are not limited to, cost of materials, salaries and wages, and other direct costs. Cost of sales includes an allocation of salaries and other direct costs based on support services rendered.

### Deferred Revenue and Capitalized Cost of Goods

Revenue for delivered product is deferred until customer acceptance, which is generally upon completion of the installation of all of the items at a job site and the Company demonstrates that the items are in operable condition. Consequently, the related cost pertaining to these products is deferred and included in work in progress inventory and recognized in cost of sales upon recognition of the revenue.

Revenue for certain election systems with multiple deliverable elements is deferred and amortized on a straight-line basis over the economic life of the agreement, which is generally five years. Consequently,

9

DH 0001090

# Sequoia Voting Systems, Inc.

## Summary of Accounting Policies

the cost related to these arrangements is included on the balance sheet as capitalized cost of goods and is amortized over the economic life of the agreement. Deferred revenues and capitalized cost of goods that extend beyond one year are classified as non-current.

### Research and Development Costs

Research and development costs are expensed as incurred and typically consist of salaries and other direct costs. There were no research and development costs for the years ended December 31, 2008 and 2007.

### Advertising

The Company expenses advertising costs at the time the costs are incurred. Advertising expense was not material for the years ended December 31, 2008 and 2007.

### Impairment of Long-Lived Assets

Long-lived assets are reviewed for impairment whenever events or changes in circumstances indicate that the carrying amount may not be recoverable. If the expected future cash flow from the use of the asset and its eventual disposition is less than the carrying amount of the asset, an impairment loss is recognized and measured using the asset's fair value.

### Due from SVS Holdings, Inc.

During 2008 and 2007, the Company made advances to SVS Holdings. This related party balance represents amounts paid by the Company on behalf of SVS Holdings for the transactions described in Notes 2 and 3. In 2008, the Company determined that the repayment of the amounts advanced to SVS Holdings is not certain and accordingly the balance has been reported as contra-equity in the accompanying 2008 and 2007 balance sheets.

### Due to SVS Holdings, Inc.

During 2008, the Company received advances from SVS Holdings. This related party balance represents amounts paid by SVS Holdings to fund Company operations during 2008. See Note 14.

### Income Taxes

The provision for income taxes includes a current and deferred provision. The current provision for income taxes represents estimated amounts payable on tax return filings each year. Deferred tax assets

10

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Summary of Accounting Policies

and liabilities are recorded for the estimated future tax effects of temporary differences between the tax bases of assets and liabilities and amounts reported in the accompanying balance sheets, and for tax credit carry forwards. The change in deferred tax assets and liabilities for the period represents the deferred tax provision or benefit for the period. Effects of changes in enacted tax laws on deferred tax assets and liabilities are reflected as an adjustment to the tax provision or benefit in the period of enactment.

Management has elected to defer the application of FASB Interpretation No. 48, *Accounting for Uncertainty in Income Taxes* ("FIN 48"). The Company will continue to evaluate uncertain tax positions by utilizing SFAS No. 5, *Accounting for Contingencies,* until it adopts FIN 48.

*Goodwill and Other Intangible Assets*

Intangible assets consist primarily of trademarks and trade names, technology and software. The useful lives of trademarks and trade names were determined to be indefinite and, therefore, these assets are not being amortized. Technology and software are being amortized over their estimated useful lives of approximately three years.

Goodwill represented the excess of costs over the fair value of identifiable net assets of businesses acquired. Goodwill and intangible assets acquired in a business combination determined to have an indefinite useful life are not amortized, but instead are tested for impairment at least annually. Intangible assets with estimable useful lives are amortized over their respective estimated useful lives to their residual values, and reviewed for impairment whenever events or changes in circumstances indicate that the carrying amount may not be recoverable.

Goodwill and indefinite-lived intangible impairment tests are performed on an annual basis or when events or circumstances dictate. In the goodwill impairment tests, the fair values of each reporting unit, or segment, is compared to the carrying amount of that reporting unit in order to determine if impairment is indicated. If so, the implied fair value of the reporting unit's goodwill is compared to its carrying amount and the impairment loss is measured by the excess of the carrying value over fair value. In indefinite-lived intangible asset impairment tests, the fair value of each indefinite-lived intangible asset is compared to the carrying amount of that intangible asset in order to determine if impairment is indicated. If so, the impairment loss is measured by the excess of the carrying value over fair value.

During the year ended December 31, 2008, the Company recognized impairment of indefinite-lived intangible assets in the amount of approximately $929,000, which is included in operating loss.

During the year ended December 31, 2007, the Company recognized impairment of goodwill and indefinite-lived intangible assets in the amounts of approximately $10.5 million and $2.2 million, respectively, which is included in operating loss. See Note 7.

11

# Sequoia Voting Systems, Inc.

## Summary of Accounting Policies

*Warranties*

The Company sells the majority of its products to customers along with repair or replacement warranties for a full year from the date of purchase. The Company's products are manufactured by third parties that also provide repair or replacement warranties to the Company. The Company determines its estimated liability for warranty claims based on the Company's experience of the amount of the claims actually made, which is net of costs expected to be assumed by the third party manufacturers. The Company also sells extended warranty contracts beyond the normal manufacturers' warranty period, usually with terms of coverage (including the manufacturers' warranty period) between 12 and 60 months. For extended warranty programs, the Company defers revenue in short-term and long-term liability accounts (based on the extended warranty contractual period) for amounts invoiced to customers for these programs and recognizes the revenue ratably over the contractual period. Costs associated with extended warranty programs are expensed as incurred. Should actual product failure rates, material usage or service delivery costs differ from the Company's estimates, revisions to the estimated warranty liability may be required.

*Concentration of Credit Risk*

The Company's financial instruments exposed to concentrations of credit risk consist primarily of cash and cash equivalents and accounts receivable. The Company maintains its operating cash in a commercial bank. Balances on deposit are insured by the Federal Deposit Insurance Corporation ("FDIC") up to specified limits. The Company had balances in excess of FDIC limits at December 31, 2008, which were uninsured. The Company believes that it is not exposed to any significant credit risk on these cash accounts.

Receivables are recorded when invoiced, are typically unsecured and are derived from transactions with and from customers located primarily in the United States. The Company performs ongoing credit evaluations of its customers and maintains an allowance for potential credit losses. Receivables are written off to the allowance when they are determined to be uncollectible. The allowance for doubtful accounts is estimated based on the Company's historical losses, the existing economic conditions and the financial stability of its customers. At December 31, 2008 and 2007, the allowance for doubtful accounts was $679,500 and $450,000, respectively. Based on current customer credit information, management believes the allowance for doubtful accounts is adequate. However, actual write-offs may exceed the recorded allowance.

*Fair Value of Financial Instruments*

The Company adopted SFAS No. 157, *Fair Value Measurements* ("SFAS 157") and SFAS No. 159, *The Fair Value Option for Financial Assets and Financial Liabilities* ("SFAS 159") during 2008, resulting in no impact on its financial position, results from operations or cash flows. The Company adopted SFAS

**12**

DH 0001093

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Summary of Accounting Policies

157 for those non-recurring measurements for non-financial assets and non-financial liabilities subject to the partial deferral in FASB Staff Position No. 157-2, *Partial Deferral of the Effective Date of Statement 157*, ("FSP 157-2"). FSP 157-2 deferred the effective date of SFAS 157 for all non-financial assets and non-financial liabilities to fiscal years beginning after November 15, 2008. Among other requirements, SFAS 157 defines fair value, establishes a framework for measuring fair value and expands disclosure about the use of fair value to measure assets and liabilities. SFAS 159 permits entities to choose, at specified election dates, to measure eligible items at fair value (the "fair value option") and requires an entity to report in earnings at each subsequent reporting date those unrealized gains and losses on items for which the fair value option has been elected. Upfront costs and fees related to items for which the fair value option is elected shall be recognized in earnings as incurred and deferred. Upon adoption of SFAS 159, the Company elected not to measure any eligible items at fair value.

### Concentration in Equipment Suppliers and Exclusive Distribution Rights

The Company purchases trademarked equipment from Smartmatic International Corporation ("International"), a related party. The Company had exclusive rights to the distribution of this equipment prior to the business combination discussed in Note 2. The Company entered into a distribution agreement with International on the change in control date of November 5, 2007 which grants the Company exclusive distribution rights of International's equipment throughout the United States and its territories. This agreement is for the period of four years and distribution rights will remain exclusive provided the Company purchases specified quantities of identified product lines in 2008 and/or 2009. International, at its own discretion, may directly or indirectly make these product lines available to other distributors, for distribution within the United States and its territories, if these agreed upon quantities are not met. Sales of these product lines approximated $9.0 million for the year ended December 31, 2007. There were no new sales of these product lines during the year ended December 31, 2008.

### Reclassification

Certain amounts in the 2007 financial statements have been reclassified to conform to the 2008 presentations.

DH 0001094

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

### 1. GOING CONCERN AND MANAGEMENT'S PLAN

The Company has incurred net losses of $6,155,925 and $32,578,035 which included impairment expense of $929,000 and $12,687,789, for the years ended December 31, 2008 and 2007, respectively, and at December 31, 2008 has a shareholder's deficit of $11,529,018.

As described in the summary of accounting policies, the accompanying financial statements do not include any of the accounts of SVS Holdings. As such, accounting for the acquisitions described in Notes 2 and 3, including related liabilities and commitments, is not included in these financial statements. As of December 31, 2008, SVS Holdings had future payments described in Note 3 amounting to $9.0 million of which $1.0 million was due and paid in 2009 and $3.0 million payable in 2010. The satisfaction of those liabilities is dependent on the Company's cash flows from operations or additional funding through a bank credit facility, private debt or equity.

The Company's continued existence is dependent upon its ability to generate cash from continuing operations and collect accounts receivable. Subsequent to May 31, 2009, the Company has taken the following actions which it believes will address its current financial situation: (a) the Company implemented a cost reduction program that reduced operating expenses and (b) the Company has negotiated further credit terms with its vendors. Management believes these factors will contribute towards achieving profitability. If necessary, the Company plans to procure funding through a bank credit facility, private debt or equity. There can be no assurance to the availability of such financing at terms acceptable to the Company. The financial statements do not include any adjustments to reflect the possible future effects on the recoverability and classifications of assets or the amounts and classifications of liabilities that may result if the Company is not able to continue as a going concern.

### 2. COMPANY STOCK PURCHASE AGREEMENT

In accordance with a stock purchase agreement dated September 18, 2007, SVS Holdings acquired the outstanding stock of the Company from Smartmatic Corporation effective November 5, 2007. The total consideration paid in this transaction had three components:

A. A convertible unsecured promissory note (the "Note") from SVS Holdings, Inc. to Smartmatic Corporation for $2.0 million, payable over two years with interest of 6.0% until November 15, 2008 and 9.0% until paid in full. The Note was convertible if and only if it is sold to a third party. Upon receipt of an offer to purchase the Note by a third party, SVS Holdings, Inc. and its shareholders had the right of first refusal to purchase the Note on the terms and consideration provided by the third party's offer. In 2008, SVS Holdings, Inc. exercised its right of first refusal to purchase the Note. See Note 3.

14

DH 0001095

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

**2. COMPANY STOCK PURCHASE AGREEMENT (CONTINUED)**

B. For calendar years 2008 through 2012, unless there has been a liquidity event, as defined in the stock purchase agreement, the Company's net after tax profits would have been allocated as follows: a) the first $2.5 million to Smartmatic Corporation, b) the next $2.2 million to SVS Holdings or the Company, c) the next $2.5 million to Smartmatic Corporation, d) the next $2.2 million to SVS Holdings or the Company, and e) the remaining is shared by Smartmatic Corporation and the Company 53.0% and 47.0%, respectively. Due to the sale of the Note described in Note 3, Smartmatic Corporation's rights to these earn-outs terminated.

C. In the case of a liquidity event, as defined in the stock purchase agreement, net proceeds would have been allocated: a) first to Smartmatic Corporation in an amount equal to any unpaid principal or interest remaining under the Note, b) next to SVS Holdings in an amount equal to the aggregate amounts then paid to Smartmatic Corporation for the Note and any earnout payments, up to a maximum of $16 million, and c) finally the remaining proceeds are shared between Smartmatic Corporation and the initial SVS Holding's shareholders with Smartmatic Corporation receiving 80.0% of any such additional proceeds through December 2008. Thereafter, Smartmatic Corporation's proportion of the shared proceeds decreases every six months until the last six month period (January 1, 2012 through June 30, 2012) when its proportion totals 35.0%. Due to the sale of the Note described in Note 3, Smartmatic Corporations' rights to this liquidity event provision terminated.

In connection with this transaction, the Company paid certain legal and related costs on behalf of its former parent, Smartmatic Corporation, during the year ended December 31, 2007. These payments amounting to approximately $1.5 million are reported as distributions on the statement of stockholder's equity.

The Company did not push-down the effects of this transaction to its separately prepared financial statements. Therefore, the Company did not adjust its financial statements to give effect to its parent company's acquisition price or assumption of debt related to this transaction.

DH 0001096

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

### 3. NOTE PURCHASE AGREEMENT

In February 2008, Smartmatic Corporation received a letter of intent setting forth a bona fide written offer to purchase the Note (see Note 2). SVS Holdings, Inc. exercised its right of first refusal to purchase the Note. As such, Smartmatic Corporation and SVS Holdings, Inc. entered into a Note purchase agreement effective May 28, 2008. Total consideration paid for the Note had four components:

A. Closing date payments totaling $7.0 million;

B. Annual minimum payments aggregating $9.0 million due in unequal installments for each of the fiscal years ending 2008 through 2011, payable on February 15 of the subsequent year. Minimum payments are to be $1.0 million for the year ended December 31, 2008, and $3.0 million, $3.0 million and $2.0 million for the years ended December 31, 2009 through 2011.

C. Annual earnout payments based on 53.0% of net after-tax income less the minimum payment made for each fiscal year ended 2008 through 2012, in the event that 53.0% of net after-tax income exceeds the minimum payment for that fiscal year; and

D. A liquidity event earnout payment based on a percent of the sale proceeds.

In connection with this transaction, the Company provided the closing date payment amount of $7.0 million to SVS Holdings, Inc. The repayment of this amount advanced to SVS Holdings is not certain and accordingly the balance has been reported as contra-equity in the accompanying balance sheets.

The Company did not push-down the effects of this transaction to its separately prepared financial statements. Therefore, the Company did not adjust its financial statements to give effect to its parent company's acquisition price or liabilities of SVS Holdings of $9.0 million related to this transaction.

16

DH 0001097

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

**4. ACCOUNTS RECEIVABLE, NET**

Accounts receivable, net consisted of the following:

| December 31, | 2008 | 2007 |
|---|---:|---:|
| Trade receivables | $ 9,521,038 | $ 5,993,378 |
| Unbilled trade receivables | 367,514 | - |
| Other receivables | 145,556 | 288,320 |
| | 10,034,108 | 6,281,698 |
| Less: Allowance for doubtful accounts | (679,500) | (450,000) |
| | $ 9,354,608 | $ 5,831,698 |

On April 28, 2008, the Company entered into a factoring and security agreement with Benefactor Funding Corp. whereby, the Company may factor a portion of its outstanding trade accounts receivables. In accordance with the terms of the agreement, Benefactor Funding Corp. receives a commission on each accepted receivable calculated at 1.5% of the outstanding balance. Benefactor is also entitled to a fee that is calculated and earned daily at a per annum rate equal to Prime plus 3.0%. The interest is computed on a basis of a 360 day year, in the form of simple interest. Benefactor Funding Corp. retains recourse rights against the Company under the following circumstances:

A.  Where a breach of any material representation or covenant of the factoring agreement by Company has occurred;

B.  The existence of any dispute of any kind, regardless of validity on any factored receivable between the Benefactor Funding Corp. and the Company;

C.  Any claim of loss, counterclaim, refund, credit, return of goods, return of payment or offsets of any kind against the Company or Benefactor Funding Corp;

D.  Any non-payment by the account debtor of the full amount of the receivable within 91 days of the purchase of the factor or at any point when Benefactor Funding Corp., in its judgment, determines the receivable to be uncollectible.

At December 31, 2008, there were no factored trade accounts receivables. In 2009, this agreement was terminated.

17

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

### 5. INVENTORIES

Inventories consisted of the following:

| December 31, | 2008 | 2007 |
|---|---|---|
| Raw materials | $ 193,882 | $ 44,384 |
| Work in progress | 1,478,430 | 5,334,920 |
| Finished goods | 3,942,890 | 7,793,088 |
| | $ 5,615,202 | $ 13,172,392 |

Finished goods include inventory parts that are available for sale on a stand alone basis.

During the years ended December 31, 2008 and 2007, the Company reduced certain finished goods inventories by approximately $328,000 and $900,000, respectively, to net realizable value.

### 6. PROPERTY AND EQUIPMENT, NET

Property and equipment, net consisted of the following:

| December 31, | 2008 | 2007 |
|---|---|---|
| Furniture, fixtures and other | $ 188,688 | $ 144,989 |
| Computers and computer equipment | 794,693 | 431,302 |
| Vehicles | 13,773 | - |
| Leasehold improvements | 340,885 | 322,186 |
| | 1,338,039 | 898,477 |
| Less: Accumulated depreciation | (521,409) | (115,946) |
| | $ 816,630 | $ 782,531 |

Depreciation expense for the years ended December 31, 2008 and 2007 was $405,463 and $120,678.

Included in property and equipment were assets under capital lease arrangements with a net book value of $59,375 and $66,293 at December 31, 2008 and 2007.

18

DH 0001099

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

### 7. GOODWILL AND INTANGIBLE ASSETS

As of January 1, 2007, the Company had goodwill of approximately $10.5 million, trademarks and tradenames of $4.2 million and unpatented technology and software with a gross carrying value of $1.4 million. These intangible assets were the result of a business combination that occurred in the Company's fiscal year 2005.

The Company performed its 2007 impairment testing of goodwill and intangible assets as of November 5, 2007 using an outside valuation firm. Based on a combination of factors, including the current industry and competitive environment, decreased revenues and uncertainty regarding the future of the business once the Company became an independent entity, the Company recorded a goodwill impairment of $10.5 million and an intangible asset impairment of approximately $2.2 million to reflect the change in estimated fair value of the trademarks and tradenames for the year ended December 31, 2007.

The Company performed its 2008 impairment test of indefinite-lived intangible assets as of December 31, 2008. Based primarily on the uncertainty surrounding the future of the business, the Company recorded an impairment of $929,000 to reflect the estimated fair value of the trademarks and tradenames at December 31, 2008.

The evaluation of goodwill and other indefinite-lived intangible assets requires the use of estimates about future operating results to determine their estimated or implied fair value. Changes in forecasted operations can materially affect these estimates.

The change in the carrying value of goodwill for the years ended December 31, 2008 and 2007 is as follows:

| Year Ended December 31, | 2008 | 2007 |
|---|---|---|
| Balance, beginning of year | $ - | $ 10,506,789 |
| Impairment expense | - | (10,506,789) |
| Balance, end of year | $ - | $ - |

DH 0001100

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

7. GOODWILL AND INTANGIBLE ASSETS (CONTINUED)

Intangible assets, excluding goodwill, consisted of:

| | December 31, 2008 | | |
| --- | --- | --- | --- |
| | Gross Carrying Amount | Accumulated Amortization | Net Book Value |
| Indefinite-lived trademarks and tradenames | $ 1,090,000 | $ - | $ 1,090,000 |
| Unpatented technology and software | 1,400,000 | 1,400,000 | - |
| Total intangible assets, excluding goodwill | $ 2,490,000 | $ 1,400,000 | $ 1,090,000 |

| | December 31, 2007 | | |
| --- | --- | --- | --- |
| | Gross Carrying Amount | Accumulated Amortization | Net Book Value |
| Indefinite-lived trademarks and tradenames | $ 2,019,000 | $ - | $ 2,019,000 |
| Unpatented technology and software | 1,400,000 | 1,284,000 | 116,000 |
| Total intangible assets, excluding goodwill | $ 3,419,000 | $ 1,284,000 | $ 2,135,000 |

Amortization of the unpatented technology and software intangible assets was $116,000 and $467,000 for the years ended December 31, 2008 and 2007.

8. OTHER PAYABLES AND ACCRUED LIABILITIES

Other payables and accrued liabilities consisted of the following:

| December 31, | 2008 | 2007 |
| --- | --- | --- |
| Accrued sales commissions | $ 716,101 | $ 815,202 |
| Due to customers | 469,663 | - |
| Accrued warranty liability | 1,014,205 | 780,700 |
| Accrued bonuses and severance | - | 565,846 |
| Accrued workers' compensation | 355,045 | 431,230 |
| Accrued settlement liability | 350,000 | - |
| Accrued paid time off | 570,998 | 295,891 |
| Accrued sales and use tax | 75,894 | 371,334 |
| Other accrued expenses | 264,901 | 545,107 |
| Total other payables and accrued liabilities | $ 3,816,807 | $ 3,805,310 |

20

DH 0001101

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

---

9.  **CAPITAL LEASES**

The Company has a capital lease agreement on certain furnishings. The lease requires monthly payments of $1,363 and includes interest at a per annum rate of 11.0%.

At December 31, 2008, the minimum annual principal payments for capital lease obligations for each of the succeeding five years and thereafter are as follows:

| *Year Ending December 31,* | |
| --- | --- |
| 2009 | $ 16,360 |
| 2010 | 16,360 |
| 2011 | 16,360 |
| 2012 | 8,180 |
| | 57,260 |
| Less: amounts representing interest | 8,415 |
| Total obligation | 48,845 |
| Less: current maturities | 11,764 |
| Long-term maturity | $ 37,081 |

10.  **VENDER NOTE PAYABLE**

The Company entered into a revolving line note agreement on April 25, 2008 with Phoenix Graphics, Inc, one of the Company's print subcontractors, that provides for a maximum principal balance of $2.0 million. Upon the closing of the agreement, $2.0 million was transferred to an escrow account to partially fund the SVS Holdings, Inc. purchase of the Note with Smartmatic Corporation. See Note 3. The use of the proceeds is restricted to the purchase of the Note. This revolving line note bears interest from the origination date through November 23, 2008 at a rate of 12.0% per annum and at a rate of 16.0% per annum subsequent to November 23, 2008. In accordance with this revolving line note agreement, all payments received by the Company from its contract with the City of New York, net of the cost of printing, shall be applied to the outstanding obligations. Payments of accrued interest are to be made the first of each August, November, February and May. The revolving line note matures on the earlier of (i) October 23, 2010, (ii) the date after any initial advances on which all outstanding principal and interest is paid in full, (iii) date on which the Note described in Note 3 is purchased by any individual or entity other than the Company, or (iv) the date on which any funds advanced into the escrow account are returned to the lender. As of December 31, 2008, the principal outstanding on this revolving line note was $78,848.

21

DH 0001102

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

## 11. INCOME TAXES

The Company filed its federal income tax return as a consolidated member of Smartmatic Corporation and Subsidiaries for the tax period of January 1, 2007 through November 4, 2007. With the Company's 2007 stock acquisition by SVS Holdings, Inc., the Company elected to file its federal income tax return for the tax period of November 5, 2007 through December 31, 2007 on a consolidated basis with SVS Holdings and under the current ownership structure, management plans to file 2008 and all subsequent federal returns on a consolidated basis with SVS Holdings. For separate financial statement reporting purposes, the Company allocates current and deferred taxes as if it were a separate taxpayer.

The components of the income tax provision are as follows:

| Year Ended December 31, | 2008 | 2007 |
|---|---|---|
| Current: | | |
| Federal | $          - | $          - |
| State | - | - |
| Total current tax (benefit) expense | $          - | $          - |
| | | |
| Deferred: | | |
| Federal | (317,000) | $ 3,130,000 |
| State | (47,000) | 357,000 |
| Total deferred tax (benefit) expense | $ (364,000) | $ 3,487,000 |

The tax (benefit) expense differs from the statutory tax rate as follows:

| Year Ended December 31, | 2008 | 2007 |
|---|---|---|
| Federal statutory tax | $ (2,217,000) | $ (10,182,000) |
| State income taxes, net of federal effect | (326,000) | (1,164,000) |
| Permanent differences | 107,000 | 162,000 |
| Goodwill impairment | - | 4,098,000 |
| Change in valuation allowance | 2,864,000 | 3,491,000 |
| Net operating loss utilized November 4, 2007 | - | 6,821,000 |
| Other | (792,000) | 261,000 |
| Total tax (benefit) expense | $    (364,000) | $    3,487,000 |

DH 0001103

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

**11. INCOME TAXES (CONTINUED)**

Deferred tax assets and (liabilities) consisted of the following:

| December 31, | 2008 | 2007 |
|---|---:|---:|
| Federal net operating loss carryforward | $ 3,819,000 | $ 851,000 |
| State net operating loss carryforward | 1,038,000 | 881,000 |
| Accrued commissions and other accruals | 296,000 | 432,000 |
| Inventory | - | 1,170,000 |
| State income tax reserve | - | 517,000 |
| Allowance for doubtful accounts | 265,000 | 176,000 |
| Related party interest | - | 84,000 |
| Deferred revenues | 693,000 | 356,000 |
| Workers' compensation reserve | 138,000 | - |
| Section 263A inventory overhead allocation | 67,000 | 158,000 |
| Property and equipment | 44,000 | - |
| Other | 495,000 | 20,000 |
| Deferred tax assets | 6,855,000 | 4,645,000 |
| Less valuation allowance | (6,855,000) | (3,991,000) |
| Net deferred tax assets | - | 654,000 |
| Indefinite-lived intangibles | (423,000) | (787,000) |
| Definite-lived intangibles | - | (45,000) |
| Property and equipment | - | (305,000) |
| Other | - | (304,000) |
| Deferred tax liabilities | (423,000) | (1,441,000) |
| Net deferred tax liabilities | $ (423,000) | $ (787,000) |

At December 31, 2008, the Company has a total federal net operating loss carryforward of approximately $11.2 million for regular income tax purposes, expiring in years 2022 through 2027. Due to the change in ownership and the filing of its federal returns as part of two separate consolidated groups during 2007, the amount of the federal net operating loss generated by the Company during the ownership by Smartmatic Corporation and reportable in the 2007 consolidated federal tax return for the period ended November 4, 2007 is not available for use by the Company.

23

DH 0001104

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

**11. INCOME TAXES (CONTINUED)**

$1.7 million of the regular federal net operating loss was incurred by the Company prior to its acquisition by Smarmatic Corporation and existed as an unused loss carryforward prior to November 5, 2007, at which date SVS Holdings, Inc. acquired the stock of the Company. This amount of the net operating loss carryforward is subject to the annual limitations as outlined in Section 382 of the Internal Revenue Code.

The Company provides for a valuation allowance to reduce deferred tax assets to their estimated realizable values.

In connection with preparing the 2007 deferred tax provision, the Company determined its net deferred tax asset at December 31, 2006 was overstated by approximately $1.8 million. As a result, retained earnings at January 1, 2007 of $21,779,473, as previously reported, was restated to $20,005,708.

**12. COMMITMENTS AND CONTINGENCIES**

*Litigation*

The Company was a defendant in three separate lawsuits initiated by the same plaintiff for alleged infringement of U.S. patents related to direct recording electronic ("DRE") and optical scan voting systems. In December 2009, the Company entered into a settlement agreement with the plaintiff (Avante International Technology, Inc.) (see Note 15).

The State of Louisiana and County of Passaic, New Jersey have both claimed defects in casters, leg braces and mounting brackets on carriers for voting equipment purchased. Although insufficient facts exist on which to base a conclusion as to whether the manufacturing subcontractor or the Company is responsible for the defects, the Company has accrued a warranty liability as of December 31, 2008 in the amount of approximately $1.0 million. The County of Passaic, New Jersey has also alleged defects in audio functions for voting equipment purchased that the Company has pledged to correct via firmware, different setup procedures or upgrades during election set-up.

The Company joined a lawsuit as a defendant in May 2008 for discovery purposes under an action pending with the Superior Court of New Jersey, Mercer County. Plaintiff is seeking to have all electronic voting machines declared unconstitutional in the state of New Jersey. The initial phase of the trial has been completed, and a decision is expected by early 2010. While the legal team believes

24

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

### 12. COMMITMENTS AND CONTINGENCIES (CONTINUED)

there is substantial expert testimony supporting the conclusion that the machines will not be found unconstitutional, they cannot give an assessment on this likelihood. At the current time the plaintiffs are not seeking a damage award or other claim against the Company. However, an adverse outcome could adversely impact the Company's ability to sell voting machines in New Jersey.

The Company is exposed to various asserted and unasserted potential claims encountered in the normal course of business. Although the ultimate outcome cannot be determined with certainty, the Company believes, based on advice of counsel and amounts involved, that the ultimate liability associated with such asserted and unasserted potential claims, if any, will not have a material adverse effect on the Company's financial position or results of operations.

*Operating Leases*

The Company leases various offices it uses to conduct its operations. Certain office leases are on a month-to-month basis and other lease agreements expire on various dates ranging from 2007 to 2012.

The Company has the option to extend one of its leases for an additional four year term at rates based on current market.

The Company also has a lease with one year auto renewal terms at market rate commencing in 2010 unless expressly declined.

Minimum lease payments, for each of the succeeding five years and thereafter, under operating leases with initial terms in excess of one year are as follows:

| *Year Ending December 31,* | |
| --- | --- |
| 2009 | $ 356,774 |
| 2010 | 162,933 |
| 2011 | 122,455 |
| 2012 | 93,892 |
| | $ 736,054 |

Rent expense was approximately $434,000 and $662,000 for the years ended December 31, 2008 and 2007.

25

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

**12. COMMITMENTS AND CONTINGENCIES (CONTINUED)**

*401(k) Profit Sharing Plan*

The Company has a 401(k) deferred profit sharing plan (the "Plan"). Each employee is eligible immediately upon hire date and is eligible to enroll in the Plan on the first day of the month. Certain employees are ineligible for the Plan. Eligible participants may contribute, on a pre-tax basis or on an after tax basis (Roth 401(k)), up to 40% of their considered earnings subject to IRS limitations.

The Company contributes 3% of eligible compensation as a safe harbor contribution for each participant. The Company also provides a non-discretionary matching contribution of 50% of the employee's deferrals, limited to the first 6% of compensation, not to exceed certain limitations. Pursuant to IRS Safe Harbor regulations, all safe harbor funds are 100% vested. For the years ended December 31, 2008 and 2007, the Company contributed approximately $611,000 and $702,000, respectively, to the Plan on behalf of its employees.

The Company has identified certain operational failures in the administration of the 401(k) Plan since the inception of the Plan in May 2005. The Company is in the process of finalizing the corrective actions required by the Company in order to maintain the tax-qualified status of the Plan. The Company estimates that it will make a corrective contribution of approximately $36,000 to address the operational failures as of December 31, 2008. The Company has recorded an accrued liability for that amount in the accompanying December 31, 2008 balance sheet.

*Employee Incentive Plans*

The Company has instituted an employee incentive plan. The amount of the bonus is at management discretion. For the year ended December 31, 2007, approximately $558,000 was approved and accrued for this bonus. The Company did not approve or accrue for this bonus for the year ended December 31, 2008.

*Commitment to Pay Certain Termination Benefits*

As of December 31, 2008, the Company had entered into a severance agreement with an executive officer. Under this agreement, in the event employment is terminated (other than voluntarily by the employee without sufficient reason or by the Company for cause), the Company is committed to pay certain benefits, including specified severance equivalent to one year's base salary plus any bonus accruable as of that date. The benefits, with exception of reimbursements, are to be paid within five business days after the date of termination.

26

DH 0001107

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

**12. COMMITMENTS AND CONTINGENCIES (CONTINUED)**

As of December 31, 2008, the Company had entered into an employment agreement with another executive officer. Under the terms of this agreement, in the event employment is terminated for permanent disability or without cause, the Company is committed to pay certain benefits including base salary for three months on the date of separation. The base salary for three months is to be paid five business days after termination.

**13. INDEMNIFICATIONS**

*Officer, Director and Employee Indemnification Guarantee*

The Company's Bylaws provides that the Company indemnify its officers, directors and employees for certain events or occurrences that happen by reason of the fact that the officer, director or employee is, was, or has agreed to serve as an officer or director of the Company. The term of the indemnification period is for the officer's, director's or employee's lifetime. The maximum potential amount of future payments the Company could be required to make under these indemnification agreements is unlimited; however, the Company has a Director and Officer insurance policy that limits its exposure and enables the Company to recover a portion of any future amounts paid. As of December 31, 2008 and 2007, the Company had not accrued a liability for this indemnification, because the likelihood of incurring a payment obligation is remote.

*Sequoia Customer Indemnification*

Many of the Company's contracts contain general and intellectual property indemnifications, indemnifying the customer against liability and damages (including legal defense costs), arising from intellectual property infringements or other situations.

Certain of the Company's contracts indemnify authorized users, elections boards, their commissioners, officers and employees from suits, actions, damages and costs related to personal injury and damage to real or personal tangible property caused by an intentional act or negligence of the Company, its agents, employees, partners or subcontractors, without limitation.

**27**

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

## 14. RELATED PARTIES TRANSACTIONS, NET

*Due to SVS Holdings, Inc. ("Parent Company")*

In May 2008, the principal investor of the Company's parent, SVS Holdings agreed to extend a loan to SVS Holdings through a revolving line of credit agreement. The principal investor is also a Director, the President and Chief Executive Officer of SVS Holdings. The Parent Company provided the loan proceeds to the Company and the Company recorded the proceeds as due to SVS Holdings. The principal amount at December 31, 2008 of $1,407,433 is included as a non-current liability in the accompanying balance sheet. This loan between the principal investor and SVS Holdings does not have a due date and is payable once free cash is available.

*Due from SVS Holdings, Inc.*

During the years ended December 31, 2008 and 2007, the Company made advances of $7.0 million and $222,626 to SVS Holdings. This related party balance represents amounts paid by the Company on behalf of SVS Holdings for the transactions described in Notes 2 and 3. In 2008, the Company determined that the repayment of the amounts advanced to SVS Holdings is not certain and accordingly the balance has been reported as contra-equity in the accompanying balance sheets.

Due to related parties consisted of the following:

| December 31, | 2008 | 2007 |
|---|---|---|
| Due to Smartmatic Services Corporation | $ 200,000 | $ 22,229 |
| Due to Smartmatic Corporation | – | 190,236 |
| Due to Smartmatic International Corporation | 50,820 | 1,049,185 |
| | $ 250,820 | $ 1,261,650 |

*Due to Smartmatic Corporation ("Former Parent")*

A management fee was charged by Smartmatic Corporation through September 2007, based on actual expenses incurred, including salaries related to financial, administrative, marketing and personnel functions. The fee charged represents the equitable allocation to the affiliates as determined by Smartmatic Corporation. The fee charged to the Company for the year ended December 31, 2007 was $800,000 and is included in operating expenses. In addition, during the ordinary course of business, the Company may pay certain payroll, insurance, and other administrative expenses on behalf of Smartmatic Corporation. As of December 31, 2007, the Company owed $190,236 to Smartmatic Corporation.

DH 0001109

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

### 14. RELATED PARTIES TRANSACTIONS, NET (CONTINUED)

The principal balances between the Company and Smartmatic Corporation bear interest at a three month average prime rate plus 1%, calculated on a quarterly basis through November 5, 2007. Interest expense for the year ended December 31, 2007 on these balances was $198,331.

*Due to Smartmatic International Corporation*

The Company entered into two procurement agreements with a party related through common ownership, Smartmatic International Corporation ("International"), on July 6, 2006 with an effective date of March 9, 2005 for the purchase of inventory products through November 5, 2007. Under the terms of the agreements there are two costing methods, Smartmatic Procured Product ("SPP") and Smartmatic Developed Product ("SDP"). For the SPP products, the pricing method is a cost plus method and International charges the Company an amount equivalent to the cost of the procured goods plus an 8% mark-up in order to cover its procurement costs such as: purchase and logistic functions, provider's evaluation and selection, contracting, price and volume negotiation, timely inventory delivery, financing and administrative costs. For SDP acquired products the pricing policy is a resale minus method or client list price less mark down. Under this method International charges the Company an amount equivalent to the end-customer contract price less a discount of 19% (mark-down).

For the year ended December 31, 2007, the Company purchased approximately $3,000,000 of product from International which is included within cost of sales in the statement of operations. As of December 31, 2008 and 2007, the Company owed $50,820 and $1,049,185 to International. The principal balance bears interest at a three month average prime rate plus 1.0%, calculated on a quarterly basis through November 5, 2007. Interest expense, net for the year ended December 31, 2007 was $10,553.

*Due to Smartmatic Services Corporation*

On June 23, 2008, the Company entered into a settlement agreement for $1,050,000 pursuant to certain services provided on behalf of the Company by Smartmatic Service Corporation. Certain disputes continue between the Company and Smartmatic Service Corporation with respect to these services rendered and these expenses incurred by Smartmatic Service Corporation. Consequently, $200,000 of this amount has not been paid by the Company as of December 31, 2008 and is included as part of the due to related parties on the accompanying balance sheet.

During the year ended December 31, 2007, Smartmatic Services Corporation, a company related through common ownership, paid for an expense on behalf of the Company totaling $22,229. This balance is outstanding at December 31, 2007.

29

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

### 15. SUBSEQUENT EVENTS

*Contract Transactions*

On July 15, 2009, the Company entered into an asset purchase agreement with Dominion Systems Voting Corp ("Dominion") to sell the Company's contract with New York State, comprising accounts receivable, the transfer of the New York State voting equipment contract, personal property, inventory and the transfer of certain personnel. According to the agreement Dominion assumed all related liabilities. The purchase price for accounts receivable, open purchase orders, personal property, inventory and the transfer of certain personnel was $2,366,000. In addition, should Dominion be successful in winning the Nassau County, NY contract, the Company would receive 23.5% of the value of the sale. In addition, should Dominion be successful in winning the New York City contract, the Company would receive $2,750,000.

On October 1, 2009 the Company entered into an asset purchase agreement with ProDocumentSolutions Corp. to sell the Company's ballot printing division, comprising personal property, accounts receivable, inventory, business intellectual property and the transfer of certain personnel. The sale restricts the Company from selling printed ballots to current customers, with the exception of New York State. The Company retains the right to sell printed ballots to current and future customers on the Company's next generation voting machines. The purchase price was $2.0 million, of which $517,000 was paid at closing. The balance of the purchase price to be paid is based on annual earnout payments for each election cycle occurring in the years 2010, 2011 and 2012.

*Subsequent Settlement Agreements*

In December 2009, the Company and Avante International Technology, Inc. reached a tentative settlement agreement regarding a patent infringement lawsuit filed against the Company in September 2008. The parties are in the process of finalizing a written agreement, which is expected to be executed by the close of January 2010. A total of $700,000 was agreed upon of which the Company is jointly liable with Dominion Voting Systems. The Company is liable for payment of 50% of this settlement or $350,000 and has included an accrued liability for that amount in the accompanying December 31, 2008 balance sheet.

In November 2009, a settlement agreement was reached with Arxan Technologies, Inc. for approximately $173,000 pursuant to a $2.4 million claim for services rendered and products under a purchase order. The settlement is primarily the result of disputes that occurred subsequent to December 31, 2008, and therefore the Company has not included an accrued liability for that amount in the accompanying balance sheet as of December 31, 2008.

30

DH 0001111

EXHIBIT C

# Sequoia Voting Systems, Inc.

## Notes to Financial Statements

### 15. SUBSEQUENT EVENTS (CONTINUED)

*Subsequent Litigation*

On December 4, 2009, Franklin Inventions, LLC filed a patent infringement lawsuit against the Company and several of the Company's competitors. The complaint alleges infringement of certain patents related to direct recording electronic or "DRE" equipment. The plaintiff claims money damages from the Company and other defendants, including enhanced damages based on alleged willful infringement. The specific amount of damages claimed by the plaintiff is unknown at the time of the issuance of these financial statements. Because the amount of damages claimed is unknown at this point and information regarding the plaintiff's claims is still being developed, no opinion can be rendered by outside counsel as to the outcome of this matter.

*SFAS No. 165, Subsequent Events*

In May 2009, the FASB issued SFAS No. 165, *Subsequent Events*. This statement sets forth the period after the balance sheet date during which management of a reporting entity should evaluate events or transactions that may occur for potential recognition or disclosure in the financial statements, the circumstances under which an entity should recognize events or transactions occurring after the balance sheet date in the financial statements and the disclosures that an entity should make about events or transactions that occurred after the balance sheet date. The statement is applicable for annual financial periods ending after June 15, 2009. Management does not expect this statement to have a material impact on the Company's financial statements.

DH 0001112

Exhibit B-1 (i)
Balance Sheet for Sequoia Voting Systems, Inc.
As of December 31, 2009

| | Jan-2009 | Feb-2009 | Mar-2009 | Apr-2009 | May-2009 | Jun-2009 | Jul-2009 | Aug-2009 | Sep-2009 | Oct-2009 | Nov-2009 | Dec-2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash & Cash Equivalent | 3,415,395 | 1,548,266 | 2,429,158 | 1,368,802 | 1,804,531 | 1,215,319 | 546,667 | 109,974 | 1,469,332 | 847,880 | 621,429 | 591,101 |
| Accounts Receivable | 6,243,851 | 6,960,059 | 5,833,670 | 5,598,240 | 4,283,890 | 3,129,251 | 3,095,011 | 5,947,394 | 3,956,430 | 4,551,800 | 4,810,612 | 5,624,555 |
| Inventory | 5,568,924 | 5,597,657 | 5,546,888 | 5,451,716 | 5,272,800 | 5,196,571 | 5,495,182 | 5,564,302 | 5,236,842 | 5,207,653 | 4,971,651 | 4,518,288 |
| Prepaids | 108,941 | 166,841 | 591,658 | 166,298 | 183,321 | 178,416 | 207,998 | 126,752 | 245,156 | 178,705 | 157,648 | 588,234 |
| 12160 - Tax Receivable | 1,300,000 | 1,300,000 | 1,300,000 | 1,300,000 | 1,300,000 | 1,300,000 | 1,300,000 | 1,300,000 | 1,300,000 | 1,300,000 | 1,300,000 | 1,300,000 |
| 14001 - Deferred COGS-Current-All Types | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | -6,250,220 |
| 14200 - Deferred COGS-Current-Systems | 47,273,585 | 46,433,246 | 45,592,911 | 44,752,575 | 43,939,778 | 44,126,978 | 42,314,180 | 41,501,381 | 7,507,468 | 7,400,650 | 7,293,833 | 7,243,035 |
| 14240 - Deferred COGS-Current-Services | 1,801,600 | 1,766,877 | 1,732,155 | 1,697,433 | 1,662,711 | 1,627,988 | 1,593,266 | 1,558,544 | 527,109 | 513,593 | 500,078 | 511,507 |
| Other Current Assets | 50,375,184 | 49,500,126 | 48,625,067 | 47,750,008 | 46,902,487 | 40,054,066 | 45,207,446 | 44,359,925 | 9,334,577 | 9,214,244 | 9,093,911 | 2,804,323 |
| CURRENT ASSETS | 65,713,294 | 63,772,566 | 63,026,041 | 62,335,064 | 64,447,029 | 65,774,524 | 64,542,294 | 56,108,347 | 28,262,336 | 20,000,382 | 19,646,453 | 14,116,499 |
| Property & Equipment | 789,020 | 761,365 | 735,697 | 710,192 | 684,700 | 659,208 | 633,961 | 608,747 | 538,392 | 514,028 | 476,444 | 367,762 |
| Intangible Asset Net | 1,090,000 | 1,090,000 | 1,090,000 | 1,090,000 | 1,090,000 | 1,090,000 | 1,090,000 | 1,090,000 | 1,090,000 | 1,090,000 | 1,090,000 | 6,250,220 |
| Deferred COGS-Non-Current-All Types | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 120,702 |
| Due To From Affiliate | -28,179 | -30,644 | 4,920 | 108,842 | 51,057 | 60,801 | 58,712 | 79,293 | 89,586 | 18,329 | 1,709 | 0 |
| OTHER ASSETS | 1,970,020 | 1,911,544 | 1,865,886 | 1,860,381 | 1,834,889 | 1,809,398 | 1,784,150 | 1,758,596 | 1,688,581 | 1,664,217 | 1,629,636 | 7,828,684 |
| TOTAL ASSETS | 67,593,314 | 65,684,513 | 64,912,327 | 62,195,445 | 69,281,918 | 57,583,922 | 56,326,444 | 57,957,292 | 21,950,918 | 21,664,599 | 21,285,088 | 21,945,184 |
| 20005 - Accts Payable; Vendors | 5,526,560 | 5,407,103 | 5,398,323 | 5,711,080 | 6,706,018 | 5,940,935 | 5,645,520 | 7,383,604 | 6,853,656 | 7,168,268 | 7,373,941 | 7,704,218 |
| 20006 - Accounts Payable Accrual | 501,026 | 367,237 | 367,737 | 813,541 | 687,001 | 822,276 | 579,090 | 727,795 | 716,403 | 497,716 | 329,467 | 331,552 |
| 20008 - TAE Reserve | 23,415 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 36,788 |
| 20010 - Suspense - Received Not Invoiced | -28,179 | -30,644 | 4,920 | 108,842 | 51,057 | 60,801 | 58,712 | 79,293 | 89,586 | 18,329 | 1,709 | 0 |
| 20501 - Due To-From Parent-Subsidiary | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,433 | 1,280,386 |
| 20620 - Short Term Borrowings-Related Parties | 119,816 | 149,021 | 1,172,225 | 1,066,576 | 1,105,104 | 1,104,638 | 1,128,161 | 1,420,602 | 719,101 | 254,315 | 503,294 | 550,000 |
| 21601 - Current Short Term Obligations | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 901,517 |
| 26001 - Federal Income Tax Payable | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 200,000 |
| 26002 - State Income Tax Payable | -305 | -305 | -305 | -305 | -305 | -305 | -305 | -305 | -305 | -305 | -305 | 4,370 |
| Accounts Payable | 7,750,068 | 7,500,246 | 8,550,329 | 9,307,164 | 10,156,305 | 9,535,775 | 9,018,628 | 11,218,816 | 9,985,881 | 9,545,754 | 9,815,558 | 11,009,241 |
| 20007 - Print Customer Pre-Paid And Deferred Revenue | 0 | 0 | 0 | 196,207 | 7 | 0 | -571,771 | -100,240 | 183,700 | -100,240 | 0 | 0 |
| 27001 - Deferred Revenue-Current-Non-Current | 483,550 | 1,745,371 | 1,809,410 | 1,191,000 | 800,000 | 800,000 | -100,240 | -100,240 | -100,240 | -100,240 | -100,240 | -5,112,815 |
| 27200 - Deferred Revenue-Current-Systems | 57,284,863 | 56,278,332 | 55,271,802 | 54,265,271 | 53,319,178 | 52,373,085 | 51,617,391 | 50,663,365 | 9,118,461 | 9,028,070 | 8,937,679 | 3,119,203 |
| 27220 - Deferred Revenue-Current-License | 3,655,725 | 3,772,282 | 4,050,651 | 3,706,539 | 3,474,743 | 3,404,473 | 3,574,745 | 3,387,607 | 2,737,010 | 2,553,987 | 2,386,111 | 1,400,006 |
| 27230 - Deferred Revenue-Current-Warranty | 1,900,335 | 1,723,358 | 1,577,797 | 1,433,737 | 1,316,047 | 1,216,995 | 2,104,905 | 1,974,667 | 1,848,575 | 1,755,582 | 1,640,147 | 1,564,036 |
| 27240 - Deferred Revenue-Current-Services | 5,645,635 | 5,410,298 | 5,174,962 | 5,139,625 | 4,969,691 | 4,726,045 | 5,065,505 | 4,883,568 | 3,103,469 | 2,958,036 | 2,821,811 | 4,941,230 |
| Deferred Revenue Current | 68,970,058 | 70,117,641 | 69,075,821 | 65,928,379 | 63,820,565 | 62,520,557 | 61,790,775 | 60,962,866 | 16,891,375 | 16,195,786 | 15,655,508 | 6,912,260 |
| Warranty Reserve | 1,019,952 | 1,036,255 | 1,052,475 | 1,069,194 | 1,085,682 | 1,085,682 | 1,137,689 | 1,137,696 | 1,155,799 | 1,174,163 | 1,192,646 | 1,211,528 |
| Accrued Expenses | 1,341,366 | 1,190,254 | 1,016,302 | 1,072,287 | 989,186 | 981,366 | 968,469 | 859,422 | 878,759 | 880,573 | 1,137,814 | 1,084,798 |
| Plastic Credit | 139,539 | 139,539 | 139,539 | 139,539 | 117,607 | 117,607 | 117,607 | 117,607 | 91,205 | 91,205 | 91,205 | 91,205 |
| Accrued Taxes | -50,746 | -135,405 | -125,407 | -157,072 | 8,432 | 18,136 | -178,220 | -173,975 | -167,470 | -173,362 | -173,412 | -49,125 |
| CURRENT LIABILITIES | 79,170,207 | 79,854,530 | 79,709,061 | 73,359,490 | 76,187,779 | 74,276,562 | 72,838,964 | 74,122,434 | 28,635,640 | 27,714,119 | 27,719,319 | 20,239,907 |
| Deferred Revenue Non Current | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,635,683 |
| Long Term Obligations | 37,081 | 35,242 | 34,232 | 32,644 | 31,898 | 30,931 | 29,599 | 29,599 | 27,373 | 26,361 | 26,361 | 23,943 |
| Deferred Tax Liability | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 |
| LONG TERM LIABILITIES | 460,081 | 458,242 | 457,232 | 455,644 | 454,898 | 453,931 | 452,599 | 452,599 | 450,373 | 449,361 | 449,361 | 9,082,626 |
| Common Stock | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 |
| Additional Paid in Capital | -7,722,676 | -8,222,676 | -8,222,676 | -8,222,676 | -8,222,676 | -8,222,676 | -8,222,676 | -8,222,676 | -8,222,676 | -8,222,676 | -8,222,676 | -8,222,676 |
| Push Down Capital | -20,234,298 | -20,234,298 | -20,234,298 | -20,234,298 | -20,234,298 | -20,234,298 | -20,234,298 | -20,234,298 | -20,234,298 | -20,234,298 | -20,234,298 | -20,234,298 |
| RETAINED EARNINGS PY | -509,004 | -2,099,240 | -2,725,005 | -3,000,891 | -3,831,739 | -4,616,942 | -4,434,105 | -4,178,732 | -5,194,024 | 6,030,138 | 5,645,228 | 5,131,669 |
| RETAINED EARNINGS CY | -13,038,023 | -14,628,259 | -15,284,024 | -16,619,909 | -16,340,764 | -17,145,961 | -16,942,124 | -16,707,761 | -7,234,996 | -4,498,881 | -4,883,791 | -7,397,340 |
| EQUITY | -12,013,023 | -14,628,259 | -15,284,024 | -16,619,909 | -16,340,764 | -17,145,961 | -16,942,124 | -16,707,761 | -7,234,996 | -4,498,881 | -4,883,791 | -7,397,340 |
| TOTAL LIABILITIES & EQUITY | 67,593,314 | 65,684,513 | 64,912,327 | 62,195,445 | 69,281,918 | 57,583,922 | 56,326,444 | 57,957,292 | 21,950,918 | 21,664,599 | 21,285,088 | 21,945,184 |

DH 0001113

EXHIBIT C

Exhibit B-1 (ii)
Balance Sheet for Sequoia Voting Systems, Inc.
As of May 31, 2010

| | Jan-2010 | Feb-2010 | Mar-2010 | Apr-2010 | May-2010 |
|---|---|---|---|---|---|
| Cash & Cash Equivalent | 148,861 | 1,154,939 | 798,256 | 479,513 | 236,510 |
| Accounts Receivable | 7,527,839 | 5,543,600 | 1,630,443 | 1,725,816 | 2,458,788 |
| Inventory | 4,542,597 | 4,543,482 | 4,457,964 | 4,414,057 | 4,386,615 |
| Prepaids | 83,620 | 69,273 | 66,993 | 95,895 | 69,436 |
| | | | | | |
| 12160 -Tax Receivable | 1,300,000 | 1,300,000 | 1,300,000 | 1,300,000 | 927,998 |
| 14200 -Deferred COGS-Current-Systems | 7,133,270 | 7,023,504 | 6,913,738 | 6,803,973 | 6,694,207 |
| 14230 -Deferred COGS-Current-Warranty | 63,232 | 57,483 | 51,735 | 45,987 | 40,238 |
| 14240 -Deferred COGS-Current-Services | 495,913 | 480,318 | 464,724 | 449,130 | 433,535 |
| Other Current Assets | 8,992,414 | 8,861,306 | 8,730,197 | 8,599,089 | 8,095,978 |
| | | | | | |
| CURRENT ASSETS | 21,295,331 | 20,172,600 | 15,683,854 | 15,314,370 | 15,247,327 |
| | | | | | |
| Property & Equipment | 334,568 | 302,686 | 284,525 | 266,472 | 249,128 |
| Intangible Asset Net | 1,090,000 | 1,090,000 | 1,090,000 | 1,090,000 | 1,090,000 |
| Due To From Affiliate | 120,702 | 120,702 | 120,702 | 150,732 | 150,732 |
| OTHER ASSETS | 1,545,270 | 1,513,389 | 1,495,227 | 1,507,204 | 1,489,861 |
| | | | | | |
| TOTAL ASSETS | 22,840,601 | 21,685,989 | 17,179,081 | 16,821,574 | 16,737,187 |
| | | | | | |
| 20005 -Accts Payable: Vendors | 7,774,713 | 7,493,177 | 4,570,457 | 4,808,131 | 4,571,385 |
| 20006 -Accounts Payable Accrual | 200,000 | 200,000 | 144,603 | 145,313 | 200,000 |
| 20009 -Other Payables - Customer Credits | 0 | 0 | 0 | 333,735 | 333,735 |
| 20501 -Due To-From Parent-Subsidiary | 1,280,386 | 1,280,386 | 1,280,386 | 1,280,386 | 1,280,386 |
| 20620 -Short Term Borrowings-Related Parties | 853,000 | 853,000 | 853,000 | 853,000 | 853,000 |
| 21801 -Current Short Term Obligations | 901,637 | 665,111 | 14,548 | 13,613 | 13,737 |
| 26001 -Federal Income Tax Payable | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 |
| 26002 -State Income Tax Payable | 4,370 | 4,370 | 4,370 | 4,370 | 4,370 |
| Accounts Payable | 11,214,105 | 10,696,044 | 7,067,364 | 7,638,548 | 7,456,614 |
| | | | | | |
| 27001 -Deferred Revenue-Current-Non-Amort | 3,991,652 | 3,991,268 | 4,106,147 | 4,281,147 | 4,820,090 |
| 27200 -Deferred Revenue-Current-Systems | 3,028,813 | 2,938,422 | 2,848,031 | 2,757,640 | 2,667,249 |
| 27220 -Deferred Revenue-Current-License | 2,460,795 | 2,206,944 | 2,133,237 | 1,968,829 | 1,844,981 |
| 27230 -Deferred Revenue-Current-Warranty | 1,704,783 | 1,551,028 | 1,389,690 | 1,228,352 | 1,079,014 |
| 27240 -Deferred Revenue-Current-Services | 4,801,233 | 4,560,952 | 4,324,009 | 4,104,584 | 4,144,621 |
| Deferred Revenue Current | 15,987,275 | 15,248,614 | 14,801,114 | 14,340,553 | 14,555,955 |
| | | | | | |
| Warranty Reserve | 1,236,581 | 1,261,909 | 1,287,426 | 1,312,944 | 1,338,462 |
| Accrued Expenses | 1,122,449 | 1,142,879 | 1,074,414 | 1,002,347 | 998,836 |
| Plastic Credit | 91,205 | 91,205 | 91,205 | 91,205 | 91,205 |
| Accrued Taxes | -47,473 | -29,326 | -48,045 | -54,216 | -54,104 |
| CURRENT LIABILITIES | 29,604,142 | 28,411,324 | 24,273,479 | 24,331,382 | 24,386,968 |
| | | | | | |
| Long Term Obligations | 22,783 | 21,612 | 20,431 | 19,239 | 18,036 |
| Deferred Tax Liability | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 |
| LONG TERM LIABILITIES | 445,783 | 444,612 | 443,431 | 442,239 | 441,036 |
| | | | | | |
| Common Stock | 1 | 1 | 1 | 1 | 1 |
| Additional Paid In Capital | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 | 15,927,954 |
| Push Down Capital | -8,222,676 | -8,222,676 | -8,222,676 | -8,222,676 | -8,222,676 |
| RETAINED EARNINGS PY | -15,102,629 | -15,102,629 | -15,102,629 | -15,102,629 | -15,102,629 |
| RETAINED EARNINGS CY | 188,026 | 227,402 | -140,479 | -554,696 | -693,466 |
| EQUITY | -7,209,324 | -7,169,948 | -7,537,829 | -7,952,046 | -8,090,816 |
| | | | | | |
| TOTAL LIABILITIES & EQUITY | 22,840,601 | 21,685,989 | 17,179,081 | 16,821,574 | 16,737,187 |

DH 0001114

EXHIBIT C

Exhibit B-2 (I)
Statement of Income (Loss) for Sequoia Voting Systems, Inc.
Period Ending December 31, 2009

| | Jan-2009 | Feb-2009 | Mar-2009 | Apr-2009 | May-2009 | Jun-2009 | Jul-2009 | Aug-2009 | Sep-2009 | Oct-2009 | Nov-2009 | Dec-2009 | YTD-2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Systems, Services and Other | 2,078,720 | 2,158,230 | 2,446,471 | 2,477,444 | 2,589,048 | 2,040,061 | 2,396,529 | 2,106,287 | 882,061 | 1,068,862 | 1,401,280 | 1,675,526 | 23,320,530 |
| Election Printing | 364,080 | 212,979 | 552,826 | 2,559,915 | 542,949 | 108,220 | 25,725 | 2,094,618 | 1,851,532 | 3,818,740 | 17,765 | 42,771 | 12,192,117 |
| Total Sales | 2,442,800 | 2,371,209 | 2,999,297 | 5,037,359 | 3,131,996 | 2,148,281 | 2,422,254 | 4,200,904 | 2,733,593 | 4,887,602 | 1,419,055 | 1,718,297 | 35,512,647 |
| Systems, Services and Other | 847,475 | 1,356,309 | 1,320,024 | 1,670,984 | 1,385,795 | 1,311,827 | 1,112,994 | 1,099,052 | 1,358,742 | 362,999 | 776,692 | 707,394 | 13,310,287 |
| Election Printing | 262,566 | 159,236 | 379,940 | 1,768,708 | 361,235 | 85,201 | 15,819 | 1,553,745 | 1,401,237 | 2,758,865 | -3,761 | 32,420 | 8,775,211 |
| Total Cost Of Goods Sold | 1,110,041 | 1,515,546 | 1,699,964 | 3,439,691 | 1,747,030 | 1,397,028 | 1,128,813 | 2,652,797 | 2,759,979 | 3,121,865 | 772,932 | 739,813 | 22,085,499 |
| Total GROSS PROFIT | 1,332,759 | 855,663 | 1,299,333 | 1,597,668 | 1,384,966 | 751,253 | 1,293,441 | 1,548,107 | -26,386 | 1,765,737 | 646,123 | 978,483 | 13,427,148 |
| Total Selling, General and Administrative Expense | 1,984,858 | 2,384,624 | 1,861,388 | 1,882,893 | 2,051,822 | 1,431,423 | 1,053,621 | 1,237,542 | 1,084,877 | 1,371,148 | 1,019,124 | 1,260,987 | 18,624,307 |
| Total Depreciation Expense | 27,265 | 27,665 | 25,658 | 25,506 | 25,492 | 25,492 | 25,248 | 25,214 | 25,110 | 24,364 | 34,584 | 128,822 | 420,420 |
| Total Gain/Loss On Asset Disposal | -101,942 | | | | | | | | -10,334,908 | | | -17,141 | -10,453,990 |
| TOTAL OPERATING EXPENSE | 1,910,181 | 2,412,289 | 1,887,046 | 1,908,398 | 2,077,313 | 1,456,914 | 1,078,869 | 1,262,757 | -9,224,921 | 1,395,513 | 1,053,708 | 1,372,669 | 8,590,737 |
| Total PROFIT (LOSS) BEFORE TAX | -577,422 | -1,556,626 | -587,713 | -310,730 | -692,347 | -705,661 | 214,572 | 285,350 | 9,198,535 | 370,225 | -407,585 | -394,186 | 4,836,412 |
| 82100 -Other Income | | | | | | | | | | -477,862 | -23,012 | -2,420 | -503,294 |
| 84000 -Prior Years Inventory Adjustment | | | | | | | | | | | | 456,699 | 456,699 |
| Total Other Income | | | | | | | | | | -477,862 | -23,012 | 454,279 | -46,595 |
| 65740 -Interest Expense | 29,204 | 34,455 | 38,716 | 55,838 | 48,934 | 49,984 | 33,220 | 30,001 | 52,375 | 12,024 | 359 | -258,924 | 126,185 |
| 65750 -Interest Expense-Related Parties | | | | | | | | | | | | 6,527 | 6,527 |
| Total Interest Expense | 29,204 | 34,455 | 38,715 | 55,838 | 48,934 | 49,984 | 33,220 | 30,001 | 52,375 | 12,024 | 359 | -252,396 | 132,713 |
| Total Interest Income | -1,391 | -845 | -664 | -682 | -433 | -472 | -364 | -23 | -37 | -86 | -22 | -15 | -5,035 |
| Total Royalty Income-Pes | -96,238 | | | | | | | | -226,559 | | | -257,140 | -579,937 |
| 81001 -Federal Income Tax Expense | 7 | | | | | | | | | | | 200,000 | 198,880 |
| 81006 -State Income Tax Expense | | | | | | 30,030 | | | | 35 | | -25,355 | 4,717 |
| Total Tax Expense | 7 | | | | | 30,030 | | | | 35 | | 174,645 | 203,597 |
| TOTAL OTHER INCOME (LOSS) | -68,417 | 33,610 | 38,052 | 55,155 | 48,501 | 79,542 | 31,735 | 29,978 | -174,221 | -465,890 | -22,675 | 119,373 | -295,257 |
| Total NET PROFIT (LOSS) | -509,004 | -1,590,236 | -625,765 | -365,886 | -740,848 | -785,203 | 182,838 | 255,372 | 9,372,756 | 836,114 | -384,910 | -513,559 | 5,131,669 |

DH 0001115

EXHIBIT C

**Exhibit B-2 (ii)**
<u>Statement of Income (Loss) for Sequoia Voting Systems, Inc.</u>
Period Ending May 31, 2010

| | Jan-2010 | Feb-2010 | Mar-2010 | Apr-2010 | May-2010 | YTD-2010 |
|---|---|---|---|---|---|---|
| Systems, Services and Other | 1,373,939 | 1,134,078 | 948,520 | 926,531 | 983,177 | 5,366,246 |
| Election Printing | 79,728 | 102 | 287,827 | 2,170 | 3,203 | 373,030 |
| **Total Sales** | **1,453,667** | **1,134,180** | **1,236,347** | **928,701** | **986,381** | **5,739,276** |
| | | | | | | |
| Systems, Services and Other | 166,321 | 248,035 | 320,334 | 369,034 | 283,740 | 1,387,465 |
| Election Printing | -114,255 | 53,410 | 197,785 | 0 | 0 | 136,940 |
| **Total Cost Of Goods Sold** | **52,067** | **301,445** | **518,119** | **369,034** | **283,740** | **1,524,405** |
| | | | | | | |
| **Total GROSS PROFIT** | **1,401,601** | **832,735** | **718,228** | **559,666** | **702,641** | **4,214,871** |
| | | | | | | |
| Total Selling, General and Administrative Expense | 1,167,611 | 987,712 | 1,052,326 | 949,883 | 811,109 | 4,968,641 |
| Total Depreciation Expense | 33,194 | 31,881 | 18,162 | 18,053 | 17,344 | 118,634 |
| TOTAL OPERATING EXPENSE | 1,200,805 | 1,019,594 | 1,070,488 | 967,936 | 828,453 | 5,087,275 |
| | | | | | | |
| **Total PROFIT (LOSS) BEFORE TAX** | **200,796** | **-186,859** | **-352,260** | **-408,270** | **-125,811** | **-872,404** |
| | | | | | | |
| Total Other Income | -120 | | 1,037 | -10,044 | | -9,127 |
| | | | | | | |
| 65740  -Interest Expense | 10,149 | 7,167 | 16,321 | 12,008 | 9,337 | 54,982 |
| 65750  -Interest Expense-Related Parties | 2,751 | 3,272 | 3,622 | 3,505 | 3,622 | 16,773 |
| Total Interest Expense | 12,899 | 10,439 | 19,944 | 15,514 | 12,959 | 71,754 |
| | | | | | | |
| Total Interest Income | -9 | -26 | -34 | -22 | | -92 |
| Total Royalty Income-Pes | | -236,648 | -60,000 | | | -296,648 |
| | | | | | | |
| 81001  -Federal Income Tax Expense | | | 50,000 | | | 50,000 |
| 81006  -State Income Tax Expense | | | 4,675 | 500 | | 5,175 |
| Total Tax Expense | | | 54,675 | 500 | | 55,175 |
| | | | | | | |
| **TOTAL OTHER INCOME (LOSS)** | **12,770** | **-226,235** | **15,621** | **5,948** | **12,959** | **-178,938** |
| | | | | | | |
| **Total NET PROFIT (LOSS)** | **188,026** | **39,377** | **-367,881** | **-414,217** | **-138,770** | **-693,466** |

DH 0001116

# EXHIBIT D

EXHIBIT D

# 31

DH 0001117

EXHIBIT D



*Initial Financial Report: Document 1a*

SVS Holdings, Inc.
Latest Fiscal Year Financial Statements

| Income Statement | JAN-2009 | FEB-2009 | MAR-2009 | APR-2009 | MAY-2009 | JUN-2009 | JUL-2009 | AUG-2009 | SEP-2009 | OCT-2009 | NOV-2009 | DEC-2009 | YTD-2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 65905 -Business License / Taxes | | | | | | | | | | | | 60,510 | 60,510 |
| Total Administrative Expense | | | | | | | | | | | | 60,510 | 60,510 |
| 63485 -Goodwill Amortization | 202,821 | 202,821 | 202,821 | 202,821 | 202,821 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 51,408 | 1,822,167 |
| Total Amortization Of Intangible Assets | 202,821 | 202,821 | 202,821 | 202,821 | 202,821 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 51,408 | 1,822,167 |
| TOTAL OPERATING EXPENSE | 202,821 | 202,821 | 202,821 | 202,821 | 202,821 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 111,918 | 1,882,678 |
| Total OPERATING PROFIT (LOSS) | -202,821 | -202,821 | -202,821 | -202,821 | -202,821 | -126,109 | -126,109 | -126,109 | -126,109 | -126,109 | -126,109 | -111,918 | -1,882,678 |
| 83000 -Subsidiary Investment Change | | | 4,931,926 | | | | 811,480 | -14,847 | | | | -11,083,274 | -5,354,715 |
| Total Other Income | | | 4,931,926 | | | | 811,480 | -14,847 | | | | -11,083,274 | -5,354,715 |
| 65740 -Interest Expense | 383,620 | 49,521 | 49,878 | 50,237 | 50,599 | 50,964 | 51,331 | 51,701 | 52,074 | 52,449 | 52,827 | 53,208 | 948,409 |
| 65750 -Interest Expense-Related Parties | 29,764 | 26,884 | 29,650 | 28,571 | 29,384 | 28,317 | 29,134 | 29,011 | 27,949 | 27,126 | 22,111 | 134,779 | 442,680 |
| Total Interest Expense | 413,384 | 76,405 | 79,528 | 78,808 | 79,983 | 79,281 | 80,465 | 80,712 | 80,023 | 79,575 | 74,938 | 187,987 | 1,391,089 |
| TOTAL OTHER INCOME (LOSS) | 413,384 | 76,405 | 5,011,453 | 78,808 | 79,983 | 79,281 | 891,945 | 65,865 | 80,023 | 79,575 | 74,938 | -10,895,286 | -3,963,626 |
| Total NET PROFIT (LOSS) | -616,205 | -279,226 | -5,214,274 | -281,629 | -282,804 | -205,390 | -1,018,054 | -191,974 | -206,132 | -205,684 | -201,047 | 10,783,368 | 2,080,949 |

DH 0001118

EXHIBIT D

Initial Financial Report: Document 1b

SVS Holdings, Inc.
Latest Fiscal Year Financial Statements

| Balance Sheet | JAN-2009 | FEB-2009 | MAR-2009 | APR-2009 | MAY-2009 | JUN-2009 | JUL-2009 | AUG-2009 | SEP-2009 | OCT-2009 | NOV-2009 | DEC-2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10150 -Petty Cash | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Cash & Cash Equivalent | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| 16000 -Investment In Subsidiary | -4,306,342 | -4,306,342 | -9,238,268 | -9,238,268 | -9,238,268 | -9,238,268 | -10,049,748 | -10,034,901 | -10,034,901 | -10,034,901 | -10,034,901 | 1,048,373 |
| Investments | -4,306,342 | -4,306,342 | -9,238,268 | -9,238,268 | -9,238,268 | -9,238,268 | -10,049,748 | -10,034,901 | -10,034,901 | -10,034,901 | -10,034,901 | 1,048,373 |
| CURRENT ASSETS | -4,306,242 | -4,306,242 | -9,238,168 | -9,238,168 | -9,238,168 | -9,238,168 | -10,049,648 | -10,034,801 | -10,034,801 | -10,034,801 | -10,034,801 | 1,048,473 |
| 19206 -Intangible Asset | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 |
| 19207 -Accum. Amort Other Assets (Fas 142) | -142,095 | -344,916 | -547,737 | -750,558 | -953,379 | -1,079,488 | -1,205,597 | -1,331,706 | -1,457,815 | -1,583,924 | -1,710,033 | -1,760,820 |
| Intangible Asset Net | 9,071,417 | 8,868,596 | 8,665,775 | 8,462,954 | 8,260,134 | 8,134,024 | 8,007,915 | 7,881,806 | 7,755,697 | 7,629,588 | 7,503,479 | 7,452,692 |
| 18515 -Deferred Tax Asset | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 |
| Other Non Current Assets | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 |
| 12170 -Due To-From Parent-Subsidiary | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,280,386 |
| Due To From Affiliate | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,607,430 | 1,280,386 |
| OTHER ASSETS | 11,982,847 | 11,780,026 | 11,577,205 | 11,374,384 | 11,171,564 | 11,045,454 | 10,919,345 | 10,793,236 | 10,667,127 | 10,541,018 | 10,414,912 | 10,037,078 |
| TOTAL ASSETS | 7,676,605 | 7,473,784 | 2,339,038 | 2,135,217 | 1,933,396 | 1,807,287 | 869,698 | 758,436 | 632,327 | 506,218 | 380,111 | 11,085,551 |
| 20501 -Due To-From Parent-Subsidiary | | | | | | | | | | | | |
| 20601 -Due To Smartmatic Corp | | | | | | | | | | | | |
| 20620 -Short Term Borrowings-Related Parties | | | | | | | | | | | | |
| 26022 -State Income Tax Payable | | | | | | | | | | | | |
| Accounts Payable | 2,982,255 | 2,982,255 | 2,982,255 | 2,982,255 | 2,982,255 | 2,982,255 | 2,982,255 | 2,982,255 | 2,982,255 | 2,982,255 | 2,982,255 | 2,715,721 |
| 21001 -Note Payable - Current | 4,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 |
| 21011 -Note Payable - Current - Contra Debt Discount | -227,869 | -207,889 | -187,765 | -167,468 | -147,081 | -126,519 | -105,809 | -84,950 | -63,940 | -42,779 | -21,465 | -247,704 |
| Current Maturities Of Long-Term Debt | 3,772,131 | 2,792,111 | 2,812,235 | 2,832,532 | 2,852,919 | 2,873,481 | 2,894,191 | 2,915,050 | 2,936,060 | 2,957,221 | 2,978,535 | 2,752,296 |
| 22903 -Accrued Interest Payable-Related Parties | 225,691 | 252,575 | 282,225 | 310,796 | 340,179 | 368,496 | 397,630 | 426,641 | 454,590 | 481,716 | 503,827 | 526,675 |
| Accrued Expenses | 225,691 | 252,575 | 282,225 | 310,796 | 340,179 | 368,496 | 397,630 | 426,641 | 454,590 | 481,716 | 503,827 | 526,675 |
| 20827 -Deferred Tax Liability, Current | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 |
| Other Current Liabilities | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 |
| CURRENT LIABILITIES | 7,168,077 | 6,214,941 | 6,264,715 | 6,313,555 | 6,363,353 | 6,412,232 | 6,462,076 | 6,511,947 | 6,560,905 | 6,609,192 | 6,652,620 | 6,182,693 |
| 25101 -Note Payable - Not Current | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| 25111 -Note Payable - Non Current - Contra Debt Discount | -901,263 | -871,722 | -841,968 | -812,000 | -781,816 | -751,414 | -720,793 | -689,951 | -658,889 | -627,599 | -596,086 | -316,639 |
| Long Term Obligations | 4,098,737 | 4,128,278 | 4,158,032 | 4,188,000 | 4,218,184 | 4,248,586 | 4,279,207 | 4,310,049 | 4,341,111 | 4,372,401 | 4,403,914 | 4,683,361 |
| 20826 -Deferred Tax Liability - Non-Current | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 |
| LONG TERM LIABILITIES | 5,214,737 | 5,244,278 | 5,274,032 | 5,304,000 | 5,334,184 | 5,364,586 | 5,395,207 | 5,426,049 | 5,457,111 | 5,488,401 | 5,519,914 | 5,799,361 |
| TOTAL LIABILITIES | 12,382,814 | 11,459,219 | 11,538,747 | 11,617,555 | 11,697,537 | 11,776,818 | 11,857,283 | 11,937,996 | 12,018,016 | 12,097,593 | 12,172,534 | 11,982,054 |
| 30201 -Common Stock | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| 30601 -Additional Paid In Capital | 7,222,676 | 8,222,676 | 8,222,676 | 8,222,676 | 8,222,676 | 8,222,676 | 8,222,676 | 8,222,676 | 8,222,676 | 8,222,676 | 8,222,676 | 8,222,676 |
| 30916 -Push Down Capital - Contra Equity | -10,970,143 | -10,970,143 | -10,970,143 | -10,970,143 | -10,970,143 | -10,970,143 | -10,970,143 | -10,970,143 | -10,970,143 | -10,970,143 | -10,970,143 | -10,970,143 |
| -RETAINED EARNINGS PY | -988,842 | -1,238,068 | -6,452,342 | -6,733,971 | -7,016,774 | -7,222,165 | -8,240,219 | -8,432,193 | -8,638,325 | -8,844,009 | -9,045,056 | 1,738,933 |
| -RETAINED EARNINGS CY | | | | | | | | | | | | 111,931 |
| EQUITY | -4,706,209 | -3,985,435 | -9,199,709 | -9,481,338 | -9,764,141 | -9,969,532 | -10,987,586 | -11,179,560 | -11,365,692 | -11,591,376 | -11,792,423 | -896,503 |
| TOTAL LIABILITIES & EQUITY | 7,676,605 | 7,473,784 | 2,339,038 | 2,135,217 | 1,933,396 | 1,807,287 | 869,698 | 758,436 | 632,327 | 506,218 | 380,111 | 11,085,551 |

DH 0001119

EXHIBIT D

*Initial Financial Report:  Document 2*

SVS Holdings, Inc.
Balance Sheet as of the Month End Immediately Preceding Filing

| | JAN-2010 | FEB-2010 | MAR-2010 | APR-2010 | MAY-2010 |
|---|---|---|---|---|---|
| 10150  -Petty Cash | 100 | 100 | 100 | 100 | 100 |
| Cash & Cash Equivalent | 100 | 100 | 100 | 100 | 100 |
| | | | | | |
| 16000  -Investment in Subsidiary | 1,225,249 | 1,264,625 | 893,085 | 486,803 | 486,803 |
| Total Investments | 1,225,249 | 1,264,625 | 893,085 | 486,803 | 486,803 |
| | | | | | |
| **Total CURRENT ASSETS** | 1,225,349 | 1,264,725 | 893,185 | 486,903 | 486,903 |
| | | | | | |
| 19206  -Intangible Asset | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 | 9,213,512 |
| 19207  -Accum. Amortization Other Assets (Fas 142) | (1,886,929) | (2,013,038) | (2,139,148) | (2,265,257) | (2,391,366) |
| Intangible Asset Net | 7,326,583 | 7,200,474 | 7,074,365 | 6,948,256 | 6,822,146 |
| | | | | | |
| 19515  -Deferred Tax Asset | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 |
| Other Non Current Assets | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 | 1,304,000 |
| | | | | | |
| 12170  -Due To-From Parent-Subsidiary | 1,280,386 | 1,280,386 | 1,280,386 | 1,280,386 | 1,280,386 |
| Due To From Affilate | 1,280,386 | 1,280,386 | 1,280,386 | 1,280,386 | 1,280,386 |
| | | | | | |
| Total LONG TERM ASSETS | 9,910,969 | 9,784,860 | 9,658,751 | 9,532,641 | 9,406,532 |
| | | | | | |
| **TOTAL ASSETS** | 11,136,318 | 11,049,585 | 10,551,935 | 10,019,545 | 9,893,436 |
| | | | | | |
| 20501  -Due To-From Parent-Subsidiary | 120,702 | 120,702 | 120,702 | 150,732 | 150,732 |
| 20601  -Due To Smartmatic Corp | 1,514,633 | 1,514,633 | 1,514,633 | 1,514,633 | 1,514,633 |
| 20620  -Short Term Borrowings-Related Parties | 1,080,386 | 1,080,386 | 1,080,386 | 1,080,386 | 1,080,386 |
| 26002  -State Income Tax Payable | - | - | - | - | - |
| Accounts Payable | 2,715,721 | 2,715,721 | 2,715,721 | 2,745,751 | 2,745,751 |
| | | | | | |
| 21001  -Note Payable - Current | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 |
| 21011  -Note Payable - Current - Contra Debt Discount | (227,867) | (207,887) | (187,763) | (167,494) | (147,079) |
| Current Maturities Of Long-Term Debt | 2,772,133 | 2,792,113 | 2,812,237 | 2,832,506 | 2,852,921 |
| | | | | | |
| 23001  -Accrued Interest Payable | | 13,808 | 44,384 | 73,973 | 104,548 |
| 23003  -Accrued Interest Payable-Related Parties | 549,523 | 570,160 | 593,008 | 615,119 | 637,967 |
| Accrued Expenses | 549,523 | 583,968 | 637,391 | 689,091 | 742,515 |
| | | | | | |
| 20827  -Deferred Tax Liability, Current | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 |
| Other Current Liabilities | 188,000 | 188,000 | 188,000 | 188,000 | 188,000 |
| | | | | | |
| **CURRENT LIABILITIES** | 6,225,377 | 6,279,803 | 6,353,350 | 6,455,349 | 6,529,187 |
| | | | | | |
| 25101  -Note Payable - Not Current | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 |
| 25102  -Future Earnings Obligation | - | - | - | - | - |
| 25111  -Note Payable - Non Current - Contra Debt Discount | (304,506) | (292,286) | (279,978) | (267,581) | (255,095) |
| Long Term Obligations | 4,695,494 | 4,707,714 | 4,720,022 | 4,732,419 | 4,744,905 |
| | | | | | |
| 20828  -Deferred Tax Liability - Non-Current | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 |
| Deferred Tax Liability | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 | 1,116,000 |
| **LONG TERM LIABILITIES** | 5,811,494 | 5,823,714 | 5,836,022 | 5,848,419 | 5,860,905 |
| | | | | | |
| 30201  -Common Stock | 100 | 100 | 100 | 100 | 100 |
| 30601  -Additional Paid In Capital | 111,931 | 111,931 | 111,931 | 111,931 | 111,931 |
| 30618  -Push Down Capital - Contra Equity | 8,222,676 | 8,222,676 | 8,222,676 | 8,222,676 | 8,222,676 |
| -RETAINED EARNINGS PY | (9,231,210) | (9,231,210) | (9,231,210) | (9,231,210) | (9,231,210) |
| -RETAINED EARNINGS CY | (4,051) | (157,429) | (740,934) | (1,387,720) | (1,600,154) |
| EQUITY | (900,554) | (1,053,932) | (1,637,436) | (2,284,223) | (2,496,656) |
| | | | | | |
| **TOTAL LIABILITIES & EQUITY** | 11,136,318 | 11,049,585 | 10,551,935 | 10,019,545 | 9,893,436 |

DH 0001120

EXHIBIT D

*Initial Financial Report: Document 3*

SVS Holdings, Inc.
**Profit and Loss Statement for the Month and Year Immediately Preceding Filing**

| | JUN-2009 | JUL-2009 | AUG-2009 | SEP-2009 | OCT-2009 | NOV-2009 | DEC-2009 | JUN-DEC 2009 | JAN-2010 | FEB-2010 | MAR-2010 | APR-2010 | MAY-2010 | YTD-2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 65905 - Business License / Taxes | | | | | | | 60,510 | 60,510 | | | | 30,030 | | 30,030 |
| Total Administrative Expense | | | | | | | 60,510 | 60,510 | | | | 30,030 | | 30,030 |
| 63485 - Goodwill Amortization | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 51,408 | 808,063 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 630,546 |
| Total Amortization Of Intangible Assets | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 51,408 | 808,063 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 630,546 |
| OPERATING EXPENSE | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 126,109 | 111,918 | 868,573 | 126,109 | 126,109 | 126,109 | 156,139 | 126,109 | 660,576 |
| Total OPERATING PROFIT (LOSS) | (126,109) | (126,109) | (126,109) | (126,109) | (126,109) | (126,109) | (111,918) | (868,573) | (126,109) | (126,109) | (126,109) | (156,139) | (126,109) | (660,576) |
| 83000 - Subsidiary Investment Change | | 811,480 | (14,847) | | | | (11,083,274) | (10,286,641) | (176,676) | (39,377) | 371,541 | 406,282 | | 561,570 |
| Total Other Income | | 811,480 | (14,847) | | | | (11,083,274) | (10,286,641) | (176,676) | (39,377) | 371,541 | 406,282 | | 561,570 |
| 65740 - Interest Expense | 50,964 | 51,331 | 51,701 | 52,074 | 52,449 | 52,827 | 53,208 | 364,554 | 31,970 | 46,008 | 63,007 | 62,255 | 63,476 | 266,717 |
| 65750 - Interest Expense-Related Parties | 28,317 | 29,134 | 29,011 | 27,949 | 27,126 | 22,111 | 134,779 | 298,427 | 22,848 | 20,637 | 22,848 | 22,111 | 22,848 | 111,202 |
| Total Interest Expense | 79,281 | 80,465 | 60,712 | 80,023 | 79,575 | 74,938 | 187,987 | 662,981 | 54,818 | 66,645 | 85,855 | 84,366 | 86,324 | 378,009 |
| TOTAL OTHER INCOME (LOSS) | 79,281 | 891,945 | 65,865 | 80,023 | 79,575 | 74,938 | (10,895,286) | (9,623,659) | (122,058) | 27,259 | 457,396 | 490,647 | 86,324 | 939,578 |
| Total NET PROFIT (LOSS) | (205,390) | (1,018,054) | (191,974) | (206,132) | (205,684) | (201,047) | 10,783,368 | 8,755,086 | (4,051) | (153,378) | (583,505) | (646,787) | (212,433) | (1,600,154) |

DH 0001121